## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC.,<br><br>                        Plaintiff,<br><br>    v.<br><br><br>UNITED STATES,<br>                  Defendant. | **Court No.:  20-03824** |

## COMPLAINT

Plaintiff Aspects Furniture International, Inc. (hereinafter, "Plaintiff" and/or "AFI"/"Aspects"), by and through its counsel, alleges the following for its Complaint against Defendant United States (hereinafter, "Defendant" and/or the "Government"), acting by and through U.S. Customs and Border Protection (hereinafter, "CBP" and/or "Customs").

## CONTESTED DETERMINATIONS

1.      This action is an appeal from CBP's final affirmative determination of evasion, issued under 19 U.S.C. § 1517(f), including its initial determination issued under 19 U.S.C. § 1517(c), as associated with the Enforce and Protect Act (hereinafter, "EAPA") Case Number 7189 (hereinafter, "Investigation"), covering the allegation of evasion of the antidumping duty (hereinafter, "AD") order A-570-890 (hereinafter, the "Order") on wooden bedroom furniture from the People's Republic of China (hereinafter, "PRC" and/or "China").

2.      Specifically, on May 18, 2020, CBP's Trade Remedy & Law Enforcement Directorate (hereinafter, "TRLED") issued its "Notice of Final Determination as to Evasion" (hereinafter,

"Initial Determination"), and on September 24, 2020, its Office of Trade, Regulations & Rulings (hereinafter, "ORR") affirmed such determination on administrative review (hereinafter, "Review Determination") (collectively, the "EAPA Determinations").

3.     CBP's EAPA Determinations covered entries of wooden bedroom furniture made by Plaintiff from January 1, 2016, through the pendency of this Investigation (hereinafter, "Subject Entries").

## JURISDICTION

4.     This action is brought pursuant to section 517(g) of the Tariff Act of 1930, as amended by the Trade Facilitation and Trade Enforcement Act of 2015 (hereinafter, "TFTEA"), to contest CBP's EAPA Determinations. 19 U.S.C. § 1517(g).

5.     Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1581(c), which provides for exclusive jurisdiction over all civil actions commenced under 19 U.S.C. § 1517.

## STANDING

6.     AFI is a United States importer of merchandise subject to CBP's EAPA Investigation and an interested party within the meaning of 19 U.S.C. § 1517(a)(6) and 28 U.S.C. § 2631(k)(1).

7.     Further, following CBP's EAPA Determinations, antidumping duties have been assessed against Plaintiff's Subject Entries, therefore adversely affecting or aggrieving Plaintiff, within the meaning of section 702 of the Administrative Procedure Act, as amended, 5 U.S.C. § 702. As such, Plaintiff is also entitled to commence this action pursuant to 28 U.S.C. § 2631(i).

## TIMELINESS

8.     CBP's ORR issued its Review Determination of evasion on September 24, 2020.

9.      Plaintiff is commencing this action with the concurrent filing of a summons and

complaint, within 30 business days after the publication of the September 24, 2020, decision, and

has adhered to all the service and notification requirements as set out by the Rules of this Court.

*See* USCIT R. 3, 4.

10.      Accordingly, Plaintiff has commenced this action within the statutorily prescribed time

limits provided for under 19 U.S.C. § 1517(g)(1).

## STATEMENT OF FACTS

11.      The imported merchandise at issue is wooden bedroom furniture (hereinafter, "WBF")

from China.

12.      On January 4, 2005, the U.S. Department of Commerce (hereinafter, "DOC" and/or

"Commerce") issued the Order. *See Notice of Amended Final Determination of Sales at Less*

*Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's*

*Republic of China,* 70 FR 329 (Dep't. Commerce January 4, 2005).

13.      On April 6, 2017, the American Furniture Manufacturers Committee for Legal Trade

(hereinafter, the "Alleger" and/or "AFMC") filed an EAPA allegation of evasion with TRLED

against Aspects (hereinafter, "Allegation").

14.      AFMC claimed in its Allegation, *inter alia,* that Aspects was misreporting the identities

of the actual producers of WBF from China in order to avoid payment of AD. *See Notice of*

*initiation of an investigation and interim measures taken as to Aspects Furniture International,*

*Inc. concerning evasion of the antidumping duty order on Wooden Bedroom Furniture from the*

*People's Republic of China* (Aug. 14, 2017) (hereinafter, "Notice of Initiation and Interim

Measures") (available at: https://www.cbp.gov/document/report/eapa-investigation-number-7189-aspects-furniture-international-inc-notice-initiation, last visited Nov. 4, 2020).

15.    On April 17, 2017, AFMC supplemented its Allegation.

16.    Aspects was never provided with a copy of the supplemented Allegation.

17.    CBP acknowledged receipt of AFMC's "properly filed" Allegation on April 18, 2017, and on May 9, 2017, it formally initiated this EAPA Investigation. *See Memo to: the File: Initiation of Investigation in EAPA Case Number 7189.*

18.    On April 6, 2017, CBP requested Aspects to provide copies of entry packages related to 2016 entries, to include the entry summary, commercial invoice, purchase order, proof of payment to the supplier, accounting records, broker bill, bill of lading, packing list, specification sheets, photos of the merchandise, manufacturer name and address, as well as any evidence establishing that the identified manufacturer produced the goods (production records, purchase invoices, etc.). *See Initial Determination* at 2.

19.    On May 30, 2017, before Aspects was formally notified of this EAPA Investigation and without its participation, the EAPA team had a meeting/teleconference with AFMC's counsel, at its request, in order for AFMC's counsel to "provide it with an opportunity to brief the Enforce and Protect Act ("EAPA") investigative team on its allegation and to answer any questions on the information presented therein." *See Memorandum to: the File, EAPA Case Number: 7189* (May 31, 2017). During such meeting/teleconference, AFMC's counsel allegedly provided CBP with "an overview of AFMC's evasion claims from the allegation." *Id.*

20.    Aspects was never provided with a transcript of such meeting/teleconference.

21.     On June 5, 2017, CBP made similar requests to Aspects for comprehensive information related to its 2017 entries. *See Initial Determination* at 2.

22.     Aspects provided records in response to both entry information requests. *Id.*

23.     On July 27, 2017, CBP conducted a site visit to Aspects' facility in Chino, California, and met with company representatives. *Id*.

24.     AFI was formally notified of the EAPA Investigation, as well as the interim measures imposed against it under 19 U.S.C. § 1517(e) and 19 C.F.R. § 165.24, on August 14, 2017. *See Notice of Initiation and Interim Measures* at 4,5.

25.     In its Notice of Initiation and Interim Measures, CBP informed AFI that because it was "already reviewing Aspects' entries, covering the entire calendar year of 2016," CBP will "extend the scope of this [EAPA] investigation to align with that review and the entries covered by this investigation are those entered for consumption, or withdrawals from warehouse for consumption, from January 1, 2016, through the pendency of this investigation." *See Notice of Initiation and Interim Measures* at 2. However, as demonstrated below, because EAPA was not effective until August 22, 2016, CBP had no authority to investigate any entries made prior to such date.

26.     Between October 2017 and March 2018, CBP sent Requests for Information (hereinafter, "RFI") to Aspects and to Chinese companies associated with Aspects' WBF entries. *See Notice of Initiation and Interim Measures* at 2.

27.     Aspects and its Nantong, China satellite office (hereinafter, "Aspects Nantong") promptly complied with CBP's requests. *Id.* Wuxi Yushea Furniture Co., Ltd. (hereinafter, "Wuxi

Yushea") and Nantong Fuhuang Furniture Co., Ltd. (hereinafter, "Nantong Fuhuang"), two of

Aspects' Chinese manufacturers, also submitted RFI responses. *Id.*

28.     On December 22, 2017, CBP informed the parties that "the deadlines in EAPA

investigation 7189 have been stayed" due to a covered merchandise referral transmitted to DOC

(hereinafter, "Scope Referral"). *See E-mail from Natalie Ragland, Enforcement Operations,*

*Trade Remedy & Law Enforcement Directorate, Office of Trade* (Dec. 22, 2017).

29.     The Scope Referral was formally placed on DOC's record on August 1, 2019. *See*

*Memorandum to: The File RE: Wooden Bedroom Furniture from the People's Republic of*

*China: Placement of Revised Covered Merchandise Referral on the Record* (Dep't Commerce

Aug. 1, 2019).

30.     From April 23, 2018, through April 27, 2018, CBP conducted site visits in China, aimed

at verifying the responses placed on the EAPA record by AFI and other participants (hereinafter,

"Verification Visit"). *See ON-SITE VERIFICATION REPORT ENFORCE AND PROTECT ACT*

*(EAPA) CASE 7189* (Dec. 13, 2018) (hereinafter, "Verification Report") at 2. In particular, the

Verification Visit sought to determine "whether the manufacturers [Nantong Fuhuang and Wuxi

Yushea] could produce/manufacture sufficient quantities of the WBF to export to the United

States." *Id.*

31.     The scope of the Verification Visit included 28 entries associated with Aspects' imports.

*Id.* at 3. However, as demonstrated below, any entries dated prior to August 22, 2016, EAPA's

effective date, were improperly included in the EAPA investigation and should have been

disregarded accordingly.

32.     While CBP brought a Chinese translator, no official certification was provided to AFI. Moreover, there were several instances where one of Aspects' employees, who spoke both English and Mandarin Chinese, unsuccessfully attempted to correct and/or better explain the translation provided by CBP's translator, which has likely led to misunderstandings of the answers provided to CBP.

33.     On December 31, 2019, DOC issued its final scope ruling, in response to CBP's Scope Referral (hereinafter, "Final Scope Ruling"), which was transmitted to CBP on January 8, 2020, and communicated to the parties on January 9, 2020. *See Letter from Wendy J. Frankel, Dir., Enforcement and Compliance, International Trade Administration* RE: Covered Merchandise Referral Regarding EAPA Investigation No. 7189 (Dep't Commerce Jan. 8, 2020). CBP placed a public version of DOC's Final Scope Ruling on the EAPA Record on January 9, 2020. *See E-mail from Steve Bezirganian, EAPA Investigations Branch, Enforcement Operations Division* (Jan. 9, 2020).

34.     In its Final Scope Ruling, DOC concluded that four (4) out of six (6) items were not covered under the Order—(1) the desk/console table with drawers (G-200); (2) the TV cabinet with a minibar (G-208L and G-208R); (3) the trunk storage unit (G-207); and (4) the bed bench base (GF-200)—while two (2) items were covered—the TV credenzas/dressers (G-206(1) and G-206(2)) and the console/custom dresser (GF-103L and GF-103R). *See Final Scope Ruling* at 1.

35.     On January 22, 2020, CBP sent the parties the Verification Report, outlining CBP's findings after the Verification Visit. *See E-mail from Steve Bezirganian, EAPA Investigations Branch, Enforcement Operations Division, Trade Remedy Law Enforcement Directorate, Office of Trade*, (Jan. 22, 2020).

36.     The Verification Report had been prepared and revised since December 13, 2018. *See Verification Report* at 1.

37.     In the Verification Report, CBP found, *inter alia*, that both Nantong Fuhuang and Wuxi Yushea "were able to produce the WBF at sufficient quantities as to account for the imported merchandise totals" associated with AFI's entries subject to this EAPA Investigation, which was one of the aspects CBP sought to verify through its visit. *See Verification Report* at 4.

38.     Between February 10, 2020 and March 10, 2020, the parties submitted their written arguments and responses, as follows: on February 10, 2020, AFI submitted its written argument (hereinafter, "Written Argument"), on March 6, 2020, AFMC resubmitted its written arguments and its response to AFI's Written Argument, and on March 10, 2020, AFI resubmitted its response to AFMC's Written Argument (hereinafter, "Response").

39.     On May 18, 2020, TRLED issued its Initial Determination, finding that there was substantial evidence that AFI "evaded AD duties owed on Chinese-origin WBF entered into the customs territory of the United States by using a number of tactics." *See generally Initial Determination* (available at: https://www.cbp.gov/document/report/notice-final-determination-evasion-eapa-case-number-7189, last visited Nov. 4, 2020).

40.     On June 30, 2020, AFI timely filed a request for *de novo* administrative review of the Initial Determination, pursuant to 19 U.S.C. § 1517(f)(1) and 19 C.F.R. § 165.41(d).

41.     On September 24, 2020, the ORR affirmed CBP's Initial Determination. *See generally Admin. Review Determination in EAPA Case Number 7189* (Sept. 24, 2020). This appeal follows.

## STATEMENT OF CLAIMS

### COUNT 1

42.     Paragraphs 1 through 41 are hereby incorporated by reference as if fully set forth herein.

43.     CBP's interpretation of 19 C.F.R. §165.2 is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, as the EAPA statute does not allow EAPA investigations to be retroactive.

44.     "[A]bsent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). Here, the EAPA statute was enacted on February 24, 2016. Not only did EAPA not provide for its application to be retroactive, but it explicitly indicates that its provisions will not became effective until August 22, 2016.

45.     Therefore, any entries of WBF from China made by AFI before August 22, 2016, should not have been considered by CBP in this EAPA Investigation, as CBP had no legal authority, as a matter of law, to initiate and/or conduct an investigation under EAPA covering such entries.

### COUNT 2

46.     Paragraphs 1 through 45 are hereby incorporated by reference as if fully set forth herein.

47.     CBP's Initial Determination as to Aspects' purported evidence destruction is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, as it is based on inadmissible hearsay and fails to describe the circumstances surrounding the alleged incident.

### COUNT 3

48.     Paragraphs 1 through 47 are hereby incorporated by reference as if fully set forth herein.

49.     CBP's finding of evasion against AFI is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because CBP failed to demonstrate, by substantial evidence, which of AFI's Subject Entries, if any, were covered merchandise, within the meaning of EAPA, at the time the Subject Entries were made.

50.     Evasion is defined as "the entry of covered merchandise into the customs territory of the United States for consumption by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material and that results in any cash deposit or other security of any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise." 19 U.S.C. § 1517(a)(5)(A).

51.     Covered merchandise means merchandise that is subject to an antidumping and/or countervailing duty order. 19 U.S.C. § 1517(a)(3). When the scope of such an order is unclear or ambiguous, only DOC has the authority to provide an interpretation. *See* 19 U.S.C. §§ 1671-1677n; *see also Sunpreme Inc. v. United States*, 924 F.3d 1198, 1213-14 (Fed. Cir. 2019). Moreover, "when Commerce 'clarifies' the scope of an existing antidumping [or countervailing] duty order that has an unclear scope, the suspension of liquidation and imposition of antidumping cash deposits may not apply retroactively, but can instead only take effect 'on or after the date of the initiation of the scope inquiry.'" *See AMS Assoc. v. United States*, 737 F.3d 1338, 1344 (Fed. Cir. 2013) (finding that the unambiguous plain language of the regulation only authorizes Commerce to act on a prospective basis, and such express prospective authorization reasonably is interpreted to preclude retroactive authorization).

52.      Here, Commerce initiated its Scope Referral review on August 1, 2019. *See
Memorandum to: The File RE: Wooden Bedroom Furniture from the People's Republic of
China: Placement of Revised Covered Merchandise Referral on the Record* (Dep't Commerce
Aug. 1, 2019). As such, all Subject Entries affected by Commerce's Scope Referral review,
made by Aspects prior to August 1, 2019, are not "subject to" the Order and cannot be qualified
as "covered merchandise," as defined under EAPA, regardless of whether the items imported
under such entries were found to be covered under the scope of the Order.

## COUNT 4

53.      Paragraphs 1 through 52 are hereby incorporated by reference as if fully set forth herein.

54.      CBP's findings of evasion against Aspects are arbitrary, capricious, an abuse of
discretion, and otherwise not in accordance with law, because CBP failed to demonstrate, by
substantial evidence, that Aspects avoided payment of "applicable" antidumping cash deposits or
other security, as required under 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. §165.1.

55.      In both its Initial Determination and Review Determination, CBP based its finding that
Aspects avoided the payment of "applicable" antidumping cash deposits on an unlawful
interpretation of the requirements for an affirmative finding of evasion under EAPA and an
erroneous and unsupported statement that Wuxi Yushea was not the exporter for the products it
manufactured for Aspects.

56.      In its Review Determination, CBP found, without any support, that Aspects, "for at least
some of the entries, controlled the export process behind the scenes." *See Review Determination*
at 10. Based on nothing but this unsupported assertion, CBP proceeded to conclude that, even
though "[i]t is not clear which entries these were," Aspects failed to demonstrate that the zero

percent (0.00%) AD rate applied to *any* of Aspects entries for which Wuxi Yushea was the manufacturer and exporter.

57.     CBP failed to articulate a satisfactory explanation for its conclusion. Instead, CBP in a conclusory fashion merely stated that alleged irregularities identified with respect to *some* of AFI's Subject Entries have resulted in the required reduction/avoidance of duties with respect to *all* of AFI's Subject Entries.

58.     A required element for a positive finding of evasion is the avoidance or reduction of AD/CVD, and CBP failed to demonstrate, by substantial evidence, that such reduction or avoidance occurred, or if it did, for which particular entries. In fact, in its Initial Determination, CBP refused to even address this required element for an affirmative finding of evasion under EAPA, even though Aspects properly raised it in its Written Argument and Response, respectively. *See generally* Initial Determination.

## **COUNT 5**

59.     Paragraphs 1 through 58 are hereby incorporated by reference as if fully set forth herein.

60.     The EAPA statute denies the parties subject to EAPA investigations procedural due process protections otherwise owed to such parties under the Constitution of the United States. The Constitution of the United States provides that no person is to be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. An administrative adjudication that deprives someone of liberty or property must provide due process to such person. *Londoner v. Denver*, 210 U.S. 373 (1908).

61.     Here, the EAPA statute failed to provide a mechanism through which Aspects could be afforded access to the complete and unredacted record being developed and maintained against

it. The procedural due process Aspects should have been provided with is access to business confidential information placed on the EAPA Record. In fact, the procedure of sharing unredacted business confidential information with a party, through such party's attorney, is well-established by statute in AD/CVD investigations and reviews conducted by Commerce, 19 U.S.C. § 1677f(c)(1)(A), and there is no apparent legitimate reason for the difference in treatment between such investigations conducted by Commerce and an EAPA investigation conducted by Customs.

62.     As a result, by failing to provide for such due process, the EAPA statute has deprived Aspects of its private interest to be presented with all the evidence being gathered against it, so as to allow Aspects to effectively defend itself against an allegation of evasion; depriving Plaintiff of both liberty and property interests protected and guaranteed by the United States Constitution.

## COUNT 6

63.     Paragraphs 1 through 62 are hereby incorporated by reference as if fully set forth herein.

64.     CBP's regulations implementing EAPA are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, as they have failed to provide for a mechanism through which to provide Aspects, the party subject to the EAPA Investigation, with complete and unredacted access to the record being maintained against it. Moreover, CBP's administration of the investigatory proceedings, through TRLED and ORR, including its decision to not release crucial evidence it considered against Aspects, as well as its excessive redactions to the administrative record submissions shared with Aspects, which went well beyond its own

regulations, is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

65.     Not only has Aspects been denied access to essential evidence CBP cites against it in both of its EAPA Determinations, but the administrative record submissions that Aspects has received throughout the pendency of this EAPA Investigation, when not entirely redacted, have contained excessive redactions, well beyond the reach of 19 C.F.R. § 165.4, the section governing the release of information claimed to be business confidential. For instance, the Verification Report, which is the "key" submission both TRLED and ORR relied upon in reaching their determinations, contains entire sentences of redacted information, making it impossible for Aspects to fully understand the "findings" that were being made against it and to meaningfully defend itself against such "findings."

66.     Consequently, CBP's implementing regulations, in general, as well as its administration of this EAPA Investigation, in particular, have deprived Aspects of its private interest to be presented with all the evidence being gathered against it, so as to allow Aspects to effectively defend itself against an allegation of evasion; depriving Plaintiff of both liberty and property interests protected and guaranteed by the United States Constitution.

## **COUNT 7**

67.     Paragraphs 1 through 66 are hereby incorporated by reference as if fully set forth herein.

68.     CBP's regulations implementing EAPA are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, as they allow the imposition of interim measures against Aspects without providing it with a fair opportunity to be heard before such imposition can take effect. Instead, the regulations merely provide that CBP will give notice to the parties to

the investigation of any interim measures it takes within five (5) business days after it takes such measures. *See* 19 C.F.R. § 165.24(c). In fact, CBP even failed to comply with its own regulations, albeit not in accordance with law, as it provided Aspects with notice of its imposition of interim measures seven (7) days after such measure went into effect. *See E-mail from Carrie Owens, Enforcement Operations, Trade Remedy & Law Enforcement Directorate, Office of Trade* (Aug. 7, 2017); *see also Notice of Initiation and Interim Measures* at 4,5.

## COUNT 8

69.      Paragraphs 1 through 68 are hereby incorporated by reference as if fully set forth herein.

70.      CBP's administration of this EAPA Investigation was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because CBP has improperly combined an EAPA investigation with a regulatory audit.

71.      While 19 C.F.R. § 165.47 allows CBP or other government agencies to undertake *additional* investigations or enforcement actions, it does not allow CBP to combine such additional investigatory or enforcement actions under the premises of EAPA. As such, CBP has abused its discretionary powers and in effect deprived Aspects of certain procedural protections it may have otherwise been entitled to.

/ / /

/ / /

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against the Defendant:

(1) Holding unlawful and setting aside U.S. Customs and Border Protection's May 18, 2020 Initial Determination;

(2) Holding unlawful and setting aside U.S. Customs and Border Protection's September 24, 2020 Review Determination;

(3) Ordering CBP to refund Plaintiff any monies collected on its imports as a result of U.S. Customs and Border Protection's Enforce and Protect Act investigation in Case No. 7189;

(4) Awarding Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act, 20 U.S.C. § 2412; and

(5) Granting any such additional relief as the Court may deem just and proper.


Respectfully Submitted,

Robert W. Snyder
Laura A. Moya
LAW OFFICES OF ROBERT W. SNYDER
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail: rsnyder@rwsnyderlaw.com
         lmoya@rwsnyderlaw.com

Dated: November 4, 2020
Irvine, CA

*Counsel for Plaintiff ASPECTS FURNITURE INTERNATIONAL, INC.*