# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., ) | |
| Plaintiff, ) | |
| v. ) | Court No. 20-03824 |
| UNITED STATES, ) | |
| Defendant. ) | |

## ORDER

Upon consideration of Plaintiff's Motion for Judgment on the Agency Record and the parties' responses thereto; and upon consideration of other papers and proceedings had herein, it is hereby:

**ORDERED** that Plaintiff's motion be, and hereby, is GRANTED; and it is further

**ORDERED** that U.S. Customs and Border Protection's determinations made against Plaintiff in the Enforce and Protect Act Case No. 7189 are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

**SO ORDERED.**

_____
Jennifer Choe-Groves, Judge

Dated: _____
        New York, NY

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |  |
|---|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 20-03824 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF ASPECTS FURNITURE INTERNATIONAL, INC.'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Plaintiff, Aspects Furniture International, Inc. (hereinafter, "Plaintiff" and/or

"AFI"/"Aspects"), hereby moves pursuant to Rule 56.2 of the United States Court of

International Trade for Judgment on the Agency Record with respect to the following

determinations made by United States Customs and Border Protection (hereinafter, "CBP"

and/or "Customs") in the Enforce and Protect Act (hereinafter, "EAPA") Case No.: 7189: (1) the

May 18, 2020 final affirmative determination of evasion, issued under 19 U.S.C. § 1517(c) by

CBP's Trade Remedy & Law Enforcement Directorate; and (2) the September 24, 2020 Office

of Trade, Regulations & Rulings determination, affirming the May 18, 2020 determination on

administrative review under 19 U.S.C. § 1517(f) (collectively, the "EAPA Determinations").

CBP's EAPA Determinations were not published in the Federal Register.

For the reasons set forth in the accompanying brief in support of this Motion for

Judgment on the Agency Records, Plaintiff respectfully requests that this Court find CBP's

EAPA Determinations to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and enter judgment in its favor.

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
lmoya@rwsnyderlaw.com

Counsel for Plaintiff ASPECTS
FURNITURE INTERNATIONAL, INC.

Dated: **April 13, 2021**
Irvine, CA

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 20-03824 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF ASPECTS FURNITURE INTERNATIONAL, INC.'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
              lmoya@rwsnyderlaw.com

Counsel for Plaintiff ASPECTS
FURNITURE INTERNATIONAL, INC.

Dated: **April 13, 2021**
        Irvine, CA

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i.

TABLE OF AUTHORITIES ............................................................................................ iii.

USCIT RULE 56.2 STATEMENT .................................................................................. 1

   A.  Administrative Determinations Subject to Judicial Review ................................. 1

   B.  Issues Presented ................................................................................................... 2

STATEMENT OF FACTS .............................................................................................. 4

ARGUMENT .................................................................................................................. 9

   A.  Standard of Review ............................................................................................ 10

   B.  CBP's Interpretation of 19 C.F.R. § 165.2, Purportedly Allowing EAPA to Apply Retroactively, Is Arbitrary, Capricious, An Abuse of Discretion, and Not in Accordance with Law.....................................................................................................................11

   C.  CBP's Initial Determination as to Aspects' Purported Evidence Destruction Is Arbitrary, Capricious, an Abuse of Discretion, and Otherwise not in Accordance with Law, As It Is Based on Inadmissible Hearsay .............................................................. 13

   D.  CBP's Findings of Evasion Against AFI Are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Failed to Establish, by Substantial Evidence, Which of AFI's Subject Entries, If Any, Were Covered Merchandise at the Time they Were Made, as Required Under 19 U.S.C. § 1517(c)(1)(A).............................. 14

   E.  CBP's Findings of Evasion Against Aspects Are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Failed to Demonstrate, by Substantial Evidence, that Aspects Avoided Payment of "Applicable" Antidumping Cash Deposits or Other Security, as Required Under 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1 ................................................................................................................... 18

   F.  The EAPA Statute Denies the Parties Subject to EAPA Investigations Procedural Due Process Protections, Guaranteed under the Constitution of the United States, By Not Providing for a Mechanism To Allow Such Parties Access to Business Confidential Information.......... 25

   G.  In turn, CBP's EAPA Implementing Regulations Deprive Parties to EAPA Investigations of Procedural Due Process Protections, Guaranteed Under the Constitution of the United

States, By Failing to Establish a Mechanism to Allow Such Parties Complete Access to the Administrative Record Being Maintained Against Them ......................................................... 26

H.   CBP's EAPA Implementing Regulations Regarding Interim Measures Deprive Parties to EAPA Investigations of Procedural Due Process Protections, Guaranteed under the Constitution of the United States, By Denying Such Parties Notice and a Meaningful Opportunity to Be Heard Before Adopting the Interim Measures ............................................ 28

I.   CBP's Administration of this EAPA Investigation Was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Has Improperly Combined an EAPA Investigation with a Regulatory Audit ................................................... 29

J.   CBP Has Failed to Make Its Determination Based on "Substantial Evidence," Contrary to 19 U.S.C. § 1517(g)(2)(A), by Erroneously Shifting the Burden of Proof to Aspects ............. 29

**CONCLUSION** ........................................................................................................... **31**

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Altx, Inc. v. United States*,
    370 F.3d 1108 (Fed. Cir. 2004) ...................................................……... 15

*Atlantic Sugar, Ltd. v. United States*,
    744 F.2d,1556, 1562 (Fed. Cir. 1984) …………………………………………………… 15

*Apex Frozen Foods Private Ltd. v. United States*,
    862 F.3d 1322, 1329 (Fed. Cir. 2017) ...............................................…... 11

*Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*,
    419 U.S. 281 (1974) ........................................................…... 10

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962) ........................................................…... 10

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ........................................................…... 11

*Citizens to Preserve Overton Park v. Volpe*,
    401 U.S. 402 (1971) ........................................................…... 10

*Fisco v. United States Treasury Dep't*,
    695 F. Supp. 1189 (1998) ....................................................…... 14

*Gozlon-Peretz v. United States*,
    498 U.S. 395, 404 (1991) ...............................................… 11, 12

*Grobest & I-Mei Industrial (Vietnam) Co. v. United States*,
    815 F. Supp. 2d 1342–67 (2012) .............................................… 11, 14

*Huzhou Muyun Wood Co. v. United States*,
    324 F.Supp.3d 1364 ......................................................…... 15

*Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States*,
    426 F. Supp. 3d 1353, 1357 (Ct. Int'l Trade 2020 .............................…... 11

*Londoner v. Denver*,
    210 U.S. 373 (1908 .....................................................… 25, 26

*Mid Continent Nail Corp. v. United States*,
    712 F. Supp. 2d 1370, 1375 (Ct. Intl. Trade 2010) ............................…... 28

*Motor Vehicle Mfrs. Ass'n. v. State Farms Ins.*,
   463 U.S. 29 (1983) ……………………………………………….......... 10, 17, 24

*Northcross v. Bd. of Ed. of Memphis City Sch.*,
   412 U.S. 427, 428 (1973) …………………………………………........... 26

*NTN Bearing Corp. v. United States*,
   74 F.3d 1204–08 (Fed. Cir. 1995) ...................................................... 11, 14

*PSC VSMPO-Avisima Corp. v. United States*,
   688 F.3d 751 (Fed. Cir. 2012) ……………………………………………... 28

*Star Fruits S.N.C. v. United States*,
   393 F.3d 1277 (Fed. Cir. 2005) ………………………………………...…….. 10

*Sunpreme Inc. v. United States*,
   924 F.3d 1198 (Fed. Cir. 2019) ………………………………………...…….. 15

*Sunpreme Inc. v. United States*,
   946 F.3d 1300 (Fed. Cir. 2020) ………………………………………....... 15, 18

*Transcom, Inc. v. United States*,
   121 F. Supp. 2d 690 (2000) ..................................................…....…. 28

*Wisconsin v. Constantineau*,
   400 U.S. 433 (1971) ...................................................................…... 25

## Statutes & Regulations

19 U.S.C. § 1509...................................................................…... 29

19 U.S.C. § 1517(a)(3) …………………………………………………… 14

19 U.S.C. § 1517(a)(5)(A) ………………………………………… 3, 18, 19, 21, 25

19 U.S.C. § 1517(c) …………………………………………………… 1, 10

19 U.S.C. § 1517(c)(1)(A) …………………………………………... 2, 14, 16, 18

19 U.S.C. § 1517(e) ...................................................................…..... 6

19 U.S.C. § 1517(f) ...................................................................…... 1, 10

19 U.S.C. § 1517(f)(1) ...................................................................…..... 9

19 U.S.C. § 1517(g)(1) ...................................................................…... 10

19 U.S.C. § 1517(g)(2) ........................................................... 10

19 U.S.C. § 1517(g)(2)(A) ………………………………………….... 4, 29, 30

19 U.S.C. §§ 1671-1677n ........................................................... 15

19 U.S.C. § 1677f(c)(1)(A) ........................................................... 26

20 U.S.C. 2412........................................................................... 31

19 C.F.R. § 163.11 ...................................................................... 29

19 C.F.R. § 165.1 ………………………………………………......3, 18, 21

19 C.F.R. § 165.2 ………………………………………………...2, 11, 12

19 C.F.R. § 165.4 ...................................................................... 27

19 C.F.R. § 165.24 ....................................................……. 6

19 C.F.R. § 165.24(c) ………………………………………….............. 28

19 C.F.R. § 165.41(d) ...............................................................……. 9

19 C.F.R. § 165.47 .................................................................... 29

19 C.F.R. § 351.225 ................................................................... 15

Federal Rule of Evidence 801(c) ................................................. 13

Federal Rule of Evidence 802 .................................................... 13

## Court Rules

U.S. Court of International Trade Rule 56.2(c)(1)..........................……. 1

## Legislative Materials

Pub. L. 114-125, 130 Stat. 122, 155 (Feb. 24, 2016)..........................… 12

**<u>Other Authorities</u>**

Constitution of the United States, Amendment V ..................................……... 25

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties*,
   81 Fed. Reg. 56,477 (Aug. 22, 2016) ...........................................……... 12

*Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty
Order: Wooden Bedroom Furniture from the People's Republic of China*,
   70 Fed. Reg. 329 (Dep't. Commerce January 4, 2005) ......................……..... 4

*Notice of Final Determination as to Evasion*,
   EAPA Cons. Case No.: 7257 (Oct. 9, 2019) .....................................……... 19

*Notice of Final Determination as to Evasion*,
   EAPA Case No.: 7184 (Sept. 17, 2019) .........................................……... 19

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 20-03824 |
| v. ) | |
| ) | **PUBLIC DOCUMENT** |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF ASPECTS FURNITURE INTERNATIONAL, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

**USCIT RULE 56.2 STATEMENT**

In accordance with Rule 56.2(c)(1) of the Rules of the United States Court of International Trade (hereinafter, the "Court" and/or "USCIT"), Plaintiff Aspects Furniture International, Inc. (hereinafter, "Plaintiff" and/or "AFI"/"Aspects") identifies in the following sections the administrative determinations it seeks for the Court to review and the issues of law associated with such determinations contested herein.

**A. Administrative Determinations Subject to Judicial Review**

This action is an appeal from United States Customs and Border Protection's (hereinafter, "CBP" and/or "Customs") final affirmative determination of evasion, issued under 19 U.S.C. § 1517(f), including its initial determination, issued under 19 U.S.C. § 1517(c), as associated with the Enforce and Protect Act (hereinafter, "EAPA") Case Number 7189 (hereinafter, "Investigation"), covering the allegation of evasion of the antidumping duty (hereinafter,

"ADD") order on wooden bedroom furniture (hereinafter, "WBF") from the People's Republic of China (hereinafter, "PRC" and/or "China"), A-570-890 (hereinafter, the "Order").

Specifically, on May 18, 2020, CBP's Trade Remedy & Law Enforcement Directorate (hereinafter, "TRLED") issued its "Notice of Final Determination as to Evasion" (hereinafter, "Initial Determination"), and on September 24, 2020, its Office of Trade, Regulations & Rulings (hereinafter, "ORR") affirmed such determination on administrative review (hereinafter, "Review Determination") (collectively, the "EAPA Determinations").

CBP's EAPA Determinations covered entries of WBF made by Plaintiff from January 1, 2016, through the pendency of this Investigation (hereinafter, "Subject Entries").[1]

### B.  Issues Presented

1.      Whether CBP's interpretation of 19 C.F.R. § 165.2, purportedly allowing EAPA to apply retroactively, is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

2.      Whether CBP's Initial Determination as to Aspects' purported evidence destruction is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, as it is based on inadmissible hearsay.

3.      Whether CBP's findings of evasion against AFI are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because CBP failed to establish, by substantial evidence, which of AFI's Subject Entries, if any, were covered merchandise at the time they were made, as required under 19 U.S.C. § 1517(c)(1)(A).

---

[1] However, as demonstrated below, because EAPA was not effective until August 22, 2016, CBP had no authority to investigate any entries made prior to such date.

4.      Whether CBP's findings of evasion against Aspects are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because CBP failed to demonstrate, by substantial evidence, that Aspects avoided payment of "applicable" antidumping cash deposits or other security, as required under 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1.

5.      Whether the EAPA statute denies the parties subject to EAPA investigations procedural due process protections, guaranteed under the Constitution of the United States, by not providing for a mechanism to allow such parties access to business confidential information.

6.      Whether CBP's EAPA implementing regulations deprive parties to EAPA investigations of procedural due process protections, guaranteed under the Constitution of the United States, by failing to establish a mechanism to allow such parties complete access to the administrative record[2] being maintained against them.

7.      Whether CBP's EAPA implementing regulations regarding interim measures deprive parties to EAPA investigations of procedural due process protections, guaranteed under the Constitution of the United States, by denying such parties notice and a meaningful opportunity to be heard before adopting the interim measures.

8.      Whether CBP's administration of this EAPA Investigation was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because CBP has improperly combined an EAPA investigation with a regulatory audit.

---

[2] On December 14, 2020, Defendant's counsel filed on the docket of this action the administrative record (both confidential and public versions) underlying the EAPA Investigation. *See generally* Confid. Admin. Rec., Dec. 14, 2020, ECF Nos.: 16 - 16-31 and Public Admin. Rec., Dec. 14, 2020, ECF Nos.: 17 - 17-26.  Collectively, this brief will refer to these submissions as "Administrative Record," and will identify a particular confidential document through "BCD" and a public document through "PD," as appropriate.

9.      Whether CBP has failed to make its determination based on "substantial evidence," contrary to 19 U.S.C. § 1517(g)(2)(A), by erroneously shifting the burden of proof to Aspects.

### STATEMENT OF FACTS

On January 4, 2005, the U.S. Department of Commerce (hereinafter, "DOC" and/or "Commerce") issued the Order. *See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China,* 70 Fed. Reg. 329 (Dep't. Commerce January 4, 2005).

On April 6, 2017, the American Furniture Manufacturers Committee for Legal Trade (hereinafter, the "EAPA Alleger" and/or "AFMC") filed an EAPA allegation of evasion with TRLED against Aspects. *See* Letter from J. Michael Taylor, King & Spalding LLP (on behalf of AFMC) (Apr. 6, 2017), PD Nos. 13-18 ("Allegation").  On April 17, 2017, AFMC supplemented its Allegation. *See Notice of initiation of an investigation and interim measures taken as to Aspects Furniture International, Inc. concerning evasion of the antidumping duty order on Wooden Bedroom Furniture from the People's Republic of China* (Aug. 14, 2017), at 2, BCD No. 113, PD No. 138 (hereinafter, "Notice of Initiation and Interim Measures") (available at: https://www.cbp.gov/document/report/eapa-investigation-number-7189-aspects-furniture-international-inc-notice-initiation, last accessed April 13, 2021).  Aspects was not provided with a copy of the supplemented Allegation.

CBP acknowledged receipt of AFMC's "properly filed" Allegation on April 18, 2017, and on May 9, 2017, it formally initiated this EAPA Investigation."  *See* E-mail from Natalie Ragland (Apr. 18, 2017), PD No. 22 and *Memo to: the File: Initiation of Investigation in EAPA*

*Case Number 7189* (May 9, 2017), PD No. 100.  Aspects was not provided with a copy of this May 9, 2017 submission.

On April 6, 2017, CBP requested Aspects to provide copies of entry packages related to 2016 entries, to include the entry summary, commercial invoice, purchase order, proof of payment to the supplier, accounting records, customhouse broker bill, bill of lading, packing list, specification sheets, photos of the merchandise, manufacturer name and address, as well as any evidence establishing that the identified manufacturer produced the goods (production records, purchase invoices, etc.).  *See* Initial Determination at 2, BCD No. 310, PD No. 419.  On April 22, 2017, On April 22, 2017, Aspects provided records in response.  *Id.; see also* RA Aspects Entry Package Submission Sample Nos. 1-66, BCD Nos. 15-77, PD Nos. 20-94.

On May 30, 2017, before Aspects was formally notified of this EAPA Investigation and without its participation, the EAPA team had a meeting/teleconference with AFMC's counsel, at its request, in order for AFMC's counsel to "provide it with an opportunity to brief the Enforce and Protect Act ("EAPA") investigative team on its allegation and to answer any questions on the information presented therein."  *See Memorandum to: the File: American Furniture Manufacturers Committee for Legal Trade ("AFMC")'s Meeting to Discuss the Allegation as to Evasion of AD/CVD Order (A-570-890) concerning Wooden Bedroom Furniture ("WBF") from China For Aspects Furniture International, Inc. ("Aspects")* (May 31, 2017), PD 104.  During such meeting/teleconference, AFMC's counsel allegedly provided CBP with "an overview of AFMC's evasion claims from the allegation."  *Id.*  Aspects was not provided with a transcript of such meeting/teleconference.

On June 5, 2017, CBP requested Aspects to provide copies of entry packages related to 2017 entries, to include the entry summary, commercial invoice, purchase order, proof of

payment to the supplier, accounting records, customhouse broker bill, bill of lading, packing list, specification sheets, photos of the merchandise, manufacturer name and address, as well as any evidence establishing that the identified manufacturer produced the goods (production records, purchase invoices, etc.).  *See* Initial Determination at 2, BCD No. 310, PD No. 419.  On June 23, 2017, Aspects provided records in response.  *Id.; see also* RA Aspects Entry Package Submission Nos. 1-36, BCD Nos. 86-110, PD Nos. 106-134.

On July 27, 2017, CBP conducted a visit to Aspects' facility in Chino, California, and met with company representatives.  *See* Initial Determination at 2, BCD No. 310, PD No. 419.

AFI was formally notified of the EAPA Investigation, as well as the interim measures imposed against it under 19 U.S.C. § 1517(e) and 19 C.F.R. § 165.24, on August 14, 2017.  *See* Notice of Initiation and Interim Measures at 4-5, BCD No. 113, PD No. 138.  In its Notice of Initiation and Interim Measures, CBP informed AFI that because it was "already reviewing Aspects' entries, covering the entire calendar year of 2016," CBP will "extend the scope of this [EAPA] investigation to align with that review and the entries covered by this investigation are those entered for consumption, or withdrawals from warehouse for consumption, from January 1, 2016, through the pendency of this investigation."  *See* Notice of Initiation and Interim Measures at 2, BCD No. 113, PD No. 138.[3]

Between October 2017 and March 2018, CBP sent requests for information to Aspects and to Chinese manufacturers/exporters associated with Aspects' Subject Entries.  *See* Notice of Initiation and Interim Measures at 2, BCD No. 113, PD No. 138.  Aspects and its Nantong, China satellite office (hereinafter, "Aspects Nantong") promptly complied with CBP's requests.

---

[3] However, as demonstrated below, because EAPA was not effective until August 22, 2016, CBP had no authority to investigate any entries made prior to such date.

*Id.* Wuxi Yushea Furniture Co., Ltd. (hereinafter, "Wuxi Yushea") and Nantong Fuhuang Furniture Co., Ltd. (hereinafter, "Nantong Fuhuang"), two of Aspects' Chinese manufacturers/exporters, also submitted responses. *Id.*

On December 22, 2017, CBP informed the parties that "the deadlines in EAPA investigation 7189 have been stayed" due to a covered merchandise referral transmitted to DOC (hereinafter, "Scope Referral"). *See E-mail from Natalie Ragland* (Dec. 22, 2017). The Scope Referral was not initiated until August 1, 2019. *See Memorandum to: The File: Wooden Bedroom Furniture from the People's Republic of China: Placement of Revised Covered Merchandise Referral on the Record* (Dep't Commerce Aug. 1, 2019) (not placed on the Administrative Record).

From April 23, 2018, through April 27, 2018, CBP conducted site visits in China, aimed at verifying the responses placed on the EAPA record by AFI and other participants (hereinafter, "Verification Visit"). *See ON-SITE VERIFICATION REPORT ENFORCE AND PROTECT ACT (EAPA) CASE 7189* (Dec. 13, 2018) (hereinafter, "Verification Report") at 2, BCD No. 295, PD No. 373. In particular, the Verification Visit sought to determine "whether the manufacturers [Nantong Fuhuang and Wuxi Yushea] could produce/manufacture sufficient quantities of the WBF to export to the United States." *Id.* The scope of the Verification Visit included 28 entries associated with Aspects' imports. *Id.* at 3.[4]

While CBP brought a Chinese translator, no official certification was provided to AFI. Moreover, there were several instances where one of Aspects' employees, who spoke both English and Mandarin Chinese, unsuccessfully attempted to correct and/or better explain the

---

[4] However, as demonstrated below, any entries dated prior to August 22, 2016, EAPA's effective date, were improperly included in the EAPA investigation and should have been disregarded accordingly.

translation provided by CBP's translator, which has likely led to misunderstandings of the answers provided to CBP.

On December 31, 2019, DOC issued its final scope ruling, in response to CBP's Scope Referral, which was transmitted to CBP on January 8, 2020. *See Letter from Wendy J. Frankel: Covered Merchandise Referral Regarding EAPA Investigation No. 7189* (Dep't Commerce Jan. 8, 2020) (hereinafter, "Final Scope Ruling"), BCD No. 303, PD No. 387. CBP placed a public version of DOC's Final Scope Ruling on the EAPA Record on January 9, 2020. *See E-mail from Steve Bezirganian* (Jan. 9, 2020) (not placed on the Administrative Record).

In its Final Scope Ruling, DOC concluded that four (4) out of six (6) items were not covered under the Order—(1) the desk/console table with drawers (G-200); (2) the TV cabinet with a minibar (G-208L and G-208R); (3) the trunk storage unit (G-207); and (4) the bed bench base (GF-200) (hereinafter, "Excluded Items")—while two (2) items were covered—the TV credenzas/dressers (G-206(1) and G-206(2)) and the console/custom dresser (GF-103L and GF-103R) (hereinafter, "Covered Items"). *See* Final Scope Ruling at 1, BCD No. 303, PD No. 387.

On January 22, 2020, CBP sent the parties the Verification Report, outlining CBP's findings after the Verification Visit. *See E-mail from Steve Bezirganian* (Jan. 22, 2020) (not placed on the Administrative Record); *but see E-mail from Steve Bezirganian* (Jan. 22, 2020), PD No. 389. The Verification Report had been prepared and revised since December 13, 2018. *See* Verification Report at 1, BCD No. 295, PD No. 373.

In the Verification Report, CBP found, *inter alia*, that both Nantong Fuhuang and Wuxi Yushea "were able to produce the WBF at sufficient quantities as to account for the imported merchandise totals" associated with AFI's entries subject to this EAPA Investigation, which was

one of the aspects CBP sought to verify through its visit.  *See* Verification Report at 4, BCD No. 295, PD No. 373.

Between February 10, 2020 and March 10, 2020, the parties submitted their written arguments and responses, as follows: on February 10, 2020, AFI submitted its written argument (hereinafter, "AFI's Written Argument"), on March 6, 2020, AFMC resubmitted its written arguments and its response to AFI's Written Argument, and on March 10, 2020, AFI resubmitted its response to AFMC's Written Argument (hereinafter, "AFI's Response").  *See* BCD Nos. 304-308, PD Nos. 403-406, 410-416.

On May 18, 2020, TRLED issued its Initial Determination, finding that there was substantial evidence that AFI "evaded AD duties owed on Chinese-origin WBF entered into the customs territory of the United States by using a number of tactics."  *See generally* Initial Determination, BCD No. 310, PD No. 419 (available at:

https://www.cbp.gov/document/report/notice-final-determination-evasion-eapa-case-number-7189, last accessed April 13, 2021).

On June 30, 2020, AFI timely filed a request for *de novo* administrative review of the Initial Determination, pursuant to 19 U.S.C. § 1517(f)(1) and 19 C.F.R. § 165.41(d).  *See* AFI's Request for Administrative Review, BCD No. 311, PD No. 420.

On September 24, 2020, the ORR affirmed CBP's Initial Determination.  *See generally Admin. Review Determination in EAPA Case Number 7189* (Sept. 24, 2020), PD No. 429.  This judicial appeal follows.

## ARGUMENT

For the reasons set forth below, the Court should find CBP's EAPA Determinations to be arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

### A. Standard of Review

EAPA directs the court conducting a judicial review of CBP EAPA determinations to establish whether such determinations, issued pursuant to 19 U.S.C. § 1517(c) or 19 U.S.C. § 1517(f), were "conducted in accordance with those subsections." 19 U.S.C. § 1517(g)(1). In so doing, the court "shall examine . . . whether [CBP] fully complied with all procedures under subsections (c) and (f)" and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 1517(g)(2).

An agency acts in an arbitrary and capricious manner when it fails to "examine the relevant data and articulate a satisfactory explanation for its action[,] including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)). In reviewing an arbitrary and capricious challenge to agency action, the court will "consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgement." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285 (1974); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). An agency's reliance on an explanation "that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[,]" is arbitrary and capricious. *Motor Vehicle*, 463 U.S. at 43 (citation omitted).

Further, an agency abuses its discretion when its decision is "based on an erroneous interpretation of the law, … or represents an unreasonable judgement in weighing factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citation omitted). This Court, when assessing the reasonableness of an agency's decision to reject allegedly pertinent

information, has found the following factors relevant to its analysis: burden of incorporating the information; probability of such information increasing the accuracy of calculated margins, if incorporated; and the agency's interest in ensuring finality. *See Grobest & I-Mei Industrial (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365–67 (Ct. Int'l Trade 2012) (holding that an agency abused its discretion by rejecting untimely, but not burdensome to incorporate, information that, if considered, likely would have resulted in the agency reaching a different conclusion; *see also NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207–08 (Fed. Cir. 1995) (holding that it was an abuse of discretion for an agency to reject corrective information that would have prevented imposition of millions of dollars' worth of unjustified duties).

The court determines whether an agency action is "in accordance with law" based on the two-prong test established in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States*, 426 F. Supp. 3d 1353, 1357 (Ct. Int'l Trade 2020). Under the first prong, the court examines whether the statute unambiguously addresses the "precise question at issue" in the case. *Id.* (quoting *Chevron*, 467 U.S. at 843). If the answer to that question is "yes, 'that is the end of the matter,' and [the court] must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting *Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1322, 1329 (Fed. Cir. 2017); *Chevron*, 467 U.S. at 842-43). Only where "the statute is silent or ambiguous with respect to the specific issue" does the court evaluate the agency's interpretation of the statute. *Id.*

**B. CBP's Interpretation of 19 C.F.R. § 165.2, Purportedly Allowing EAPA to Apply Retroactively, Is Arbitrary, Capricious, An Abuse of Discretion, and Not in Accordance with Law**

"[A]bsent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). The Trade Facilitation and Trade Enforcement Act of 2015 (hereinafter, the "Act"), which contains EAPA, was enacted

on February 24, 2016. *See* Pub. L. 114-125, 130 Stat. 122, 155 (Feb. 24, 2016). However, pursuant to Section 421(c) of the Act, which governs EAPA, the amendments made under such section "shall *take effect* on the date that is *180 days after the date of the enactment of the Act*." *Id.* at 168, 19 U.S.C. § 1517 note (emphasis added). As such, per Congress' explicit indication, EAPA did not became effective until August 22, 2016. *See also Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 81 Fed. Reg. 56,477 (Aug. 22, 2016) (hereinafter, "Interim Final Rule").

Here, in its Initial Determination, CPB claimed that EAPA "regulations" state "explicitly" that an EAPA investigation is retrospective. *See* Initial Determination at 3, n. 7, BCD No. 310, PD No. 419. This interpretation is erroneous for two (2) reasons. First, the regulation CBP cites to, 19 C.F.R. § 165.2, does not "explicitly" state that EAPA investigations are retroactive; at best, the provision *implies* retroactivity. Second, assuming, *arguendo*, that the regulation cited indeed implies retroactivity, Customs is not permitted to override congressional intent and clear language used by Congress through its regulations implementing the given statute passed by Congress. *See Gozlon-Peretz*, 498 U.S. at 404. Since here, as demonstrated above, Congress provided a clear direction when passing EAPA that such statute shall not become effective until August 22, 2016, Customs' regulation implementing EAPA, 19 C.F.R. § 165.2, cannot override this mandate and allow the statute to apply to events which occurred prior to August 22, 2016; this includes not allowing EAPA investigations to be conducted on entries made into the United States commerce prior to such date.

Therefore, it is only after such date—August 22, 2016— that CBP was provided with legal authority to initiate and conduct investigations under EAPA. Consequently, to the extent CBP's Initial Determination and/or its Review Determination extend to entries made by AFI

prior to August 22, 2016, such decisions should be reversed by this Court as being arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, as they were made due to an erroneous interpretation and application of the applicable law—the EAPA statute and its implementing regulation.[5]

### C.  CBP's Initial Determination as to Aspects' Purported Evidence Destruction Is Arbitrary, Capricious, an Abuse of Discretion, and Otherwise not in Accordance with Law, As It Is Based on Inadmissible Hearsay

Hearsay means a statement that the declarant does not make while testifying at the current trial or hearing and a party offers in evidence to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c).  As a general rule, hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court of the United States provide otherwise.  Fed. R. Evid. 802.

Here, in its Verification Report, which CBP heavily relied on when reaching both its Initial Determination and Review Determination, CBP alleged that "Aspects' employees actively deleted and destroyed documents and correspondence."  *See* Verification Report at 16-18, BCD No. 295, PD No. 373.  CBP based its conclusion on one of the CBP officials present at the Aspects Nantong office verification site, who allegedly witnessed such asserted destruction.  *Id.* at 17.  Because these statements, which appear to have been made on December 13, 2018 (when the Verification Report was prepared), constitute hearsay not within any established exception, the Court should find that Customs' reliance on such statements was arbitrary and capricious, as it disregards the rule against hearsay, as explained above.

---

[5] For a list of Subject Entries, as identified by Aspects, made prior to August 22, 2016 and considered by CBP when conducting this EAPA Investigation, *see* AFI's Written Argument at 20, BCD No. 306, PD No. 404.

Further, CBP's ORR decision to completely discard the declarations provided by Aspects with its submission of the June 30, 2020 request for administrative review was an abuse of discretion.  *See* AFI's Request for Administrative Review, Ex. 1-2, BCD No. 311, PD No. 420 Even if these declarations are found by this Court to have been submitted untimely under EAPA or its implementing regulation, it would not have been burdensome for CBP's ORR to incorporate such declarations, in order to have a complete record to base its *de novo* decision on. *See Grobest*, 815 F. Supp. at 1365–67 (holding that an agency abused its discretion by rejecting untimely, but not burdensome to incorporate, information that, if considered, likely would have resulted in the agency reaching a different conclusion); *see also NTN Bearing*, 74 F.3d at 1207– 08 (holding that it was an abuse of discretion for an agency to reject corrective information that would have prevented imposition of millions of dollars' worth of unjustified duties).

### D. CBP's Findings of Evasion Against AFI Are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Failed to Establish, by Substantial Evidence, Which of AFI's Subject Entries, If Any, Were Covered Merchandise at the Time they Were Made, as Required Under 19 U.S.C. § 1517(c)(1)(A)

Under EAPA, CBP investigates and determines "whether . . . ***covered merchandise*** was entered into the customs territory of the United States through evasion."  19 U.S.C. § 1517(c)(1)(A) (emphasis added).  Covered merchandise means merchandise that is subject to an antidumping and/or countervailing duty order.  *Id.* § 1517(a)(3).  Further, Customs' determination whether covered merchandise entered the United States through evasion must be "based on substantial evidence."  *Id.* § 1517(c)(1)(A).  Substantial evidence includes, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Fisco v. United States Treasury Dep't*, 695 F. Supp. 1189, 1193 (Ct. Int'l Trade 1998) (citations omitted).  Substantial evidence requires "more than a mere scintilla," but may be "something less

than the weight of the evidence." *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004).  In determining the existence of substantial evidence, "the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence" must be considered.  *Atlantic Sugar, Ltd. v. United States, 744 F.2d,*1556, 1562 (Fed. Cir. 1984).  "This includes 'contradictory evidence or evidence from which conflicting inferences could be drawn.'"  *Huzhou Muyun Wood Co. v. United States*, 324 F. Supp. 3d 1364, 1373 (Ct. Int'l Trade 2018) (citations omitted).

When the scope of an antidumping and/or countervailing duty (hereinafter, "AD/CVD") order is unclear or ambiguous, only DOC has the authority to provide an interpretation.  *See generally* 19 U.S.C. §§ 1671-1677n; *see also Sunpreme Inc. v. United States*, 924 F.3d 1198, 1213-14 (Fed. Cir. 2019), *aff'd in part, rev'd in part on other grounds,* 946 F.3d 1300 (Fed. Cir. 2020).  If "'the product in question is already subject to suspension of liquidation, that suspension of liquidation will be continued' pending the final scope ruling."  *Sunpreme Inc.*, 946 F.3d at 1316.  However, "[i]f there has been no previous suspension of liquidation, and the final scope ruling is that the product is covered by the order, then Commerce is instead commanded by subsection (l)(3) [of 19 C.F.R. § 351.225] to instruct Customs to suspend liquidation and collect the requisite cash deposit "for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption *on or after the date of initiation of the scope inquiry*."  *Id*. (emphasis in original).  "Alternatively, if the final scope ruling is that the product in question was not within the scope of the order, subsection (l)(3) provides that Commerce will order any previous suspension of liquidation ended and instruct Customs to refund cash deposits already made or release any bonds relating to the product."  *Id.*

Here, Commerce initiated its Scope Referral on August 1, 2019.  *See Memorandum to: The File: Wooden Bedroom Furniture from the People's Republic of China: Placement of Revised Covered Merchandise Referral on the Record* (Dep't Commerce Aug. 1, 2019) (not placed on the Administrative Record).  With respect to items G-200 (desk/console table with drawers), G-208L and G-208R (TV cabinet with a minibar), G-207 (trunk storage unit), and GF-200 (bed bench base), Commerce found that they are not covered within the scope of the Order and are hence not covered merchandise within the meaning of EAPA.  *See* Final Scope Ruling at 1, BCD No. 303, PD No. 387.  Accordingly, because EAPA investigations can only apply to "covered merchandise," the appropriate Subject Entries under which such items were imported by AFI should not have been included by CBP in any of its EAPA Determinations.  *See* 19 U.S.C. § 1517(c)(1)(A).

Notwithstanding, in its Initial Determination, affirmed in its entirety by the Review Determination,[6] CBP provided a confusing and ambiguous explanation as to why such entries should still be subject to the EAPA Investigation and its Initial Determination.  Specifically, CBP stated as follows:

> "With regard to products Commerce found outside of the scope based on product descriptions, in various instances during verification CBP found discrepancies in the identification of merchandise associated with actual entries, such 'that the descriptions of merchandise on documentation submitted by Aspects often differed from those documents submitted by the manufacturers,' as described above.  Although Aspects may have correctly classified certain imported products as type 03, CBP found discrepancies, such as those relating to the identification of the producers of specific merchandise, supporting a conclusion that applicable antidumping duties were underpaid."

Initial Determination at 8, BCD No. 310, PD No. 419.

---

[6] *But see* Review Determination at 8, wherein CBP seems to overturn, at least in part, CBP's conclusion that evasion can be found against Aspects even with respect to the entries excluded pursuant to Commerce's Final Scope Ruling.  Notwithstanding, CBP's ORR Review Determination states that TRLED's Initial Determination was affirmed in its entirety.

CBP failed to articulate a satisfactory explanation for its conclusion that "applicable antidumping duties were underpaid" for entries under which Aspects imported Excluded Items. Since no antidumping duties were even owed for such products, no underpayment of antidumping duties can be reasonably calculated and found.  The alleged "discrepancies in the identification of merchandise" or issues with the "description of merchandise" are not particularized to *any* of the Excluded Items or the entries under which these items were imported by AFI.  Instead, as it is the case with CBP's findings in both EAPA Determinations, CBP merely attempts to use *certain instances* of such discrepancies to extend them to all of AFI's entries, even those with respect to which no such discrepancies were in fact found—such as Excluded Entries.  Accordingly, Customs' finding that antidumping duties were underpaid even with respect to entries not containing "covered merchandise" is arbitrary and capricious, since there is no rational connection between the instances where description discrepancies were found and the entries under which AFI imported "non-covered" merchandise.  *See Motor Vehicle*, 463 U.S. at 43[7] (citations omitted).

As to Aspects' entries of items G-206(1) and G-206(2) (TV credenzas/dressers) and items GF-103L and GF-103R (console/custom dresser), Commerce did find such products to fall under the scope of the Order.  *See* Final Scope Ruling at 1, BCD No. 303, PD No. 387.  However, to the extent any of these entries were made on or before August 1, 2019 and were not suspended by CBP prior to such date, they are not "subject to" the Order, as required under 19 U.S.C. §

---

[7] For a list of Subject Entries, as identified by Aspects, which do not consist of "covered merchandise," within the meaning of EAPA, per Commerce's Final Scope Ruling, *see* AFI's Written Argument at 26, BCD No. 306, PD No. 404.

1517(c)(1)(A), and cannot thus be qualified as "covered merchandise" for purposes of EAPA. *See Sunpreme*, 946 F.3d at 1316. [8]

In addition, due to the fact that *all* Covered Items imported by Aspects were produced and exported by Wuxi Yushea,[9] whose ADD rate has been zero percent (0.00%) at all times relevant for the EAPA Investigation, as demonstrated in the following section, none of these entries could support a positive finding of evasion as they negate the third element required for such a finding: a reduction or avoidance of applicable antidumping or countervailing duty cash deposits or other security.  *See* 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1.

Therefore, with respect to the entries analyzed above, there is no substantial evidence to support a positive finding of evasion, as such entries did not contain "covered merchandise," as particularized above, which is the first requirement set out under the EAPA statute and its implementing regulation for a positive finding of evasion.  *See* 19 U.S.C. § 1517(c)(1)(A).

**E.  CBP's Findings of Evasion Against Aspects Are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Failed to Demonstrate, by Substantial Evidence, that Aspects Avoided Payment of "Applicable" Antidumping Cash Deposits or Other Security, as Required Under 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1**

Under EAPA, evasion is defined as:

entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

---

[8] For a list of Subject Entries, as identified by Aspects, which do not consist of "covered merchandise," within the meaning of EAPA, if made before August 1, 2019, per Commerce's Final Scope Ruling, *see* AFI's Written Argument at 27, BCD No. 306, PD No. 404.
[9] *See* AFI's Written Argument at 28, n. 96, BCD No. 306, PD No. 404, for a list of Subject Entries Aspects has identified as containing the Covered Items.

*Id*. § 1517(a)(5)(A).

Thus, as recognized by CBP itself, EAPA outlines three elements for the agency to address in order to reach an affirmative determination: (1) whether the entries in question are covered merchandise (as discussed above) when they entered into the customs territory of the United States; (2) whether such entries were made by a material false statement or act or material omission; and (3) whether there was a resulting reduction or avoidance of applicable AD/CVD cash deposits or other security.  *See Notice of Final Determination as to Evasion*, issued in EAPA Cons. Case No.: 7257 (Oct. 9, 2019) (available at:

https://www.cbp.gov/document/guidance/eapa-investigation-cons-case-number-7257-prime-stainless-products-llc-notice-final, last accessed April 13, 2021 ); *see also Notice of Final Determination as to Evasion*, issued in EAPA Case No.: 7184 (Sept. 17, 2019) (available at: https://www.cbp.gov/document/guidance/eapa-investigation-number-7184-diamond-tools-technology-llc-notice-final, last accessed April 13, 2021).

Here, in both its Initial Determination and Review Determination, CBP did not articulate a satisfactory explanation for its finding that Aspects avoided the payment of **applicable** antidumping cash deposits; instead, CBP merely stated, in a conclusory fashion, that some of the misreporting and inconsistencies found in some of AFI's Subject Entries resulted in such reduction, without however drawing a rational connection between these inconsistencies and the alleged reduction of ADD.  *See* Initial Determination at 9-10, BCD No. 310, PD No. 419; *see also* Review Determination at 8-10, PD No. 429.  As the reduction of ADD is a technical element, the reviewing agency should perform the appropriate mathematical calculations in order to be reasonably and rationally established.  However, nowhere in its EAPA Determinations or the Administrative Record (whether the public version or the business confidential version) does

it appear that CBP went through this necessary step.  Instead, CBP, in haste, simply concluded that a reduction of ADD has occurred, but without providing any explanation as to how such considerations resulted in the reduction of ADD.  *Id.*

### Entries Produced and Exported by Wuxi Yushea

Beginning in the year 2016 and throughout the pendency of this EAPA Investigation, Aspects' primary supplier of furniture, whether WBF or non-WBF, has been Wuxi Yushea.  *See* AFI's Request for Administrative Review, Ex. 3, BCD No. 311, PD No. 420.  Ever since, the cash deposit ADD rate applicable to merchandise exported by Wuxi Yushea has been zero percent (0.00%), and that has remained unchanged throughout the entire EAPA Investigation to the date of this submission.  *See* AFI's Written Argument at 10-14, BCD No. 306, PD No. 404. In fact, Wuxi Yushea obtained this separate cash deposit rate of zero percent (0.00%) in 2013, and through the conduct of AFMC, the EAPA Alleger, and Commerce, it has been able to maintain such separate cash deposit rate to date.  *Id.*

Specifically, for the years 2016, 2017, and 2018 (and 2015, for that matter), AFMC has requested the administrative review of Wuxi Yushea under the Order, stating that it "may have sold subject merchandise into the United States at less than fair value during the period of investigation or participated in schemes to circumvent the antidumping order."  *Id.*  However, for each of those respective years, AFMC has subsequently withdrawn its requests for review with respect to Wuxi Yushea, amongst other WBF producers/exporters, presumably after reviewing Wuxi Yushea's export records and concluding that it no longer had fears that Wuxi Yushea was selling at less than fair value, or that it was participating in a scheme to circumvent the antidumping order.  *Id.*  Subsequently*,* in response to AFMC's withdrawals, DOC has in turn rescinded all such requests for review of Wuxi Yushea, including throughout the period covered

by this EAPA Investigation.  *Id.*  As a result, Wuxi Yushea has maintained its zero percent (0.00%) cash deposit ADD rate.

Further, with respect to Commerce's Final Scope Ruling, none of the entries under which Aspects imported Covered Items could have been entered through evasion, since all Covered Items have been produced and exported by Wuxi Yushea,[10] a company with a continued zero percent (0.00%) ADD rate.  As a result, even in those instances where AFI erroneously entered Covered Items under "type 01" instead of "type 03," such misreporting could not have had any duty impact, as not paying *any* ADD (as is the case with "type 01" entries) is the same as paying zero percent (0.00%) in ADD—in both cases, the duty owed is zero (0.00).

Therefore, no entries of merchandise imported by Aspects and exported by Wuxi Yushea, whether WBF or non-WBF, could have resulted or have resulted in evasion, as defined under the EAPA regulations cited herein; because none of these entries have caused any reduction or avoidance of applicable antidumping or countervailing duty cash deposits or other security, as required under 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1, given that the ADD rate applicable to such entries has been zero percent (0.00%) at all moments relevant for the EAPA Investigation.

CBP's attempts to circumvent this third requirement for a positive finding of evasion by stating that Wuxi was not the exporter of the merchandise it produced for AFI are irrational and based on clear errors of judgment.  On one hand, as indicated above, CBP was able to verify that Wuxi Yushea has the requisite manufacturing capabilities, such that it was "able to produce the WBF at sufficient quantities as to account for the imported merchandise totals" associated with

---

[10] *See* AFI's Written Argument at 28, n. 96, BCD No. 306, PD No. 404, for a list of Subject Entries Aspects has identified as containing the Covered Items.

AFI's entries subject to this EAPA Investigation.  *See* Verification Report at 4, BCD No. 295, PD No. 373.  Moreover, when it comes to supporting its findings that AFI has made *some* materially false statements in its Subject Entries (*i.e.,* the second element for an affirmative finding of evasion), CBP gives deference to the descriptions displayed on the invoices it has been provided with by Wuxi Yushea.  *Id.* at 10-11.  However, when attempting to establish the third element required for an affirmative finding of evasion (*i.e.,* the nonpayment or underpayment of ADD), CBP seems to claim that due to these inconsistencies, it was unable to verify that Wuxi was the manufacturer and the exporter for *any* of the WBF products imported by Aspects under the Subject Entries.  *Id.; see also* Initial Determination at 10, BCD No. 310, PD No. 419.

But CBP cannot be permitted, on one hand, to rely on Wuxi's statements and the invoices it provided to make a conclusion adverse to AFI (*i.e.,* that AFI misdescribed some of its imported merchandise), while at the same time claim that because of such discrepancies, it cannot conclude that Wuxi produced *any* of the WBF products imported by AFI under the Subject Entries.  Such a conclusion is irrational and contradicts the record before CBP, ignoring evidence favorable to Aspects and used by CBP to support only its adverse findings against AFI.  These records, consisting mainly of invoices issued by Wuxi Yushea to Aspects for the furniture it produced, also establish the business relationship between the two (2) companies: AFI as the importer of record/consignee and Wuxi Yushea as the producer/exporter/shipper.

In its Review Determination, CBP goes even further and claims, without any rational support, that "for at least some of the entries, [Aspects] controlled the export process behind the scenes."  *See* Review Determination at 10, PD No. 429.  Based on nothing but this assertion, CBP proceeds to conclude that, even though "[i]t is **not clear which entries these were**," Aspects failed to demonstrate that the zero percent (0.00%) AD rate applied to *any* of Aspects'

entries for which Wuxi Yushea was, in fact, the manufacturer and exporter.  *Id.* (emphasis added).  This conclusion is arbitrary, capricious, and an abuse of discretion for several reasons.

First, CBP's claim that AFI "controlled the export process behind the scenes" is based on its erroneous findings that Aspects' choice of the sales terms under which it contracted with its suppliers, particularly Wuxi Yushea, indicated that Aspects was not just the importer of record for the Subject Entries, but also the exporter *de facto*.  *See* Verification Report at 15-18, BCD No. 295, PD No. 373.  Specifically, CBP found that because Aspects allegedly used free on board (hereinafter, "FOB") terms for certain shipments, but ex works (hereinafter, "EXW") terms[11] for others, this was somehow an indication that AFI took over the exporter role for all of its Wuxi Yushea Subject Entries.  *Id.*  This finding is erroneous from both a factual and a legal perspective.  From a factual perspective, CBP points to nothing on the Administrative Record that support this contention, despite having been provided with complete entry packages from AFI (which included invoices, bills of lading, purchase orders).  *See, e.g.,* RA Aspects Entry Package Submission Sample Nos. 1-66, BCD Nos.: 15-77, PD Nos.: 24-94.  In fact, based on Aspects' meticulous review of the Administrative Record, it has never contracted with Wuxi Yushea on an EXW basis.  Further, from a legal perspective, the fact that the terms used for a particular shipment are EXW does not change the parties' roles in the transaction: the seller remains seller (and shipper/exporter in the international trade arena), and the buyer remains the buyer (and importer of record).  The buyer does not become an exporter simply by choosing

---

[11] FOB and EXW terms are standard, global terms of trade used for the international sale of goods—they are part of a compilation maintained by the International Chamber of Commerce (hereinafter, "ICC"), known as "Incoterms."  An Incoterm is "[a] standardized shipping term, defined by the International Chamber of Commerce, that apportions the costs and liabilities of international shipping between buyers and sellers." Black's Law Dictionary 835 (9th ed. 2009).

EXW instead of FOB; this choice is a purely business decision and it has no impact on the roles the parties play.

Second, CBP admits that it has not been able to identify under which Wuxi Yushea Subject Entries the EXW terms of sale were used,[12] by stating that "it is not clear which entries these were."  *See* Review Determination at 10, PD No. 429.  Still, somehow finding support in this flawed finding, it goes own to draw the conclusion that Wuxi Yushea was not the manufacturer and exporter for *any* of the AFI Subject Entries under which Wuxi Yushea was declared as such.  *Id.*  This unsupported finding goes against the ample record evidence before CBP, which indeed contains certain inconsistencies discussed throughout this brief, but nonetheless establishes that Wuxi Yushea was the manufacturer and exporter for most of AFI's Subject Entries.  *See, e.g.,* RA Aspects Entry Package Submission Sample Nos. 1-66, BCD Nos.: 15-77, PD Nos.: 24-94.  In other words, while admitting that it has not been able to verify the statements collected during its Verification Visit with regards to AFI's alleged use of EXW terms in its transactions with Wuxi Yushea, CBP is nonetheless concluding that "Aspects and Wuxi Yushea have not demonstrated that the zero percent AD rate was actually applicable" to *any* of the shipments from Wuxi Yushea, and therefore the entire factual record should be disregarded and *all* of AFI's entries from Wuxi Yushea should be liquidated at the China-wide rate, despite the fact that Wuxi Yushea's ADD rate is zero percent (0.00%).  *See* Review Determination at 10, PD No. 429.  Because this reasoning lacks a rational connection between the facts found and the choice made, *Motor Vehicle,* 463 U.S. at 43 (citation omitted), the Court should find that it is arbitrary and capricious.

---

[12] In fact, CBP has not even identified *one (1)* such entry in its EAPA Determinations.

Therefore, because the ADD cash deposit rate owed for WBF produced and exported by Wuxi was zero percent (0.00%) at the time when each of the relevant Wuxi Yushea Subject Entries was made, any irregularities that EAPA may have identified with respect to such entries do not warrant a positive finding of evasion under EAPA, as they have not resulted in AD duty loss—a distinct element required by the EAPA statute.  19 U.S.C. § 1517(a)(5)(A).

### F.   The EAPA Statute Denies the Parties Subject to EAPA Investigations Procedural Due Process Protections, Guaranteed under the Constitution of the United States, By Not Providing for a Mechanism To Allow Such Parties Access to Business Confidential Information

The Constitution of the United States provides that no person is to be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V.  An administrative adjudication that deprives someone of liberty or property must provide due process to such person. *Londoner v. Denver*, 210 U.S. 373 (1908).

Here, the EAPA Investigation has deprived Aspects of both liberty and property interests. First, the ADD Aspects would owe to CBP upon a positive determination of evasion clearly constitute an important property interest.  Furthermore, AFI's liberty interest in its professional reputation is at stake, since both the notice of initiation and notice of (initial) final determination as to evasion are public on CBP's website, available to all of Aspects' customers and the general public.  *See Wisconsin v. Constantineau*, 400 U.S. 433 (1971) (holding that where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, due process is essential).  As such, Aspects was entitled to procedural due process rights in this EAPA Investigation.

In terms of the process AFI should have been afforded under EAPA, it is access to business confidential information placed on the EAPA Administrative Record.  However, the EAPA statute establishes no such mechanism for the parties subject to EAPA Investigations (or,

at a minimum, available to the parties through their counsel). In fact, the procedure of sharing

unredacted business confidential information with a party's attorney is well-established in

AD/CVD investigations and reviews conducted by Commerce, *see, e.g.*, 19 U.S.C. §

1677f(c)(1)(A), and there is no apparent legitimate reason for the difference in treatment between

such investigations conducted by Commerce and an EAPA investigation conducted by Customs.

*See Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) (stating that

statutes containing similar language and sharing common raison d'etre should be interpreted pari

passu).

    As a result, by failing to provide for such due process, the EAPA statute has deprived

Aspects of its private interest to be presented with all the evidence being gathered against it, so

as to allow Aspects to effectively defend itself against an allegation of evasion; with the ultimate

consequence of depriving it of both liberty and property interests protected and guaranteed by the

United States Constitution.

### G.  In turn, CBP's EAPA Implementing Regulations Deprive Parties to EAPA Investigations of Procedural Due Process Protections, Guaranteed Under the Constitution of the United States, By Failing to Establish a Mechanism to Allow Such Parties Complete Access to the Administrative Record Being Maintained Against Them

    As discussed above, an administrative adjudication that deprives someone of liberty or

property must provide due process to such person, and EAPA investigations are such an

adjudication which results in the deprivation of both liberty and property for the party against

which they are being conducted.  *See Londoner v. Denver*, 210 U.S. 373 (1908).

    Here, CBP's regulations implementing EAPA have failed to make up for the EAPA

statute's silence when it comes to establishing a process through which to provide the parties

subject to the EAPA Investigation with complete and unredacted access to the record being

maintained against it.  While the EAPA regulations allow the parties to view public versions of documents containing business confidential information, this is not sufficient for the party who must defend itself against such serious accusations as those capable of being brought under EAPA; this is because, without having access to the full array of accusations being brought and maintained against it, the party subject to an EAPA investigation cannot effectively prepare its defense before the administrative agency.

Further, not only has Aspects been denied access to essential evidence CBP cites against it in both of its EAPA Determinations due to the lack of a mechanism providing for access to business confidential information, but the administrative record submissions that Aspects has received throughout the pendency of this EAPA Investigation, when not entirely redacted, have contained excessive redactions, well beyond the reach of 19 C.F.R. § 165.4, the section governing the release of information claimed to be business confidential.  For instance, the Verification Report, which is the "key" submission both TRLED and ORR relied upon in reaching their determinations, contains entire sentences of redacted information, making it impossible for Aspects to fully understand the "findings" that were being made against it and to meaningfully defend itself against such "findings."  *See, e.g.,* Verification Report at 15-17, BCD No. 295, PD No. 373.

Accordingly, CBP's EAPA implementing regulations, in general, as well as its administration of this EAPA Investigation, in particular, have deprived Aspects of its private interest to be presented with all the evidence being gathered against it, so as to allow Aspects to effectively defend itself against an allegation of evasion; depriving Plaintiff of both liberty and property interests protected and guaranteed by the United States Constitution.

/ / /

**H. CBP's EAPA Implementing Regulations Regarding Interim Measures Deprive Parties to EAPA Investigations of Procedural Due Process Protections, Guaranteed under the Constitution of the United States, By Denying Such Parties Notice and a Meaningful Opportunity to Be Heard Before Adopting the Interim Measures**

An importer participating in an administrative proceeding has a procedural due process right to "notice and a meaningful opportunity to be heard." *PSC VSMPO-Avisma*, 688 F.3d at 761–62 (citations omitted). Such "notice [must be] reasonably calculated, under all the circumstances, to appri[s]e interested parties of the pendency of the action and afford them an opportunity to present their objections." *Transcom, Inc. v. United States*, 121 F. Supp. 2d 690, 708 (Ct. Int'l Trade 2000) (citations omitted). Further, where a due process right exists, it must be accommodated in both a meaningful manner and time. *See Mid Continent Nail Corp. v. United States*, 712 F. Supp. 2d 1370, 1375 (Ct. Intl. Trade 2010) (citations omitted). While conducting an EAPA investigation, "[i]f CBP decides that there is reasonable suspicion under paragraph (a) of this section, CBP will issue notification of this decision to the parties to the investigation within five business days after taking interim measures. CBP will also provide parties to the investigation with a public version of the administrative record as of that date." 19 C.F.R. § 165.24(c).

Here, CBP's regulations implementing EAPA are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, as they allowed the imposition of interim measures against Aspects without providing it with a fair opportunity to be heard before such imposition can take effect. Instead, the regulations merely provide that CBP will give notice to the parties to the investigation of any interim measures it takes within five (5) business days after it takes such measures; upon receipt of such notice though, Aspects has not been given the opportunity fight the imposition of the interim measures, which have remained in place throughout the pendency of the EAPA Investigation.

**I.  CBP's Administration of this EAPA Investigation Was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Has Improperly Combined an EAPA Investigation with a Regulatory Audit**

While 19 C.F.R. § 165.47 allows CBP and other government agencies to "undertake additional investigations or enforcement actions" in cases covered by EAPA, this provision does not allow CBP to combine such "additional investigations or enforcement actions."  *See* 19 C.F.R. § 165.47.  Different government investigations are governed by different statutory and regulatory frameworks, each bearing its own limitations for the government agency and/or body conducting the investigation (in this case, CBP), and different protections for the party subject to such investigation.  By combining an EAPA investigation with a regulatory audit, CBP has deprived Aspects of certain protections and has used its increased discretionary powers provided under the EAPA regulations to conduct a regulatory audit without respecting the specific formalities associated with a CBP regulatory audit.  *See generally* 19 U.S.C. § 1509 and 19 C.F.R. § 163.11.

**J.  CBP Has Failed to Make Its Determination Based on "Substantial Evidence," Contrary to 19 U.S.C. § 1517(g)(2)(A), by Erroneously Shifting the Burden of Proof to Aspects**

CBP did not fully comply with all procedures that EAPA sets forth.  Specifically, CBP failed to abide by 19 U.S.C. § 1517(g)(2)(A) when making its determination based on "substantial evidence," as it erroneously shifted the burden of proof to AFI.  Contrary to 19 U.S.C. § 1517(g)(2)(A), CBP wrongly claimed that, "Aspects and Wuxi Yushea have failed to demonstrate that the zero percent AD rate was actually applicable to these shipments."  *See* Review Determination at 10, PD No. 429.  However, it is not Aspects (and certainly not its supplier) who is charged with demonstrating, by substantial evidence, that its shipments entered at zero percent (0.00%) were in fact entitled to such treatment.  To the contrary: it is Customs

who must demonstrate, by substantial evidence, that AFI was not entitled to the asserted zero percent duty rate, in order to make a positive finding of evasion.  *See* 19 U.S.C. § 1517(g)(2)(A).

Notwithstanding, as demonstrated above, AFI has provided evidence showing that Wuxi Yushea is the manufacturer and exporter for most of its Subject Entries.  *See* AFI's Request for Administrative Review, Ex. 3, BCD No. 311, PD No. 420.  While, indeed, some of the documentation placed on the record by AFI contained certain inconsistencies surrounding description of merchandise, for instance, such inconsistencies are independent from the fact that Wuxi Yushea manufactured and exported such merchandise.  Moreover, the documentation provided by Wuxi Yushea corroborates AFI's reporting that Wuxi Yushea produced and exported the majority of its Subject Entries.  *See, e.g.,* Wuxi Yushea's Response to Claimed Manufacturer Request for Information, BCD Nos. 241-252, PD. Nos. 311-318.  In fact, CBP itself, in its Review Determination, has admitted that it has not been able to identify which entries it refers to when claiming that Aspects and Wuxi have failed to demonstrate entitlement to the zero percent (0.00%) ADD rate.  *See* Review Determination at 10, PD No. 429. Notwithstanding, this did not stop CBP from drawing an unsupported conclusion that Wuxi Yushea was not the manufacturer and exporter for *any* of the AFI Subject Entries under which Wuxi Yushea was declared as such.  *Id.*

As demonstrated above, not only does this finding incorrectly shift the burden of proof to AFI, but goes against the ample record evidence before CBP establishing that Wuxi Yushea was the manufacturer and exporter for most of AFI's Subject Entries.  *See, e.g.,* RA Aspects Entry Package Submission Sample Nos. 1-66, BCD Nos.: 15-77, PD Nos.: 24-94.

/ / /

/ / /

**Page 30 of 31**

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, holding unlawful and setting aside CBP's EAPA Determinations, ordering CBP to refund Plaintiff any monies collected on its imports as a result of CBP's evasion investigation in EAPA Case No. 7189, awarding Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act, 20 U.S.C. § 2412, and granting any such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
             lmoya@rwsnyderlaw.com

Counsel for Plaintiff ASPECTS
FURNITURE INTERNATIONAL, INC.

Dated: **April 13, 2021**
        Irvine, CA

**UNITED STATES COURT OF INTERNATIONAL TRADE**

<u>BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE</u>

|  |  |  |
|---|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 20-03824 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**CERTIFICATE OF COMPLIANCE PURSUANT TO**</u>

<u>**USCIT STANDARD CHAMBER PROCEDURE 2(B)**</u>

I, Robert W. Snyder, attorney at the Law Offices of Robert W. Snyder, who is responsible for the foregoing brief, relying upon the word count of Microsoft Word's word count feature (as used to prepare the brief), certify that this brief complies with the word count limitation under USCIT Standard Chamber Procedure 2(B), and contains 9,710 words.

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
            lmoya@rwsnyderlaw.com

Counsel for Plaintiff ASPECTS
FURNITURE INTERNATIONAL, INC.

Dated: **April 13, 2021**
       Irvine, CA