IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 20-03824 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. MCCARTHY
Assistant Director

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-9303

Of Counsel:

TAMARI LAGVILAVA
Attorney (Enforcement and Operations)
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, N.W.
Washington, D.C.  20229

July 9, 2021

Attorneys for Defendant United States

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT PURSUANT TO RULE 56.2 .....................................................1

I.      The Administrative Determination Under Review ...............................1

II.     Issue Presented For Review ...................................................2

STATEMENT OF FACTS .....................................................................2

I.      The EAPA Investigation .......................................................2

        A.     The Notice Of Initiation Of The Investigation ........................3

        B.     The Verification Process .............................................3

        C.     The Covered Merchandise Referral To Commerce .........................4

        D.     The Comment Process ..................................................5

II.     The May 2020 Initial Determination ..........................................5

III.    The September 2020 Final Determination ......................................6

SUMMARY OF THE ARGUMENT ..............................................................10

ARGUMENT .............................................................................10

I.      Standard Of Review ..........................................................10

II.     The Court Should Sustain The Final Determination Of Evasion .................11

        A.     AFI's Retroactivity Argument Is Academic .............................12

        B.     AFI's Hearsay Objection Is Meritless .................................13

        C.     AFI's Arguments About Non-Covered Merchandise Are Waived And
               Otherwise Rely Upon The Accuracy Of Business Records That Customs
               Found Were Riddled With False Statements ..............................16

        D.     AFI's Argument That No Duties Were Evaded Is Without Merit ............20

        E.     AFI's Constitutional Arguments Are Without Merit .....................22

        F.     AFI's Remaining Arguments Are Without Merit ..........................25

**TABLE OF CONTENTS (continued)**

**Page:**

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s):**

*A Classic Time v. United States*, 123 F.3d 1475 (Fed. Cir. 1997) ...................................23

*AIMCOR v. United States*, 141 F.3d 1098 (Fed. Cir. 1998) ........................................ 16-17

*Am. Ass'n of Exp. & Imp.-Textile & Apparel Grp. v. United States*,
    751 F.2d 1239 (Fed. Cir. 1985)..................................................................22, 23

*Anderson v. United States*, 799 F. Supp. 1198 (Ct. Int'l Trade 1992).........................13

*Cambridge Lee Indus. v. United States*, 916 F.2d 1578 (Fed. Cir. 1990)....................12

*Camreta v. Greene*, 563 U.S. 692 (2011) .....................................................................13

*Cleo Inc. v. United States*, 501 F.3d 1291 (Fed. Cir. 2007)........................................11

*Codd v. Velger*, 429 U.S. 624 (1977)...........................................................................23

*Consol. Bearings Co. v. United States*, 412 F.3d 1266 (Fed. Cir. 2005).....................11

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966)...................................................11

*Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) ..............................17

*Dorbest Ltd. v. United States*, 604 F.3d 1363 (Fed. Cir. 2010) ...................................17

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) ..............................16

*FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326 (1976) .....................................16

*Gilda Indus., Inc. v. United States*, 446 F.3d 1271 (Fed. Cir. 2006) ...........................23

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997)..............................................23

*Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329 (Fed. Cir. 2015)................23

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984)..............11

*Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375 (Fed. Cir. 2008) ....................16, 17

*Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247 (Fed. Cir. 2009)........11

*Norwegian Nitrogen Prods. v. United States*, 288 U.S. 294 (1933) ............................23

*PAM, S.p.A. v. United States*, 582 F.3d 1336 (Fed. Cir. 2009)....................................11

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012).........................15, 16

## TABLE OF AUTHORITIES (continued)

**Cases (continued):**                                                                    **Page(s):**

*Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir. 1998) ...............................................16

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001)............................................ 10-11

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005)...........................................11

*Star Pipe Prods. v. United States*, 981 F.3d 1067 (Fed. Cir. 2020)...............................................13

*Star Pipe Prods. v. United States*, 393 F. Supp. 3d 1200 (Ct. Int'l Trade 2019).........................13

*Sunpreme, Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2019) ......................................... 18-19

*Tarnove v. Bentsen*, 17 C.I.T. 1324 (1993)......................................................................................14

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519 (1978)......23

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) ........................................10

*Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983) ............................................12

**Statutes And Regulations:**

5 U.S.C. § 556......................................................................................................................................13

19 U.S.C. § 1516..................................................................................................................................12

19 U.S.C. § 1517............................................................................................................2, 4, 5, 10, 18, 22, 24, 25

19 U.S.C. § 1484..................................................................................................................................12

19 U.S.C. § 1485..................................................................................................................................12

19 U.S.C. § 1500..................................................................................................................................19

28 U.S.C. § 1581..................................................................................................................................12

19 C.F.R. § 141.61...............................................................................................................................12

19 C.F.R. § 141.81...............................................................................................................................12

19 C.F.R. § 141.90...............................................................................................................................12

19 C.F.R. § 142.3.................................................................................................................................12

19 C.F.R. § 142.6.................................................................................................................................12

## <u>TABLE OF AUTHORITIES (continued)</u>

**Statutes And Regulations (continued):**                                      **Page(s):**

19 C.F.R. § 142.11 ...........................................................................................12

19 C.F.R. part 165 ...........................................................................................22

19 C.F.R. § 165.23 .............................................................................14, 15, 24

19 C.F.R. § 165.26 ...........................................................................................24

19 C.F.R. § 165.41 .............................................................................15, 17, 24

19 C.F.R. § 165.42 ...........................................................................................24

19 C.F.R. § 165.44 ...........................................................................................15

19 C.F.R. § 165.5 .............................................................................................25

19 C.F.R. § 351.225 ...................................................................................18, 19

19 C.F.R. § 351.309 .........................................................................................17

**Administrative Decisions:**

*Wooden Bedroom Furniture from China*, 70 Fed. Reg. 329
    (Dep't of Commerce Jan. 4, 2005) (antidumping duty order) .............................................2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 20-03824 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response in opposition to the Rule

56.2 motion for judgment upon the agency record filed by plaintiff, Aspects Furniture

International, Inc. (AFI).  AFI Mot. for Judgment on Agency Record, April 13, 2021, ECF No.

20 (AFI Mot.).  AFI imports certain wooden bedroom furniture from the People's Republic of

China (China).  AFI challenges various aspects of a final determination of evasion by U.S.

Customs and Border Protection (Customs).  As demonstrated below, the final determination by

Customs is supported by substantial evidence, is in accordance with law, and should be

sustained.

STATEMENT PURSUANT TO RULE 56.2

I.    The Administrative Determination Under Review

The challenged administrative determination is *Aspects Furniture International, Inc.*,

Enforce and Protect Act (EAPA) Case No. 7189 (CBP Sept. 24, 2020) (Final Determination) (PR

12002-12),[1] a final determination by Customs, Office of Trade, Regulations & Rulings (ORR),

which affirmed an initial determination of evasion under 19 U.S.C. § 1517(c) by Customs, Trade

Remedy & Law Enforcement Directorate (TRLED), *Aspects Furniture International, Inc.*,

EAPA Case No. 7189 (CBP May 18, 2020) (Initial Determination) (PR 11919-28; CR 10827-

36).

II.     Issue Presented For Review

        Whether CBP's final determination of evasion is supported by substantial evidence and is

in accordance with law.

## STATEMENT OF FACTS

        In January 2005, the Department of Commerce (Commerce) issued an antidumping duty

order covering wooden bedroom furniture from the People's Republic of China (China).

*Wooden Bedroom Furniture from China*, 70 Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005)

(antidumping duty order) (the Order).  In 2016, Congress passed EAPA, codified at 19 U.S.C.

§ 1517, which established a formal administrative procedure for Customs to investigate

allegations of evasion of antidumping and countervailing duty orders as part of the United States'

efforts to ensure a level playing field for domestic industries.

I.      The EAPA Investigation

        In May 2017, Customs initiated an EAPA investigation following an allegation submitted

by the American Furniture Manufacturers Committee for Legal Trade (AFMC).  Final

Determination 1-2; Initial Determination 1.  AFMC had alleged that AFI was misreporting on its

entries the identities of the actual producers of merchandise subject to the Order for the purpose

of evading the payment of antidumping duties.  Final Determination 2; Initial Determination 1-2.

---

[1] Citations to the public record (PR) and confidential record (CR) refer to the public (ECF No. 17) and confidential (ECF No. 16) versions of the administrative record filed in this Court.

Specifically, AFMC had alleged that AFI purchased both covered and non-covered merchandise from manufacturers subject to the China-wide rate, but on the entry documents, AFI identified a different manufacturer with either a low or zero percent rate, to evade payment of the correct antidumping duties.  Final Determination 2.

      A.    <u>The Notice Of Initiation Of The Investigation</u>

In August 2017, Customs issued a Notice of Initiation and Interim Measures to all interested parties, announcing a decision to take interim measures based upon reasonable suspicion that AFI had entered covered merchandise into the United States through evasion. Final Determination 3; *see also* CR 3900-05 (Initiation Notice).  Prior to the receipt of AFMC's allegation, Customs already had been reviewing all of AFI's entries for the 2016 calendar year for potential avoidance of antidumping duties.  Final Determination 3.  Under these circumstances, Customs chose to align the scope of the EAPA investigation with that of the existing review.  *Id.*

      B.    <u>The Verification Process</u>

During the investigation, Customs issued requests for information (RFIs) to AFI and several Chinese companies associated with AFI's entries.  Initial Determination 3.  Customs later conducted onsite verifications of AFI and two other companies (Wuxi Yushea and Nantong Fuhuang) that submitted RFI responses.  *Id.*; CR 10010-40 (Verification Report); *see also* CR 9427-10008 (exhibits to Verification Report).  The Customs verification team spent several days at each company and (1) interviewed company officials about their company operations and record keeping, (2) toured the facilities of each company, and (3) reviewed original records to verify the RFI responses.  CR 10012-13.  Thereafter, the Customs verification team prepared an

18-page report (not including lengthy appendices and exhibits), which detailed the "relevant facts obtained and pertinent observations."  CR 10013.

The verification report provides a detailed account of interviews and documents that showed how AFI "co-mingled merchandise," created "multiple versions of invoices," created "descriptions of merchandise on documentation" that "often differed from those documents submitted by the manufacturers," and "manipulated the per unit price" on entry documents.  CR 10013-24.  The verification report also describes two separate incidents when an AFI employee "actively deleted and destroyed documents and correspondence related specifically to the container loading and shipment."  CR 10026-27.  During the first incident, upon questioning an AFI employee about container loading, and while members of the Customs verification team were standing behind him, the AFI employee "deleted" a communication "chat record" for an employee at Wuxi Yushea.  CR 10025.  During the second incident, upon asking the same AFI employee "to provide samples of the computer loading plans and spreadsheets," a member of the Customs verification team "saw him delete dozens of files from his computer."  CR 10026.

C.    The Covered Merchandise Referral To Commerce

During the course of an EAPA investigation, when Customs is unable to determine whether the merchandise at issue is covered merchandise, Customs must refer the question to Commerce for assistance.  19 U.S.C. § 1517(b)(4)(A).  During the investigation at issue, Customs referred to Commerce the question of whether six particular products were covered by the scope of the Order, and Commerce issued a scope ruling that found that two of the six products (credenzas/dressers and console/custom dressers) were covered.  Final Determination 3-4; *see also* Initial Determination 3; CR 10653-88 (Commerce's response to covered merchandise referral and scope ruling).  In addition to the products that Commerce found to be covered

merchandise, the EAPA investigation by Customs also covered other products that "were clearly within the scope of the order" and were not referred to Commerce.  Final Determination 4; *see also id.* at 8-9.

D.       The Comment Process

In February and March 2020, AFI submitted written argument to Customs, AFMC submitted a response to AFI's argument, and AFI submitted a response to AFMC's argument. Initial Determination 3.  After considering these submissions by interested parties, in May 2020, Customs issued an initial determination.  *Id.*

II.      The May 2020 Initial Determination

In the initial determination, Customs found "there is substantial evidence that covered merchandise entered the United States through evasion, resulting in the reduction or avoidance of applicable [antidumping duty] cash deposits or other security."  Initial Determination 4. Customs explained that "[e]vasion is defined as 'the entry of covered merchandise into the customs territory of the United States for consumption by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security of any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.'"  Initial Determination 4 (quoting 19 U.S.C. 1517(a)(5)(A)); *see also* Final Determination 5, 7 (same).

Customs also made specific findings based on the onsite verifications of the companies that submitted RFI responses.  Initial Determination 4.  For example, Customs found that "there were shipments to [AFI] for which the manufacturer of the merchandise could not be identified, merchandise was described inaccurately on invoices, and there were errors in the valuation of

merchandise." *Id.*  Customs elaborated that "[s]ome of these problems were associated with different consolidated shipments of commingled merchandise identified as originating from multiple manufacturers, and during the verification of [AFI], there were multiple instances in which one employee involved with the commingling process was observed deleting and destroying information when such commingling was under discussion." *Id.*  Customs also found that it had "obtained invoices from the manufacturers that differed from the invoices [AFI] provided to [Customs] with its entries and later, when requested to provide supporting commercial documents," and that the verifiers observed "numerous discrepancies in weight and value between various sales and shipping documents from [AFI], the freight forwarders, and the foreign manufacturers." *Id.*

Customs ultimately concluded that it was "unable to verify that the stated manufacturers on [AFI's] entry documentation were in fact the manufacturers of the subject merchandise." Initial Determination 4.  The initial determination includes more than three pages of "specific details" that support the conclusions by Customs that AFI had made errors and inaccuracies, commingled merchandise, and destroyed evidence. *Id.* at 4-8.  Customs also rejected AFI's argument that the "misreporting" was "inadvertent," because AFI's "changing of merchandise descriptions from products that would fall within the scope . . . to ones that would fall outside the scope . . . goes beyond inadvertent misreporting, and instead evidences evasion of the applicable order." *Id.* at 9.  AFI subsequently requested further administrative review of the initial determination.  *See* Final Determination 11.

III.    The September 2020 Final Determination

In September 2020, Customs issued a final determination after considering all of the issues "*de novo*" based on a review of the entire administrative record.  Final Determination 4, 8.

As a threshold matter, Customs considered AFI's argument that EAPA could not apply to entries dated prior to August 22, 2016, or the effective date of the statute.  *Id.* at 8.  Customs explained, however, that the vast majority of AFI's entries that were reviewed during the onsite verification process (25 of 28) entered the United States after the effective date of EAPA.[2]  *Id.*; *see also* CR 10012 (entries list in verification report).  Customs further clarified that its decision "relies only on entries made after the effective date of EAPA."  *Id.*

Next, Customs addressed AFI's argument that "no evasion occurred."  Final Determination 8.  Customs found that "the furniture items involved in these importations are covered merchandise . . . , including, but not limited to, nightstands, dressers, armoires, and headboards."  *Id.*  Customs added that AFI "ha[d] not disputed that the importations consist of covered merchandise" and "that the entry documents may have contained false information."  *Id.*

Customs further explained that the "administrative record in this case is replete with examples of the different ways in which [AFI] manipulated shipments of covered merchandise in ways that would affect the [antidumping] duties applied to each entry and would therefore indicate evasion," referencing the many detailed examples set forth in the initial determination and the verification report.  Final Determination 8.  Specifically, Customs found that AFI's entry documents "did not accurately reflect what the shipments contained, who manufactured the goods, and their correct values."  *Id.*  Customs also found that "the administrative record *still* contains substantial evidence of actions taken by [AFI] to underpay or avoid the payment of [antidumping] duties" even "without" consideration of the "destruction of evidence" by AFI during the onsite verification process.  *Id.*

---

[2] Customs subsequently determined that all of the pre-EAPA entries that were the subject of the investigation were liquidated on or before February 16, 2018.

Moreover, Customs found that AFI employees had "admitted" at the verification that they "created separate invoices and packing lists for CBP purposes," and those "did not match" the invoices provided by the Chinese manufacturers that participated in the verification. Final Determination 9. Specifically, the phony invoices "contained misdescribed and/or additional merchandise that was not found on [the real] invoices provided by the two manufacturers for the same entry." *Id.* Customs explained that "[t]hese misdescriptions were done in such a way to make it seem as though covered merchandise (*i.e.*, described by [the manufacturer] as a 'nightstand') was not covered by the [antidumping] duty order (*i.e.*, described by [AFI] as 'end table')." *Id.* Moreover, Customs "discovered" that entry no. XXX-XXXX5073 "(dated after the effective date of EAPA) was filed as a type 01 consumption entry when the shipment contained in-scope [wooden bedroom furniture], specifically headboards" that "were misdescribed in the entry package as wall panels, which would not have been subject to [antidumping] duties." *Id.* Customs added that "photographs included with the documents provided during the investigation clearly show a headboard." *Id.*

Customs also elaborated on the "commingling" of merchandise and false descriptions of the manufacturers listed on the entry documents. Final Determination 9. Specifically, Customs found that the "manufacturers told CBP officials during the verification that containers bound for [AFI] had arrived at their facilities partially filled with goods from other manufacturers and that this occurred on multiple occasions." *Id.* "At the same time, the verification revealed that [AFI] would create the loading plans for the containers that arrived at both Wuxi Yushea and Nantong Fuhuang, which the manufacturers followed." *Id.* "Despite the presence of goods manufactured by different companies, [AFI] would only declare one manufacturer, either Wuxi Yushea or Nantong Fuhuang, on the entry documents." *Id.*

Customs found still more misrepresentations by AFI pertaining to "weights and values for the merchandise."  Final Determination 9.  Specifically, Customs found that "[t]he number of cartons and weight of the shipment found on the manufacturer's export form were lower than on the bill of lading provided to CBP by [AFI]."  *Id.*  Because "this would affect the value of the shipment, at times, the unit prices of the merchandise were adjusted downward so that the documents provided by the manufacturer still showed the same value as those provided by [AFI]."  *Id.*  Customs also found that AFI "had, at times, additional involvement in Wuxi Yushea's manufacture of this merchandise; however, there is no evidence that [AFI] included any assists it provided to either manufacturer in the declared value of the merchandise as required pursuant to 19 C.F.R. § 141.86."  *Id.*

Next, Customs addressed AFI's argument that no duties were evaded.  Final Determination 10.  According to AFI, regardless of any misstatements, (1) Wuxi Yushea was subject to a zero percent antidumping duty rate as an exporter/producer, such that none of Wuxi Yushea's merchandise was subject to duties; and (2) Nantong Fuhuang was subject to the China-wide rate of 216.01 percent, which is the highest rate possible, such that commingled merchandise from other manufacturers would not have resulted in an evasion of duties.  *Id.*  In other words, AFI argued that misstatements about the type of merchandise did not matter for entries that listed Wuxi Yushea as the manufacturer, and misstatements about the manufacturer did not matter for entries that listed Nantong Fuhuang as the manufacturer.  *See id.*  Customs rejected these arguments because AFI had made *multiple* misstatements with respect to these entries.  *Id.*  Specifically, with respect to entries listing Wuxi Yushea's merchandise, Customs found that AFI also had made misstatements about the manufacturer (the commingling issue), thus reducing the amount of antidumping duties that would have been assessed on other

merchandise from other manufacturers. *Id.* Likewise, with respect to entries listing Nantong Fuhuang as the manufacturer, Customs found that AFI also had made misstatements about the weight, price per unit, and value declared for shipments of merchandise, thus reducing the amount of antidumping duties that are assessed on an *ad valorem* basis under the Order. *Id.* Customs reiterated that its findings were based on entries from after EAPA's effective date. *Id.*

      For these reasons, Customs concluded that AFI had entered covered merchandise into the United States through evasion of the Order. Final Determination 11. This appeal followed.

SUMMARY OF THE ARGUMENT

      Customs followed all laws and regulations during the course of the investigation. As Customs found, the administrative record is replete with evidence that AFI manipulated shipments, falsified documentation, and destroyed dozens of documents and communication records. Customs properly determined based upon substantial evidence that AFI had entered merchandise into the United States by means of evasion of antidumping duties. AFI advances a kaleidoscope of arguments that are inconsistent with the law, contrary to the record, or both. The Court should sustain the final determination by Customs.

ARGUMENT

I.    <u>Standard of Review</u>

      In reviewing CBP's evasion determinations, this Court examines "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2). "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d

- 10 -

1369, 1382 (Fed. Cir. 2001).  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors."  *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

With respect to factual findings, "substantial evidence" is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009).  Substantial evidence may be "'less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966)); *accord Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1260-61 (Fed. Cir. 2009) (sustaining agency's decision, "[d]espite some conflicting evidence," as being "supported by substantial evidence"); *Cleo Inc. v. United States*, 501 F.3d 1291, 1298 (Fed. Cir. 2007) (agency's conclusion was supported by "substantial evidence," despite "mixed evidence" and a "close" case "on the facts," because "a reasonable factfinder . . . could conclude from the evidence" the same as the agency had concluded).

II.    The Court Should Sustain The Final Determination Of Evasion

Customs issued the final determination after a robust administrative process that included information gathering, onsite verifications at numerous companies, and full participation and comments from interested parties.  Final Determination 1-11; Initial Determination 1-10. Customs found that the record was "replete" with evidence showing that AFI had "manipulated shipments of covered merchandise in ways that would affect the [antidumping] duties applied to

each entry and would therefore indicate evasion." Final Determination 8. The evasion finding

by Customs that AFI entered merchandise into the United States by means of numerous

statements that were false and material is supported by substantial evidence and is in accordance

with law.[3] In response, AFI makes numerous arguments that are without merit and we address

each in turn.

A.      AFI's Retroactivity Argument Is Academic

AFI's leading argument is that the final determination is unlawful "to the extent" that

Customs applies it to entries made prior to EAPA's effective date of August 22, 2016 (the pre-

EAPA entries). AFI Mot. 11-13. This argument is academic because all of the pre-EAPA

entries that were the subject of the investigation were liquidated on or before February 16, 2018.[4]

*See* CR 10792 (AFI's list of pre-EAPA entries). Customs also stated in its final determination

that the agency "relies only on entries made after the effective date of EAPA." Final

Determination 8. Accordingly, Customs will not apply the final determination to any of AFI's

pre-EAPA entries, which have all been liquidated, and Customs did not rely upon the pre-EAPA

---

[3] At the time of entry, the importer of record must file an entry summary and accompanying commercial invoices for the shipped merchandise. 19 U.S.C. §§ 1484, 1485; 19 C.F.R. §§ 141.81, 142.3(5)(b), 142.11(a). Importers are required to supply the appropriate "value, classification and rate of duty applicable to the merchandise" and to use reasonable care in doing so. 19 U.S.C. § 1484; 19 C.F.R. §§ 141.61(e), 142.6(a). Importers also must provide Customs with a "detailed description of the merchandise" they seek to import. 19 U.S.C. § 1484. In addition, the importer must state the appropriate rate of duty and quantities of the merchandise upon the invoices accompanying the shipments. 19 C.F.R. §§ 141.90(b), 142.6(a). Finally, the importer of record must declare under oath that the statements contained in the entry documents are true and correct. 19 U.S.C. § 1485.

[4] The final liquidation of the pre-EAPA entries is "conclusive" on "all parties." *See* 19 U.S.C. § 1516(d); *Cambridge Lee Indus. v. United States*, 916 F.2d 1578, 1579 (Fed. Cir. 1990) ("Once an entry has been liquidated, the duties paid cannot be recovered even if the payor subsequently prevails in its challenge") (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809-10 (Fed. Cir. 1983)). AFI did not protest the liquidation of these entries or file a timely action in this Court pursuant to 28 U.S.C. § 1581(a).

entries in making factual findings in the final determination.  Under these circumstances, AFI's

retroactivity argument is academic and the Court may not render an advisory opinion on that

subject.  *See*, *e.g.*, *Star Pipe Prods. v. United States*, 393 F. Supp. 3d 1200, 1217-18 (Ct. Int'l

Trade 2019) ("The U.S. Supreme Court has made it clear that 'judicial [p]ower' is to be used 'to

render dispositive judgments, not advisory opinions.'") (quoting *Camreta v. Greene*, 563 U.S.

692, 717 (2011)), *aff'd*, 981 F.3d 1067 (Fed. Cir. 2020).  Indeed, the Federal Circuit in *Star Pipe*

expressly affirmed this Court's holding that a similar retroactivity argument had been rendered

moot by the liquidation of all of Star Pipe's entries made before the initiation of the scope

inquiry at issue in that case.  *Star Pipe*, 393 F. Supp. 3d at 1217-18, *aff'd*, 981 F.3d at 1078-79.

B.    AFI's Hearsay Objection Is Meritless

AFI argues that it was "hearsay" for Customs to rely upon the personal observations of

the Customs employees who were "present" at the verification of AFI and "witnessed" AFI

employees deleting and destroying documents and correspondence.  AFI Mot. 13-14.  In support

of this dubious argument, AFI cites to Federal Rules of Evidence 801(c) and 802.  *Id.*  However,

it is well-established that the Federal Rules of Evidence do not apply in administrative

proceedings.  *E.g.*, *Anderson v. United States*, 799 F. Supp. 1198, 1202 (Ct. Int'l Trade 1992).

Instead, the Administrative Procedure Act governs the admissibility of evidence in

administrative proceedings.  *Id.*; 5 U.S.C. § 556(d) ("Any oral or documentary evidence may be

received, but the agency as a matter of policy shall provide for the exclusion of irrelevant,

immaterial, or unduly repetitious evidence"); 5 U.S.C. § 556(c)(3) (providing that "relevant

evidence" may be received during administrative proceedings).  "If hearsay evidence satisfies the

APA standard, agencies may consider it in light of its truthfulness, reasonableness, and

credibility."  *Anderson*, 799 F. Supp. at 1202.  Unless the evidence is "inherently unreliable, it

need not be disregarded," and "it is up to the agency to assess the reliability of such evidence and to weigh it against all the evidence of record." *Tarnove v. Bentsen*, 17 C.I.T. 1324, 1327 (1993). In this case, AFI does not (and cannot) argue that the well-documented, personal observations of Federal employees while discharging their official duties are "inherently unreliable." *See id.*

During the proceedings before Customs, AFI apparently attempted to rebut the documented account of AFI's destruction of evidence by submitting belated affidavits with a request for administrative review of the initial determination on June 30, 2020, and AFI now argues that Customs abused its discretion in refusing to consider those factual submissions as untimely. AFI Mot. at 14 (citing affidavits, CR 10861-70). Neither of the affidavits actually denies there were two separate incidents of document destruction. *See id.* The first affidavit (by the AFI employee who destroyed the evidence during the two incidents) describes one Customs employee as "not being satisfied" with the "speed" of his cooperation for reasons he "didn't quite understand." CR 10862. The second affidavit (by another AFI employee) complains that the same Customs employee was "rude." CR 10866. In the final determination, Customs stated that this "new evidence in the form of affidavits from two employees" "was not considered" under the agency's EAPA regulations. Final Determination 8 n.29.

The EAPA regulations establish "time limits" and provide that any voluntary submission of factual information "must be submitted no later than 200 calendar days after CBP initiated the investigation." 19 C.F.R. § 165.23(c)(2). "Voluntary submissions made after the 200th calendar day after initiation of the investigation will not be considered or placed on the administrative record." *Id.* However, "[p]arties to the investigation" also "have ten calendar days from the date of service of any factual information or from the date of placement of any factual information on the record to provide rebuttal information to that factual information, if the information being

rebutted was placed on the administrative record no later than 200 calendar days after CBP initiated the investigation."  *Id.*  Because Customs initiated this EAPA investigation on August 14, 2017, any voluntary submission of factual information by AFI was due no later than 200 days later, or by December 7, 2018, and AFI's voluntary factual submission on June 30, 2020 was more than 18 months too late.  *See* 19 C.F.R. § 165.23(c)(2); PR 10906 (notice to interested parties of deadline); Final Determination 3.

Moreover, the EAPA regulations require that "[e]ach request for review must be based solely on the facts already upon the administrative record in the proceeding."  19 C.F.R. § 165.41(f).  AFI's submission of the affidavits with its request for review did not comply with the EAPA regulations that preclude consideration of facts that are not "already upon the administrative record in the proceeding."  *See id.*

Finally, the EAPA regulations provide that Customs "may request additional written information from the parties to the investigation at any time during the review process.  19 C.F.R. § 165.44.  Customs "did not request additional information" from AFI; instead, the agency limited the "review only to those documents on the administrative record" and did not consider the untimely affidavits.  Final Determination 8 n.29 (citing 19 C.F.R. § 165.44); *see also* 19 C.F.R. §§ 165.23(c)(2), 165.41(f).

AFI's argument that Customs abused its discretion by following the EAPA regulations is without merit.  When reviewing determinations by Customs, "absent constitutional constraints or extremely compelling circumstances," this Court "will defer to the judgment of an agency regarding the development of the agency record."  *See PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (explaining the Court's role in reviewing Commerce's antidumping duty administrative determinations).  "To do otherwise would 'run the risk of

- 15 -

propelling the courts into the domain which Congress has set aside exclusively for the

administrative agency.'"  *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333

(1976)); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012)

(reversing order instructing Commerce to consider extra-record information because "the trial

court's order usurps agency power, undermines Commerce's ability to administer the statute

entrusted to it, contradicts important principles of finality, and discourages compliance").  AFI

argues that "it would not have been burdensome for" Customs to consider the affidavits, AFI

Mot. 14, but time limits ensure orderly process in administrative proceedings, and AFI does not

identify any "extremely compelling circumstances" that would preclude Customs from enforcing

its own rules in a straightforward way.  *See PSC*, 688 F.3d at 760.  In any event, the affidavits do

not address AFI's destruction of evidence, such that AFI could not have been prejudiced by the

Customs decision not to consider them for that or any other purpose.

> C.    AFI's Arguments About Non-Covered Merchandise Are Waived And Otherwise
>        Rely Upon The Accuracy Of Business Records That Customs Found Were
>        Riddled With False Statements

AFI argues that Customs did not distinguish between AFI's entries of covered and non-

covered merchandise, such that the final determination is not supported by substantial evidence

insofar as it relies upon entries of non-covered merchandise for a finding of evasion, and AFI

also argues that Customs improperly relied upon entries of merchandise entered prior to the date

of a Commerce scope ruling.  AFI Mot. 14-18.  As a threshold matter, AFI waived these

arguments by failing to raise them in its request for administrative review.  *See* CR10840-60.

"'{N}o one is entitled to judicial relief for a supposed or threatened injury until the

prescribed administrative remedy has been exhausted.'"  *Mittal Steel Point Lisas Ltd. v. United*

*States*, 548 F.3d 1375, 1384 (Fed. Cir. 2008) (quoting *Sandvik Steel Co. v. United States*, 164

F.3d 596, 599 (Fed. Cir. 1998)); *accord AIMCOR v. United States*, 141 F.3d 1098, 1111-12 (Fed.

Cir. 1998) ("A party is required to exhaust administrative remedies before seeking judicial

action."). "Simple fairness to those who are engaged in the tasks of administration, and to

litigants, requires as a general rule that courts should not topple over administrative decisions

unless the administrative body not only has erred but has erred *against objection made at the

time appropriate under its practice*." *Mittal Steel*, 548 F.3d at 1383-84 (emphasis in original,

citation omitted). The Federal Circuit has emphasized that parties must exhaust their arguments

in accordance with agency regulations on pain of waiver. *Dorbest Ltd. v. United States*, 604

F.3d 1363, 1375 (Fed. Cir. 2010) (discussing Commerce's regulations, 19 C.F.R.

§ 351.309(c)(2)); *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (same).

The EAPA regulations require that "each request for review must set forth the . . .

argument expressing clearly and accurately the points of fact and of law presented and citing the

authorities and statutes relied on." 19 C.F.R. § 165.41(f)(5). However, AFI did not make its

arguments about covered and non-covered merchandise at the appropriate time before Customs

ORR. *See* CR10840-60. AFI was aware of these arguments, having made them in an initial

comments submission to TRLED, CR 10797-800, but AFI abandoned them during its

administrative appeal to ORR. *See* Final Determination 8 (finding that AFI "ha[d] not disputed

that the importations consist of covered merchandise"). AFI cannot challenge the final

determination by ORR based upon arguments that it never made to that administrative body.

*See*, *e.g.*, *Mittal Steel*, 548 F.3d at 1383-84; *Corus Staal*, 502 F.3d at 1379.

In any event, AFI's covered merchandise arguments are predicated upon the accuracy of

its own entry documentation, which Customs found to be "replete" with misstatements about the

nature of the merchandise. Final Determination 8-9; Initial Determination 4-9. For example,

Customs found that AFI's "misdescriptions were done in such a way to make it seem as though

covered merchandise (*i.e.*, described by [the manufacturer] as a 'nightstand') was not covered by the [antidumping] duty order (*i.e.*, described by [AFI] as 'end table')."  Final Determination 9. Customs also found photographic evidence that at least one entry that misdescribed headboards as wall panels.  *Id.*  AFI's own employees even "admitted" that they "created separate invoices and packing lists for CBP purposes," which "did not match" the invoices provided by the Chinese manufacturers that participated in the verification.  *Id.*  Customs was able to find based upon evidence from the manufacturers that "the furniture items involved in these importations are covered merchandise . . . , including, but not limited to, nightstands, dressers, armoires, and headboards."  *Id.* at 8.  But, absent a thorough cargo examination of each entry of merchandise, which was no longer possible, Customs could not possibly parse whether every single entry contained covered merchandise in light of AFI's untrustworthy documents and destruction of evidence.  *See id.* at 8-9.  Under these circumstances, Customs properly determined that AFI's entries contained covered merchandise.  *See id.*; *see also* 19 U.S.C. § 1517(c)(3).

Finally, AFI argues that entries containing merchandise that Commerce found to be covered cannot constitute covered merchandise if entered prior to the date of when Commerce initiated its response to the covered merchandise referral.  AFI Mot. 15-17.  Even if this argument is not waived it is without merit for at least five reasons.  First, Customs found that AFI's entries contained not only the products that Commerce found to be covered merchandise, but "many" other products that "were clearly within the scope of the order," and AFI's argument does not apply to them.  Final Determination 4, 8-9.  Second, AFI's argument relies upon Commerce's scope ruling regulation, 19 C.F.R. § 351.225, and various cases applying it, but Commerce's regulation does not purport to (and cannot) limit the statutory authority of Customs to suspend liquidation under 19 U.S.C. § 1517(d)(1)(A)(i)-(ii) and (e)(1)-(2).  *See Sunpreme, Inc.*

- 18 -

*v. United States*, 946 F.3d 1300, 1316-18 (Fed. Cir. 2019) (*en banc*) (holding that Customs properly exercised its independent statutory authority under 19 U.S.C. § 1500 to determine in the first instance whether merchandise was subject to existing antidumping and countervailing duty orders that suspended the entries, prior to initiation of a scope ruling by Commerce, such that the suspension of liquidation continued by operation of 19 C.F.R. § 351.225(l)(3), regardless of whether the orders were clear and unambiguous).  Third, AFI misreads Commerce's regulation, which states that previously suspended entries remain suspended following a scope ruling by Commerce.  19 C.F.R. § 351.225(l)(3).  Customs suspended AFI's entries in August 2017 (CR 3900-05) and "continue[d] that suspension" after Commerce issued its scope ruling in response to the covered merchandise referral (CR 10653-88).  Initial Determination 8, 10.  Fourth, AFI's merchandise always was covered merchandise; it did not suddenly become covered merchandise upon the date when Commerce initiated a response to the Customs referral, as AFI incorrectly suggests.  Fifth, Commerce did not initiate a "scope inquiry" under 19 C.F.R. § 351.225(e), so the regulatory provision relied upon by AFI in 19 C.F.R. § 351.225(l)(3) is inapplicable.  *See* 19 C.F.R. § 351.225(l)(3) ("Where there has been no suspension of liquidation, the Secretary will instruct the Customs Service to suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption on or after the date of initiation of *the scope inquiry*.") (emphasis supplied).  Indeed, Commerce generally initiates scope inquiries under section 351.225(e) when the matter *cannot* be determined solely based upon the factors set forth in 19 C.F.R. § 351.225(k)(1), and in this matter Commerce's scope ruling *was* based solely upon those (k)(1) factors.  CR 10661 (finding that Commerce's analysis of the (k)(1) factors "is dispositive" and that it was "unnecessary to consider" the (k)(2) factors).

D.    AFI's Argument That No Duties Were Evaded Is Without Merit

Next, AFI argues that the evasion finding by Customs is not supported by substantial

evidence because one of its suppliers, Wuxi Yushea, had a zero percent antidumping duty rate as

an exporter/producer, such that no duties could have been avoided.  AFI Mot. 18-22, 30.

Customs properly rejected this meritless argument.  Final Determination 10.  As Customs

explained, AFI made *multiple* misstatements with respect to these entries.  *Id.* at 9-10.

Specifically, with respect to entries that identified Wuxi Yushea as the manufacturer of the

merchandise, Customs found that AFI had made numerous misstatements about the manufacturer

on the entry documents to conceal commingled merchandise from other manufacturers in the

shipments, thus reducing the amount of antidumping duties that would have been assessed on

other merchandise from other manufacturers.  *Id.*; *see also* CR 10013-19 (Customs verification

report's detailed discussion of commingled merchandise and related misstatements in the

scheme); CR 10025-27 (same, detailing AFI's destruction of dozens of documents and

communication records regarding container loading on two separate occasions).  AFI argues that

Customs did not provide a satisfactory explanation, but AFI does not address the comingling

explanation that Customs actually did provide.  In fact, AFI's entire motion does not use any

form of the word "comingle."  AFI's silence underscores the motion's lack of merit.  AFI's

argument also incorrectly assumes the accuracy of the underlying entry documentation, which, as

Customs found, was "replete" with false statements.  Final Determination 8; *see also* Initial

Determination 4-9; CR 10010-40 (Customs verification report).

AFI also argues that substantial evidence does not support the finding by Customs that

AFI acted as the exporter for at least some of the merchandise, such that AFI could not have

relied upon Wuxi Yushea's zero percent export rate.  AFI Mot. 22-24.  As a threshold matter,

Customs primarily found that AFI evaded duties because:  (1) with respect to entries listing Wuxi Yushea's merchandise, Customs found that AFI also had made misstatements about the manufacturer (the commingling issue), thus reducing the amount of antidumping duties that would have been assessed on other merchandise from other manufacturers; and (2) with respect to entries listing Nantong Fuhuang as the manufacturer, Customs found that AFI also had made misstatements about the weight, price per unit, and value declared for shipments of merchandise, thus reducing the amount of antidumping duties that are assessed on an *ad valorem* basis under the Order.  Final Determination 10.  AFI does not address, much less rebut, either of these two independent grounds for the evasion finding by Customs.

Customs also found that, "for at least some of the entries," AFI "controlled the export process behind the scenes" by "procuring and paying for freight forwarders."  Final Determination 10.  AFI takes issue with this finding, but substantial evidence supports it.  The verification report describes in detail an interview with an employee of Wuxi Yushea who explained that AFI directed and performed numerous exporter activities – including arranging for shipping, selecting the freight forwarder, and communicating with the freight forwarder – regardless of who ultimately paid for the shipping (AFI would pay to ship ex-works sales and Wuxi Yushea would pay to ship freight on board sales).  CR 10024-25.  Because substantial evidence showed that AFI was acting as the real exporter for at least some of entries, Customs properly rejected AFI's argument that Wuxi Yushea's zero percent rate applied to those entries.

For these reasons, given the pattern of false statements and manipulation, Customs reasonably determined based upon substantial evidence that AFI entered merchandise into the United States by means of evasion of duties.

E.      AFI's Constitutional Arguments Are Without Merit

AFI also argues that the EAPA statute and regulations are unconstitutional because they violate the Due Process clause of the Fifth Amendment.  AFI Mot. 25-28.  According to AFI, the EAPA statute and regulations deprive importers of due process by not providing the parties subject to an EAPA investigation, or their counsel, a mechanism to access business confidential information during the investigation, and by allowing the imposition of interim measures prior to notice and an opportunity to be heard.  *Id.*  These due process arguments are specious.

The EAPA statute leaves considerable discretion to Customs in investigating EAPA allegations.  The statute broadly authorizes Customs to "collect such additional information as is necessary to make the determination through such methods [Customs] considers appropriate." 19 U.S.C. § 1517(c)(2).  The statute also authorizes Customs to conduct verifications, including on-site verifications, of any relevant information.  19 U.S.C. § 1517(c)(2)(B).  In addition, to protect the revenue, the statute authorizes Customs to impose interim measures upon finding a reasonable suspicion of evasion early on in the investigation.  19 U.S.C. § 1517(e).  Regulations further define the contours of the investigation procedures, and further allow Customs considerable discretion in investigating EAPA allegations.  19 C.F.R. part 165.  Customs appropriately exercised its statutory authority and acted within its broad discretion during this investigation.  AFI does not seriously claim otherwise and retreats to constitutional arguments.

AFI's constitutional arguments fail because AFI does not have a protectable interest.  "A prerequisite for due process protection is some interest worth protecting."  *Am. Ass'n of Exp. & Imp.-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985).  The Court "look[s] to see if the interest is within the Constitution's protection of liberty and property."  *Id.* "A protectable interest must be more than a unilateral expectation.  Those seeking constitutional

protection under the due process clause must point to a legitimate claim of entitlement prior to any consideration of the Government's constitutional obligations." *Id.*

AFI argues that it had a protectable interest because the duties that AFI "would owe to CBP upon a positive determination of evasion" is a property interest, and AFI has a "liberty interest in its professional reputation . . . at stake." AFI Mot. 25. AFI overlooks well-established, controlling precedent holding that a company does not have a constitutionally protected property interest in any rate of duty, an importation, or even engaging in international trade. *See Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (citing, *e.g.*, *Norwegian Nitrogen Prods. v. United States*, 288 U.S. 294, 318 (1933); *A Classic Time v. United States*, 123 F.3d 1475, 1476 (Fed. Cir. 1997); *Am. Ass'n of Exp. & Imp.-Textile & Apparel Grp.*, 751 F.2d at 1250). AFI also does not argue that Customs published anything "false," which is a prerequisite to asserting a liberty interest. *See Holley v. United States*, 124 F.3d 1462, 1470 (Fed. Cir. 1997) (holding that an individual's Due Process claim failed because, among other reasons, the published information was "not false") (citing *Codd v. Velger*, 429 U.S. 624, 627-28 (1977) (no process is due absent the publication of information that creates a "false and defamatory impression")). Therefore, AFI does not possess a protected interest.

Without establishing a constitutionally protected interest, AFI cannot claim that it is entitled to a particular form of procedure and, instead, AFI is entitled what the EAPA statute or regulations prescribe only. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1283 (Fed. Cir. 2006). AFI does not allege that Customs violated any statute or regulation when taking the interim measures. After Customs imposes interim measures, the EAPA regulations provide parties to the investigation with a number of opportunities to submit information and arguments.

*See* 19 C.F.R. § 165.23 (procedures for voluntary submission of information); 19 C.F.R. § 165.26 (procedures for submission of written arguments).  And after Customs makes an initial determination of evasion under 19 U.S.C. § 1517(c), the statute and regulations allow a party who is not satisfied to request a *de novo* administrative review and allow other interested parties to respond.  19 U.S.C. § 1517(f); 19 C.F.R. §§ 165.41, 165.42.  Consistent with these procedures, AFI submitted (1) written arguments to TRLED (CR 10767-805), (2) a response to AFMC's written arguments to TRLED (CR 10809-22), and (3) written arguments to ORR (CR 10840-60).  Therefore, even if AFI would have had a protected interest (and it does not), the robust statutory and regulatory procedures provided AFI with notice and an opportunity to be heard.  AFI fails to demonstrate that these procedures were inadequate.  The Due Process clause requires no more.

AFI also fails to demonstrate that the procedures afforded by the EAPA statute and regulations, which include an opportunity to view public versions of confidential information, violate the Due Process clause.  AFI argues that the public versions of documents it received from other parties were excessively redacted during the administrative proceedings, AFI Mot. 15-17, but AFI fails to demonstrate that anything in the confidential versions of the documents (to which AFI's counsel now has access under the protective order) would have changed its arguments before Customs.  AFI's opening brief largely repeats arguments that AFI made before Customs, and AFI's arguments primarily are legal in nature and do not turn upon any particular factual material that was not made available previously in redacted form during the administrative process.

For these reasons, AFI's constitutional arguments are without merit.

F.    AFI's Remaining Arguments Are Without Merit

AFI's remaining arguments do not require much further discussion.

- 24 -

AFI argues that Customs "improperly combined" an EAPA investigation and a regulatory audit. AFI Mot. 29. However, Customs possessed statutory authority under EAPA to "collect such additional information as is necessary to make the determination through such methods as the Commissioner considers appropriate," 19 U.S.C. § 1517(c)(2), and the regulations authorize Customs to "obtain information from its own files, from other agencies of the United States Government, through questionnaires and correspondence, and through field work by its officials." 19 C.F.R. § 165.5(a). Consistent with the statute and regulations, Customs placed audit information that it had already collected on the record of the EAPA investigation, and nothing required Customs to ignore that relevant information in its files. Customs did not combine a regulatory audit and an EAPA investigation, as AFI's argument incorrectly assumes.

AFI also argues that Customs "shifted the burden of proof to AFI." AFI Mot. 29-30. Customs did not impose any burden of proof on AFI in this investigation. Instead, Customs expressly stated that its determination was "based on substantial evidence," including extensive evidence of AFI's commingled shipments and falsified entry documentation. Final Determination 4-9. Nevertheless, AFI seizes upon one sentence near the end of the final determination, which states that AFI had "not demonstrated that the zero percent AD duty rate was actually applicable to these shipments." AFI Mot. 29 (quoting Final Determination 10). But Customs made this statement in the context of analyzing and rejecting AFI's argument "that no loss of duties occurred." Final Determination 10. In other words, Customs merely conveyed that AFI had failed to persuade the agency on this argument. *See id.*

## CONCLUSION

For these reasons, we respectfully request that the Court deny plaintiff's motion for judgment upon the agency record, sustain the Final Determination, and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

 s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

 s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-9303

Attorneys for Defendant United States

Of Counsel:

TAMARI LAGVILAVA
Attorney (Enforcement and Operations)
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, N.W.
Washington, D.C.  20229

July 9, 2021

<u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 7,522 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

 s/ Douglas G. Edelschick