**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., ) | |
| ) | Court No. 20-03824 |
| Plaintiff, ) | |
| ) | PUBLIC |
| v. ) | VERSION |
| ) | |
| UNITED STATES, ) | Confidential Information |
| ) | Removed from |
| Defendant. ) | Page Nos.: 4, 11, and 12 |

**PLAINTIFF ASPECTS FURNITURE INTERNATIONAL, INC.'S
REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
lmoya@rwsnyderlaw.com

Counsel for Plaintiff ASPECTS
FURNITURE INTERNATIONAL, INC.

Dated: **August 30, 2021**
Irvine, CA

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................................ i.

**TABLE OF AUTHORITIES** ................................................................................................ ii.

**INTRODUCTION** ................................................................................................................... 1

**ARGUMENT** .......................................................................................................................... 1

   A.  PLAINTIFF'S RETROACTIVITY ARGUMENT IS NOT MOOT BECAUSE NOT ALL

   PRE-EAPA ENTRIES HAVE BEEN LIQUIDATED ............................................................ 5

   B.  DEFENDANT HAS FAILED TO DEMONSTRATE THAT CUSTOMS

   ESTABLISHED, BY SUBSTANTIAL EVIDENCE, ALL THE CONDITIONS REQUIRED

   FOR A POSITIVE FINDING OF EVASION UNDER 19 U.S.C. § 1517(A)(5)(A) AND 19

   C.F.R. § 165.1 ......................................................................................................................... 8

   C.  DEFENDANT HAS FAILED TO REFUTE AFI'S DUE PROCESS ARGUMENTS .... 16

**CONCLUSION** ..................................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page(s)**

*American-Arab Anti-Discrimination Committee v. Reno*,
    70 F.3d 1045 (D.C. Cir. 1995) …………………………...…………….................. 17

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) …………………………………………………..…………......... 18

*Doty v. United States*,
    53 F.3d 1244 (Fed. Cir. 1995) ...............................................................…….... 17

*Greene v. McElroy*,
    360 U.S. 474 (1959) …………………………………………………..…….….... 17

*Hannah v. Larche*,
    363 U.S. 420 (1960) ………………………………………………..……...…….. 16, 17

*Kwo Lee, Inc. v. United States*,
    24 F.Supp. 3d 1322 (Ct. Int'l Trade 2014) …………………………….……..……….. 17

*Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*,
    758 F.3d 296, 319 (D.C. Cir. 2014) …………………………………………..…….... 17

*SKF USA Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001) ……………………………………………….…….....…. 10

*Wheatland Tube Co. v. United States*,
    161 F.3d 1369 (Fed. Cir. 1998) ........................................................……..……. 2

*Zenith Radio Corp. v. United States*,
    710 F.2d 806 (Fed. Cir. 1983) …………………………………………………….…….... 5, 6, 7

## **Statutes & Regulations**

19 U.S.C. § 1401a.......................................................................................……... 15

19 U.S.C. § 1516(a)(c)(1) ………………………...…………………………………... 7

19 U.S.C. § 1516(d) …………………………………………………………………... 7

19 U.S.C. § 1517…………………………………………………………………….… 7

19 U.S.C. § 1517(a)(5)(A) …………………………………………………………… 3, 8

19 U.S.C. § 1675 …….…………………………………………………………………... 6

20 U.S.C. § 2412........................................................................................ 18

19 C.F.R. § 141.86 ……............................................................…... 15

19 C.F.R. § 165.1 …….…………………………………………….................8

19 C.F.R. § 165.28(a) ……….…………………………………….................7

## **Other Authorities**

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties,*
   81 Fed. Reg. 56,477 (Aug. 22, 2016) ..................................................……. 7

## **INTRODUCTION**

On behalf of Plaintiff, Aspects Furniture International, Inc. (hereinafter, "Plaintiff" and/or "AFI"/"Aspects"), we respectfully submit this reply to the response brief filed by Defendant United States (hereinafter, "Defendant" and/or the "Government") on July 9, 2021 (hereinafter, "Response"), and in further support of its April 13, 2021 motion for judgment on the agency's record (hereinafter, "AFI's Motion"),[1] as it pertains to the Enforce and Protect Act (hereinafter, "EAPA") Case Number 7189 (hereinafter, "Investigation"), covering the allegation of evasion of the antidumping duty (hereinafter, "ADD") order on wooden bedroom furniture (hereinafter, "WBF") from the People's Republic of China (hereinafter, "PRC" and/or "China"), A-570-890 (hereinafter, the "Order").

## **ARGUMENT**

As a preliminary matter, the Government contends in its Response that there was "replete" evidence on the Administrative Record[2] showing that AFI had "manipulated shipments of covered merchandise *in ways that would affect the [antidumping] duties applied to each entry* and would therefore indicate evasion." Response at 10-11. Notably, this statement has three (3) separate and independent prongs: (1) the entry of covered merchandise, (2) through AFI's manipulation of such

---

[1] AFI's Motion challenges CBP's Trade Remedy & Law Enforcement Directorate (hereinafter, "TRLED") May 18, 2020 "Notice of Final Determination as to Evasion" (hereinafter, "Initial Determination"), and its Office of Trade, Regulations & Rulings (hereinafter, "ORR") September 24, 2020 review determination, affirming, in its entirety, Customs' Initial Determination (hereinafter, "Review Determination") (collectively, the "EAPA Determinations").

[2] On December 14, 2020, Defendant's counsel filed on the docket of this action the administrative record (both confidential and public versions) underlying the EAPA Investigation. *See generally* Confid. Admin. Rec., Dec. 14, 2020, ECF Nos.: 16 - 16-31 and Public Admin. Rec., Dec. 14, 2020, ECF Nos.: 17 - 17-26. As with AFI's moving brief, this reply brief will refer to these submissions as "Administrative Record," and will identify a particular confidential document through "BCD" and a public document through "PD," as appropriate.

shipments, (3) in a way that affects ADD applied to such shipments.  While Customs, in its EAPA determinations subject to this review, does identify certain instances of "manipulation," which AFI has not contested, it does not provide a reasoned, specific explanation for how these "manipulations" affected ADD and to what extent these "manipulations" applied to "covered merchandise" entered by AFI into the customs territory of the United States, as defined under the EAPA statute.  Instead, it jumps to the conclusion that AFI committed "evasion" simply because of these "manipulations" and fails to connect them to the other two (2) elements of evasion, as indicated above.  *See generally* Review Determination, PD No. 429.  In its Response, the Government follows suit: when drawing the conclusion that Customs' determination of evasion against AFI is supported by substantial evidence, the Government only cites to AFI's "numerous statements that were false and material," completely ignoring that there are two (2) additional elements Customs **must** establish in order to justify a positive finding of evasion.  This error in judgment requires several clarifications.

First, "evasion" under EAPA is a term of art and it requires Customs to establish **both** false and material statements **and** a loss (or reduction) of ADD and/or countervailing duties (hereinafter, "CVD") (collectively, "AD/CVD"), and not just the false statements.[3]  In addition, these elements necessarily apply only with respect to covered merchandise, *i.e.,* merchandise covered by an antidumping and/or countervailing duty order.  WBF from China represents covered merchandise for purposes of this EAPA Investigation.  "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir.

---

[3] While that might be sufficient under other procedures available to Customs, it certainly is not under EAPA.

**Page 2 of 18**

1998).  Both Customs, in its EAPA Determinations, and now the Government, in its Response, fail to articulate a reasoned, factual explanation in support of the "covered merchandise" and "duty loss/reduction" elements, and instead focus all their attention on examples that establish, at most, the "false statements" element.

Second, "evasion" has no "culpability" component; its elements are objective, mathematical; in a general sense, EAPA is a "strict liability" statute: there is evasion if there is duty loss/reduction; conversely, there can be no evasion absent duty loss/reduction, regardless of how egregious Customs finds the reviewed importer's behavior to be.  Indeed, the EAPA statute is remedial in nature, as opposed to punitive, as it seeks to recover antidumping and/or countervailing duty (collectively, "AD/CVD") loss—nothing more.  In its Response, the Government contends that, in its Initial Determination, Customs presented sufficient "specific details" to support the conclusions by Customs that AFI had made errors and inaccuracies, commingled merchandise, and destroyed evidence.  *See* Response at 6.  AFI has conceded to Customs' findings insofar as they relate to the errors and inaccuracies present in AFI's entries. However, the Government further states that AFI's misreporting goes beyond inadvertence and because of that AFI committed evasion under EAPA.  *Id.*  This argument is irrelevant, as it completely steers away from what the EAPA statute plainly requires.  Specifically, the EAPA statute defines "evasion" as the misreporting that causes duty loss/reduction—the mere misreporting, as well as the state-of-mind of the importer (or the degree of culpability) that causes the misreporting, are of no consequence when it comes to establishing "evasion" under EAPA.  *See* 19 U.S.C. § 1517(a)(5)(A).  Throughout this entire Investigation, CBP has disregarded and ignored this aspect, and instead focused mainly on the irregularities found in AFI's entries and AFI's level of culpability, instead of establishing, with specificity, whether or

not (and to what extent) these irregularities caused ADD loss or reduction.  Therefore, even if AFI were to concede, for the sake of the argument, that its misreporting went beyond inadvertency, which it does not, that alone is not sufficient to support "evasion," as defined under EAPA.  Defendant erroneously states that it does by taking the leap from misreporting to "evasion," without proving the other necessary element: ADD loss/reduction.  *See* Response at 6.

Finally, Customs' findings overwhelmingly rely on the verification report its audit team issued after conducting a site verification visit in China in early 2018 (hereinafter, "Verification Visit").  *See ON-SITE VERIFICATION REPORT ENFORCE AND PROTECT ACT (EAPA) CASE 7189* (Dec. 13, 2018) (hereinafter, "Verification Report"), BCD No. 295, PD No. 373.  As a threshold matter, the Verification Report was issued by an audit team, following audit procedures, and making findings with an eye toward audit.  Conversely, the CBP officials who conducted the Verification Visit and contributed to the Verification Report were not "EAPA trained" and did not tailor their findings so as to meet the technical definition set out under the EAPA statute for "evasion."  Because an audit is a much broader investigation than an EAPA investigation, the findings made by the CBP auditors are not sufficient, in and of themselves, to justify a finding of "evasion," in its technical sense under EAPA—indeed, this is clearly reflected in how vague and not specific CBP's EAPA Determinations are.  For example, with respect to Entry No.: [] 8454, the Verification Report mentions that the CBP auditors were able to verify that there was a value difference between the manufacturer and importer invoices, not tied to a weight difference.  *See* Verification Report at 12.  The auditors further noted that the value difference of $ [] was related to the **addition** of a metal part.  *Id*.  Again, as demonstrated below in more detail, because this was a Wuxi Yushea Furniture Co., Ltd. (hereinafter, "Wuxi Yushea") entry, which means that the WBF products imported therein were subject to a 0.00%

ADD rate, these findings could support, at most, the second prong required under EAPA (namely, misreporting), but do not justify the third one (*i.e.,* duty loss/reduction)—that is because that difference in value was also subject to a 0.00% ADD rate.  AFI's failure was one of accuracy, which is what an audit is meant to uncover, but it did not result in "evasion," as required under EAPA, since the final product was a Wuxi Yushea product, subject to a 0.00% ADD rate.

A.  <u>PLAINTIFF'S RETROACTIVITY ARGUMENT IS NOT MOOT BECAUSE NOT ALL PRE-EAPA ENTRIES HAVE BEEN LIQUIDATED</u>

Defendant contends, in its Response, that AFI's retroactivity argument is academic and should not be entertained by the Court because all AFI's entries made prior to EAPA's effective date of August 22, 2016 (hereinafter, the "pre-EAPA Entries") have been liquidated on or before February 16, 2018.  *See* Response at 12.  Defendant does not support its assertion.  However, Plaintiff verified the status of the pre-EAPA entries and, as of this writing herein, at least fifteen (15) of them are still suspended or extended, as applicable.  In fact, further in its Response brief, Defendant argues that Customs "suspended AFI's entries in August 2017 (CR 3900-05) and 'continue[d] that suspension' after Commerce issued its scope ruling in response to the covered merchandise referral (CR 10653-88)."  Commerce issued its scope ruling on December 31, 2019, well after the date Defendant contends, without support, AFI's pre-EAPA entries were liquidated (that is, February 16, 2018).  *See Letter from Wendy J. Frankel: Covered Merchandise Referral Regarding EAPA Investigation No. 7189* (Dep't Commerce Jan. 8, 2020), BCD No. 303, PD No. 387.

Notwithstanding, the cases cited by Defendant do not support its mootness argument, as they present distinct sets of facts than the situation herein.  Specifically, the plaintiff in *Zenith*

*Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983) filed an action in the United States Court of International Trade (hereinafter, "USCIT"), challenging the annual review determination made by the United States Department of Commerce (hereinafter, "Commerce" and/or "DOC"), conducted pursuant to section 751 of the Trade Agreements Act of 1979. *See* 19 U.S.C. § 1675 (hereinafter, "Section 751"). Section 751 requires Commerce to review certain antidumping duty orders and findings each year and establish the margins used to calculate the amount of dumping duties to be assessed on merchandise entered during the given one-year period under review—*i.e.,* the applicable ADD rate. The plaintiff in *Zenith* challenged the final ADD rate imposed by Commerce and sought to enjoin the liquidation of the entries covered by its action, as explicitly permitted under 19 U.S.C. § 1516a(c)(1). Section 1516a(c)(1) provides, in pertinent part:

> (c)  Liquidation of entries.
>
> (1) Liquidation in accordance with determination. Unless such liquidation is enjoined by the court under paragraph (2) of this subsection, entries of merchandise of the character covered by a determination of the Secretary, the administering authority, of the Commission contested under subsection (a) shall be liquidated in accordance with the determination of the Secretary, the administering authority, or the Commission * * *.

19 U.S.C. § 1516a(c)(1).

As the court in *Zenith* noted, the statutory scheme above had no provision permitting reliquidation or imposition of higher ADD rates after liquidation if the plaintiff in Zenith was successful on the merits; indeed, a subsequent decision by the trial court on the merits of plaintiff's challenge could have no effect on the antidumping duties already assessed through liquidation. *See Zenith,* 710 F.2d at 810. Here, unlike in *Zenith*, the current action is not challenging an administrative review determination issued by Commerce under Section 751, but an administrative decision issued by Customs under 19 U.S.C. § 1517—a separate grant of authority. As a result,

while the liquidation in *Zenith* was conducted in the "normal" course of antidumping and countervailing duty proceedings, *i.e.,* pursuant to 19 U.S.C. § 1516(d), the liquidations in the case herein were conducted as a result of Customs' EAPA investigation.  In fact, 19 U.S.C. § 1516(d) provides for exceptions from the finality of liquidation, in pertinent part:

> d) Appraisal, classification, and liquidation of entries of merchandise covered by published decisions of the Secretary.
>
> Notwithstanding the filing of an action pursuant to chapter 169 of title 28 of the United States Code [28 USCS §§ 2631 et seq.], merchandise of the character covered by the published decision of the Secretary (when entered for consumption or withdrawn from warehouse for consumption on or before the date of publication of a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit, not in harmony with the published decision of the Secretary) shall be appraised or classified, or both, and the entries liquidated, in accordance with the decision of the Secretary and, **except as otherwise provided in this chapter**, the final liquidations of these entries shall be conclusive upon all parties.

19 U.S.C. § 1516(d).

One such exception is the EAPA statute, codified under 19 U.S.C. § 1517—the same chapter as 19 U.S.C. § 1516(d): "Chapter 4. Tariff Act of 1930."  The EAPA regulations provide that, "[f]or entries of covered merchandise that are already liquidated when an affirmative determination is made as to evasion under § 165.27, CBP will initiate or continue *any* appropriate actions separate from this proceeding."  19 C.F.R. § 165.28(a)[4] (emphasis added).

---

[4] Importantly, the CBP interpretative note regarding EAPA seems to provide it with the authority to reliquidate entries otherwise liquidated pursuant to 19 U.S.C. § 1516(d).  *See Investigation of Claims of Evasion of Antidumping and Countervailing Duties, Interim Regulations; Solicitation of Comments,* 81 Fed. Reg. 56,477, 56,478 (August 22, 2016) (hereinafter, "EAPA Interim Regulations") (providing that, "[i]f CBP makes an affirmative determination of evasion, CBP will: . . . (5) take such additional enforcement measures as CBP deems appropriate, including (but not limited to) modifying CBP's procedures for identifying future evasion, *reliquidating* entries as provided by law, and referring the matter to ICE for a possible civil or criminal investigation.").

Accordingly, the Court can and should render an opinion regarding EAPA's applicability to entries made prior to its effective date, August 22, 2016, and should find that such entries are outside EAPA's reach, as intended by Congress when introducing EAPA.

B. <u>DEFENDANT HAS FAILED TO DEMONSTRATE THAT CUSTOMS ESTABLISHED, BY SUBSTANTIAL EVIDENCE, ALL THE CONDITIONS REQUIRED FOR A POSITIVE FINDING OF EVASION UNDER 19 U.S.C. § 1517(A)(5)(A) AND 19 C.F.R. § 165.1</u>

As a threshold matter, it is important to reiterate that, under EAPA, evasion is defined as follows:

> the entry of covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, **and** that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

19 U.S.C. § 1517(a)(5)(A) (emphasis added).

Put simply, EAPA requires three (3) elements to be met for a positive finding of "evasion:" (1) entering "covered merchandise," as defined under EAPA, into the customs territory of the United States, (2) through materially false statements (or omissions), **and** (2) **in such a way that cause**s antidumping and/or countervailing duty loss (or reduction).  These are separate and distinct elements, and the absence of either one is sufficient to preclude a positive finding of evasion.  Accordingly, for its evasion finding to survive judicial review, Customs must have provided independent reasoned explanations for each and every one of these elements—it failed to do so with respect to the first and third elements.

### Covered Merchandise Element

As a preliminary matter, Defendant's argument that AFI waived its covered merchandise argument is meritless, since AFI incorporated by reference, in its request for administrative

review before ORR, all the arguments it made in its submissions before TRLED. *See* AFI's Request for Administrative Review at 8, BCD No. 311, PD No. 420. Accordingly, with respect to this element (entering covered merchandise), Customs failed to particularize which entries included covered merchandise and which did not.[5] Specifically, Defendant's explanation for why Customs was not able to make a particularized determination as to which of AFI's entries included covered merchandise is the alleged inaccuracy of AFI's "own entry documentation," which Customs claims—and Defendant agrees—was "replete" with "misstatements about **the nature of the merchandise**." *See* Response at 17 (emphasis added). There are at least three (3) issues with this "explanation."

First, as the Government itself admits, Customs "issued the final determination after a **robust** administrative process that included information gathering, onsite verifications at numerous companies, and **full participation and comments from interested parties.**" (emphasis added). *Response* at 11. In fact, on multiple occasions, Defendant refers to the records provided by AFI's manufacturers/exporters who fully participated in this Investigation, Wuxi Yushea and and Nantong Fuhuang Furniture Co., Ltd. (hereinafter, "Nantong Fuhuang"), in order to supports its findings **against** AFI—indeed, Defendant even calls such records as the "real" ones. *See, e.g., Response* at 8 (referring to the "real" invoices provided by the two manufacturers); *see also id.* at 18 (explaining that Customs was able to find which furniture items were covered merchandise "based upon evidence from the manufacturers"). Yet, when it comes to drawing a tailored conclusion and differentiating between the AFI entries which

---

[5] In fact, both evasion determinations subject to this review fail to tailor Customs' findings to the specific elements required for a positive finding of "evasion." Instead, Customs' findings are general, elusive, and mainly reiterate the factual findings made by the verification team, which at most establish "false" (incorrect) statements and/or omissions, the second evasion element, which is insufficient to support "evasion."

contain covered merchandise and those which do not, which is an essential step in establishing

evasion given the wide variety of products imported by AFI,[6] Customs blames the "inaccuracy"

of AFI's records, as if those records were the only ones it was able to review when conducting

this Investigation. *See Response* at 17. In other words, when making a determination **against**

AFI, Customs fully trusts the records provided by AFI's manufacturers/exporters, but when

making a determination which might be **favorable or exculpatory** for AFI, such records are of

no avail for Customs. "An agency action is arbitrary when the agency offers insufficient reasons

for treating similar situations differently)." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382

(Fed. Cir. 2001). Customs' treatments of the records before it are not only inconsistent, but they

contradict and exclude each other—either the records provided by the manufacturers/exporters

are the "real" ones and they help paint the complete picture for Customs, or the agency cannot

verify that such records are accurate, in which case they cannot be relied upon. The

Administrative Record alone supports the first interpretation; in addition, Customs itself, and

Defendant herein, implicitly adopts the first interpretation, given that its Determinations were

made "based upon the evidence from the manufacturers." *See Response* at 18. Accordingly,

Customs' findings regarding the element of entering covered merchandise into the customs

territory of the United States is not only biased, but arbitrary.

Second, at least half of the entries reviewed by Customs during its Verification Visit do

not contain *any* covered merchandise; indeed, Customs does not even contend otherwise in its

Verification Report—they were entered as "Type 01" and Customs did not even suggest they

---

[6] Indeed, AFI has not denied the fact that it is an importer of Chinese wooden bedroom furniture, hence covered merchandise, but WBF is not the only type of product AFI imports. AFI operates in the hospitality industry, which by its very nature requires a wide variety of products.

should have been entered under "Type 03."[7]  Instead, Customs has identified certain

irregularities with regards to these entries; however, these irregularities do not apply to covered

merchandise, *i.e.*, WBF from China, but to non-WBF products.  As a result, not only that the

entries at issue do not meet the first element required for a positive finding of "evasion," but they

also cannot meet the third element, which is loss or reduction of antidumping and/or

countervailing duties *specifically*, not any customs duties.  For instance, irregularities such as

differences in unit weight, value, and unit price or failure to properly report assists, when applied

to non-WBF products, do not and cannot result in *any* loss or reduction of ADD, since no ADD

whatsoever would have been due for such entries had there not been any irregularities affecting

these entries.

       Finally, even for those entries under which covered merchandise was indeed imported,

Customs' statement that the records provided by AFI were "replete" with "misstatements about

the nature of the merchandise" does not reflect the reality of its findings under the

Administrative Record placed before this Court.  *See* Response at 17 (emphasis added).

Merriam-Webster defines "replete" as "fully or abundantly provided or filled."  Online Merriam-

Webster (available at https://www.merriam-webster.com/dictionary/replete, last accessed Aug.

30, 2021).  After its "robust" investigation, in which it obtained the full cooperation of all the

interested parties, as showed above, Customs was able to provide only five (5) examples of

entries which included such "misstatements about the nature of the merchandise."  *See*

Verification Report at 10-11 (citing as examples Entry Nos.: [] 3651, [] 8671, [] 8944, [] 9253,

---

[7] With respect to the following entries, it is undisputed between the parties, under the
Administrative Record before this Court, that they do not contain covered merchandise: (1) []
5559, (2) [] 9546, (3) [] 9793,  (4) [] 8454, (5) [] 0296, (6) [] 0346, (7) [] 7208, (8) [] 0944, (9) []
1322, (10) [] 1355, (11) [] 2576,  (12) [] 1580,  (13) [] 2485, and (14) [] 4523.

and [] 9783.[8]   The total number of AFI entries reviewed by TRLED when conducting this

Investigation exceeds 150; the total number of AFI entries CBP reviewed during its Verification

Visit is twenty-eight (28).   Customs found merchandise misdescriptions with respect to five (5)

of these entries, one excluded, as demonstrated herein.   Five (5) out of twenty-eight (28), let

alone 150, does not warrant a "replete designation."   In fact, it makes such designation

untruthful.   Notwithstanding, because these entries contain WBF products manufactured by

Wuxi, which has a 0.00% ADD rate, AFI's albeit incorrect and wrongful reporting of such

products did not result in any ADD and/or countervailing duty being reduced or not paid.

Notwithstanding, as demonstrated below, none of the examples presented by Customs supports a

positive finding of evasion, because they each fail to meet the duty loss/reduction element.

### Antidumping and/or Countervailing Duty Loss (or Reduction) Element

Preliminarily, Customs' examples of entries that support its positive finding of "evasion,"

in the technical sense defined under EAPA, albeit vague and elusive, resume to the twenty-eight

(28) entries that were subject to its Verification Visit.   See Verification Report at 3.   As

demonstrated above, of the twenty-eight (28) entries, at least three (3) should be excluded

(namely, Entry Nos.: [] 9653, [] 3651, and [] 5056); accordingly, these three (3) entries cannot be

counted to establish evasion.   Next, with respect to three (3) entries from Wuxi Yushea (namely,

Entry Nos.: [] 9520, [] 1236, and [] 8008), Customs itself found no irregularities; likewise, none

of these entries can support a positive finding of evasion either.   Of the remaining twenty-three

(22) entries, only two (2) contain merchandise produced and exported by Nantong Fuhuang,

---

[8] As indicated above, one of these entries, Entry No. [] 3651, should be excluded from this
Investigation in its entirety.

leaving a vast majority of twenty (22) entries comprising of merchandise produced and exported by Wuxi Yushea.

Further, with respect to four (4) of the remaining Wuxi Yushea entries (excluding one (1) pre-EAPA entry), as indicated above, Customs indeed found irregularities regarding AFI's description of the merchandise imported therein.  While entirely inappropriate, and AFI has not negated this aspect from the very beginning of this Investigation, these entries could support, at most, the first and second elements required for a positive finding of "evasion:" the entry of covered merchandise and the misreporting.  However, because the WBF furniture products entered under these entries were manufactured and exported by Wuxi Yushea, who has maintained a 0.00% ADD rate at all times relevant for this Investigation, the irregularities present in these entries did not result in *any* ADD (or CVD for that matter) loss (or reduction); as such, none of these entries can support a positive finding of evasion either.[9]

In its Response, Defendant mainly reiterates Customs' findings related to the second element (namely, the misreporting), such as the "comingling," insisting that it is sufficient to establish the third element as well (*i.e.,* the duty loss/reduction)—it is not.  Defendant continues to cite to instances which, arguably, might establish the second element (materially false statements), but continues to ignore the completely separate and distinct third element (duty loss/reduction).  "Invoices provided by the two manufacturers who participated in the verification, Wuxi Yushea and Nantong Fuhuang, both in response to CBP's requests for

---

[9] Indeed, Customs has identified other irregularities with these four (4) entries, such as failure to properly include assists and differences in weight, value, and unit price.  However, *assuming arguendo* that all of these irregularities are supported by the Administrative Record, none of them resulted in *any* ADD loss (or reduction), given that they either affected WBF products produced and exported by Wuxi Yushea, hence subject to a 0.00% ADD rate, or non-WBF products (with respect to which, for purposes of calculating ADD loss (or reduction) under EAPA, their manufacturer is of no consequence).

**Page 13 of 18**

information and as part of the verification, did not match the invoices submitted by Aspects to CBP as part of the entry packages.  The fonts and layouts of the invoices are different and also contained misdescribed **and/or additional merchandise** that was not found on invoices provided by the two manufacturers for the same entry."  Review Determination at 9.  In other words, while indeed some of the invoices filed by AFI with Customs included certain modifications made by the company, such modifications were mainly made on the plus side and there was overlap between AFI's invoices and the original, "real" invoices provided by the manufacturers, with respect to their products.  Customs itself admits that the invoices submitted by AFI included "additional" merchandise, as opposed to "less" merchandise.  *Id.*  Customs drew this conclusion by comparing AFI's invoices with the ones from its manufacturers/exporters. Therefore, at most, Customs' "difficulty" to identify the manufacturers only affected such "additional" merchandise; but with respect to the merchandise manufactured and exported by Wuxi, AFI's inclusion of "additional" merchandise did not affect their origin and did not prevent Customs from identifying their manufacturer/exporter—to the contrary, by comparing the two (2) sets of invoices and noticing their overlap (*i.e.,* the goods actually manufactured by Wuxi), Customs was indeed able to verify that Wuxi and Nantong Fuhuang, respectively, produced those products.

Lastly, as explained above, the addition of these products on Wuxi's invoices, while inappropriate, did not result in a loss or reduction of AD/CVD, even if the added goods were assists under 19 U.S.C. § 1401a.  This is because, with respect to entries of WBF, any failure to properly report assists could not result in a loss or reduction of ADD due to Wuxi's 0.00%; whereas for assists to non-WBF items, there is no ADD owed whatsoever.  While Defendant insists that there is no evidence AFI included any assists it provided its manufacturers free of

charge within the declared value of the merchandise, as required under 19 C.F.R. § 141.86, this

is simply of no consequence for purposes of "evasion" under EAPA and its duty loss/reduction

element.  Put simply, mathematically, $100 times 0.00% brings the same results as $200 times

0.00%—in both instances, the result is zero (0).  And since EAPA explicitly requires at least a

reduction of AD/CVD, when the duty rate is 0.00% the total value of the merchandise does not

affect the duty rate paid or that should be paid *in any way*.  Accordingly, there was no "evasion,"

as defined under EAPA, for *any* of the entries of WBF produced and exported by Wuxi Yushea,

even if the final WBF products included assists provided by AFI free of charge.[10]

Specifically with respect to Wuxi Yushea's invoices, the Government adopts Customs'

position that such invoices were the "real" invoices; in fact, Customs relied on and cited to such

real invoices when making its findings against AFI.  *See. e.g*., Verification Report examples.

Yet, when it comes to responding to AFI's argument regarding the absence of a duty

loss/reduction for WBF entries from Wuxi (given its 0.00% ADD rate), Customs somehow

cannot verify that Wuxi was the producer/manufacturer for any of the entries of WBF reported

by AFI as being from Wuxi.  This approach is contradictory and illogical.  Customs cannot trust

Wuxi's invoices only for making a finding adverse to AFI but then claim that it cannot verify

such invoices when they would form the base for findings beneficial to AFI.  By referencing the

Wuxi invoices as "real" and citing to them when concluding that AFI's invoices were improper,

Customs not only verified these records, but also used their contents to draw its material findings

in this Investigation.  As the vast majority of the entries subject to this Investigation were Wuxi

Yushea entries, Customs was, in fact, able to verify which entries came from Wuxi and which

---

[10] Importantly, if Customs were to find that this "additional" merchandise does not qualify as
assists, there is still no duty loss/reduction, since such additional items are not covered by an
antidumping and/or countervailing duty order.

did not; it just refused to acknowledge that when it seemed to detract from their desired conclusion—which was a positive finding of evasion.  Accordingly, Customs final finding that none of AFI's entries of WBF were verified as having been produced by Wuxi is irrational, a clear error of judgment, and thus arbitrary and capricious.

In summary, the EAPA Investigation does not support "evasion;" it merely exposes certain problematic practices by the importer, AFI, that have since been corrected.  CBP's TRLED had the burden to prove, by substantial evidence, that Plaintiff committed "evasion," within the technical sense set out under EAPA.  The Administrative Record provided before this Court fails to satisfy TRLED's burden.  As demonstrated above, TRLED's finding of "evasion" is vague and speculative, in essence concluding that AFI must have committed evasion because of the irregularities found with its audited entries (and how egregious these irregularities were— which, again, implies culpability, a notion that has no impact on "evasion").

## C.  DEFENDANT HAS FAILED TO REFUTE AFI'S DUE PROCESS ARGUMENTS

Defendant claims that Plaintiff's constitutional arguments fail because AFI does not have a protectable interest.  Defendant is incorrect. In *Hannah v. Larche*, 363 U.S. 420 (1960), the United States Supreme Court stated, when analyzing "due process," that "when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process."  *Hannah*, 363 U.S. at 442.  Here, at a minimum, AFI's protected interests include goodwill, reputation, and freedom to take advantage of business opportunities.  *See Kwo Lee, Inc. v. United States*, 24 F.Supp. 3d 1322, 1327 (Ct. Int'l Trade 2014).  These interests, alone, are constitutionally protected interests that AFI was deprived of as a result of this EAPA Investigation.

Further, the Government argues that, because AFI was able to submit multiple written arguments before both TRLED and ORR, it was provided with notice and opportunity to be heard.  While that is factually true, it was not sufficient from a constitutional perspective. "[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."  *Doty v. United States*, 53 F.3d 1244, 1251 (Fed. Cir. 1995) (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).  "[T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error."  *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1069 (D.C. Cir. 1995).  Indeed, "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact finding, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."  *Greene*, 360 U.S. at 496; *see also Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 319 (D.C. Cir. 2014) ("[D]ue process requires, at the least, that an affected party . . . be given access to the unclassified evidence on which the official actor relied and be afforded an opportunity to rebut that evidence.").  Here, while EAPA allowed AFI to file written arguments before the administrative agency, AFI did not have access to the full and unredacted Administrative Record when submitting such written arguments, which prevented it, through its counsel, to effectively defend itself against all the findings CBP made against it, since many of these findings were themselves redacted.  *See, generally*, Verification Report.  AFI and its counsel were given no time whatsoever to comment on the confidential information upon which TRLED based its Initial Determination or ORR its Review Determination.  CBP denied Plaintiffs all access to

confidential information throughout the entire EAPA Investigation, and the fact that Plaintiff ultimately obtained access to these confidential records through the filing of the pending action does not cure these deficiencies.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) (holding that after-the-fact explanations even in the form of affidavits do not constitute a record that can support agency action).

## **CONCLUSION**

For the reasons provided above and in Plaintiff's moving brief, this court should enter judgment in its favor, holding unlawful and setting aside CBP's EAPA Determinations; ordering CBP to refund Plaintiff any monies collected on its imports as a result of CBP's evasion investigation in EAPA Case No. 7189; awarding Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act, 20 U.S.C. § 2412; and granting any such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618

Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
lmoya@rwsnyderlaw.com

Counsel for Plaintiff ASPECTS
FURNITURE INTERNATIONAL, INC.

Dated: **August 30, 2021**
Irvine, CA

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 20-03824 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF COMPLIANCE PURSUANT TO
USCIT STANDARD CHAMBER PROCEDURE 2(B)**

I, Robert W. Snyder, attorney at the Law Offices of Robert W. Snyder, who is responsible for the foregoing brief, relying upon the word count of Microsoft Word's word count feature (as used to prepare the brief), certify that this brief complies with the word count limitation under USCIT Standard Chamber Procedure 2(B), and contains 6, 283 words.

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
            lmoya@rwsnyderlaw.com

Counsel for Plaintiff ASPECTS
FURNITURE INTERNATIONAL, INC.

Dated: **August 30, 2021**
         Irvine, CA