Slip Op. 22-132

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **ASPECTS FURNITURE INTERNATIONAL, INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>        **Defendant.** | **Before:  Jennifer Choe-Groves, Judge**<br><br>**Court No. 20-03824** |

## <u>OPINION</u>

[Remanding in part and sustaining in part U.S. Customs and Border Protection's evasion determination under the Enforce and Protect Act.]

                                        Dated: November 28, 2022

<u>Robert W. Snyder</u> and <u>Laura A. Moya</u>, Law Offices of Robert W. Snyder, of Irvine, CA, for Plaintiff Aspects Furniture International, Inc.

<u>Douglas G. Edelschick</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With him on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director.  Of counsel on the brief was <u>Tamari Lagvilava</u>, Attorney, Office of the Chief Counsel, U.S. Customs and Border Protection.

    Choe-Groves, Judge:  Plaintiff Aspects Furniture International, Inc.

("Plaintiff" or "Aspects") filed this action challenging the final affirmative

determination of evasion of the antidumping duty order on wooden bedroom

furniture from the People's Republic of China ("China") by U.S. Customs and

Border Protection ("Customs"), issued pursuant to Customs' authority under the

Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517.  See Compl. at 1, ECF No.

2; see also Trade Facilitation & Trade Enforcement Act of 2015, Pub. L. No. 114-

125, § 421, 130 Stat. 122, 161 (2016).  Before the Court is Aspects' Motion for

Judgment on the Agency Record, ECF No. 20.  See also Pl.'s Mem. Supp. Mot. J.

Agency R. ("Pl.'s Br."), ECF No. 20.  Defendant United States ("Defendant" or

"the Government") opposes the motion.  Def.'s Resp. Opp'n Pl.'s Mot. J. Agency

R. ("Def.'s Resp."), ECF No. 23.

## ISSUES PRESENTED

The Court reviews the following issues:

1.    Whether Customs may apply the EAPA statute and regulations

retroactively to Aspects' entries made prior to the EAPA statute

entering into force;

2.    Whether Customs' consideration of hearsay evidence was in

accordance with the law and whether Customs' decision to disregard

Aspects' affidavits was arbitrary or capricious;

3.    Whether Customs' evasion determination was supported by

substantial evidence;

4.    Whether the EAPA statute, its regulations, and Customs'
      administration of the EAPA statute denied Aspects' procedural due
      process protections; and

5.    Whether Customs' combination of the EAPA investigation with a
      regulatory audit was in accordance with the law.

## BACKGROUND

On January 4, 2005, the U.S. Department of Commerce ("Commerce")
issued antidumping duty order A-570-890 covering wooden bedroom furniture
from China.  See Notice of Amended Final Determination of Sales at Less Than
Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the
People's Republic of China ("Order"), 70 Fed. Reg. 329 (Dep't of Commerce Jan.
4, 2005).  The American Furniture Manufacturers Committee for Legal Trade
("AFMC") filed an allegation of evasion with Customs' Trade Remedy & Law
Enforcement Directorate in April 2017 requesting that an investigation be initiated
against Aspects.  See Letter from J. Michael Taylor on behalf of AFMC (Apr. 6,
2017) ("AFMC's Allegation"), PR 13.[1]  AFMC's Allegation claimed that Aspects
was importing wooden bedroom furniture covered by the Order produced by two
Chinese companies, Nantong Fuhuang Furniture Co., Ltd. ("Nantong Fuhuang")

---

[1]  Citations to the administrative record reflect the public record ("PR") and
confidential record ("CR") document numbers filed in this case, ECF Nos. 16, 17.

and Nantong Wangzhuang Furniture Co., Ltd., while claiming that the subject

items were produced by two other Chinese companies, Shanghai Jian Pu Import &

Export Co., Ltd. and Wuxi Yushea Furniture Co., Ltd. ("Wuxi Yushea"), which

were subject to lower or no antidumping duty rates.  See id. at 3, 5–15; Customs'

Notice of Initiation of an Investigation and Interim Measures (Aug. 14, 2017)

("Notice of Investigation and Interim Measures"), PR 138, CR 113.

      An investigation was initiated on May 9, 2017.  See Customs' Mem.

Initiation Investigation EAPA Case Number 7189 (May 9, 2017) ("Initiation

Memo" or "Initiation Mem."), PR 100; Notice of Investigation and Interim

Measures at 2.  That same month, the investigation team conducted a

teleconference with counsel for AFMC to "provide [AFMC] with an opportunity to

brief the Enforce and Protect Act investigative team on its allegation and to answer

any questions on the information presented therein."  See Customs' Mem. AFMC's

Meeting Discuss Allegations Evasion (May 31, 2017), PR 104.  Aspects claims

that it was not invited to participate in the call and was not provided with a

transcript of the conversation.  Pl.'s Br. at 5.

      On August 14, 2017, Plaintiff was provided with notice of the EAPA

investigation and was informed that Customs had imposed interim measures,

including: (1) rate-adjustments were applied to subject merchandise; (2) "live

entry" was required for future imports; (3) liquidation for entries made after May

9, 2017 was suspended and liquidation for all entries made before that date was extended; and (4) entries previously liquidated but still subject to Customs' reliquidation authority were reliquidated.  See Notice of Investigation and Interim Measures at 4, 5.  Customs also advised Aspects that it was already reviewing Aspects' entries for calendar year 2016 for potential evasion of duties and would extend the scope of its EAPA investigation to align with that review.  Id. at 2.

Between October 2017 and March 2018, Customs sent requests for information to Aspects and to Chinese companies associated with Aspects' wooden bedroom furniture entries.  Customs' Importer Questionnaire (Oct. 24, 2017), PR 146, CR 114; Customs' Manufacturer Questionnaire (Oct. 24, 2017), PR 147; Customs' Additional Manufacturer Request for Information (Jan. 25, 2018), PR 296–99, CR 237–40; Customs' Manufacturer Request for Information Nantong Fuhuang (Jan. 26, 2018), PR 300; Customs' Importer Request for Information (Mar. 9, 2018), PR 321, CR 253; Customs' Request for Information Aspects Nantong (Mar. 9, 2018), PR 322, CR 254; see also On-Site Verification Report Enforce and Protect Act (EAPA) Case 7189 (Dec. 13, 2019) ("Verification Report") at 2, PR 373, CR 295.  Wuxi Yushea and Nantong Fuhuang provided replies.  Wuxi Yushea's Resp. Request for Information (Feb. 6, 2018), PR 311–318, CR 242–52; Nantong Fuhuang's Resp. Request Information (Feb. 11, 2018), PR 319.  In April 2018, Customs' verification team conducted site visits in China

to Wuxi Yushea, Nantong Fuhuang, and Aspects' Nantong office.  See

Verification Report at 3.  The site visits included: (1) interviews with company

officials about company operations and record keeping; (2) tours of facilities; and

(3) reviews of original records to verify the request for information responses.  See

id. at 3–4.  The verification team identified instances in which Aspects "co-

mingled merchandise," created "multiple versions of invoices," created

"descriptions of merchandise on documentation" that differed from those provided

by the manufacturers, and "manipulated per unit prices" on entry documents.  Id. at

4–15.  The verification team also observed two instances in which an Aspects

employee deleted or destroyed records relating to container loading plans.  Id. at

16–17.  The verification team concluded that both Wuxi Yushea and Nantong

Fuhuang "were able to produce the [wooden bedroom furniture] at sufficient

quantities as to account for the imported merchandise totals" associated with

Aspects' entries.  See id. at 4.

On December 22, 2017, Customs notified the parties to the investigation that

deadlines in the investigation were stayed to allow Customs to request a referral

scope determination from Commerce as to whether certain merchandise was

covered by the Order.  See Customs' Scope Referral Request Mem. (Dec. 22,

2017), PR 294, CR 235.  Customs submitted a revised referral in July 2019

amending errors in the original submission.  Commerce's Scope Ruling

Antidumping Duty Order (Dec. 31, 2019) ("Final Scope Ruling") at 2, PR 387, CR

303.  Commerce issued its Final Scope Ruling on December 31, 2019, concluding

that four of the six considered items were not covered by the Order and two of the

items were covered by the Order.  Id. at 1.

Customs' Trade Remedy & Law Enforcement Directorate determined that

substantial evidence demonstrated that Aspects entered covered merchandise into

the United States through evasion of the Order.  See Notice of Final Determination

as to Evasion (May 18, 2020) ("May 18 Determination") at 9, PR 419, CR 310.

Aspects requested *de novo* administrative review of the May 18 Determination.

See Pl.'s Request Administrative Review (June 30, 2020) ("Pl.'s Request Admin.

Rev."), PR 420, CR 311.  On September 24, 2020, Customs' Office of Trademark,

Regulations, and Rulings issued its Final Determination, affirming the May 18

Determination.  See Customs' Final Determination Aspects Furniture International,

Inc. Enforce and Protect Act (EAPA) Case No. 7189 (Sept. 24, 2020) ("Final

Administrative Determination" or "Final Admin. Determination") at 11, PR 429.

Aspects filed this action in a timely manner.  See Summons, ECF No. 1; Compl.

## LEGAL FRAMEWORK FOR EAPA INVESTIGATIONS

19 U.S.C. § 1517 requires Customs to investigate allegations that an

importer has evaded antidumping and countervailing duty orders.  19 U.S.C.

§ 1517.  Evasion is defined as:

> [E]ntering covered merchandise into the customs territory of the United
> States by means of any document or electronically transmitted data or
> information, written or oral statement, or act that is material and false,
> or any omission that is material, and that results in any cash deposit or
> other security or any amount of applicable antidumping or
> countervailing duties being reduced or not being applied with respect
> to the merchandise.

Id. § 1517(a)(5)(A). "Covered merchandise" is merchandise that is subject to an

antidumping duty or countervailing duty order issued pursuant to 19 U.S.C.

§ 1673e or § 1671e. Id. § 1517(a)(3).

Customs must initiate an investigation within 15 days of receiving an

allegation that "reasonably suggests that covered merchandise has been entered

into the customs territory of the United States through evasion." Id. § 1517(b)(1).

Once an investigation is initiated, Customs has 90 days to decide "if there is a

reasonable suspicion that such covered merchandise was entered into the customs

territory of the United States through evasion" and, if so, to impose interim

measures. Id. § 1517(e). Interim measures include: (1) "suspend[ing] the

liquidation of each unliquidated entry of such covered merchandise that entered on

or after the date of the initiation of the investigation;" (2) "extend[ing] the period

for liquidating each unliquidated entry of such covered merchandise that entered

before the date of the initiation of the investigation;" and (3) "tak[ing] such

additional measures as [Customs] determines necessary to protect the revenue of

the United States. . . ." Id.

Customs must make a final determination within 300 calendar days after the initiation of the investigation.  Id. § 1517(c)(1)(A).  Customs' evasion determination must be based on substantial evidence.  Id.  Within 30 days of Customs' evasion determination, the person alleging evasion, or the person found to have engaged in evasion, may file an administrative appeal seeking *de novo* review of Customs' determination.  Id. § 1517(f)(1).  Judicial review may be sought within 30 days of Customs' determination on appeal.  Id. § 1517(g)(1).

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 517 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1517(g),[2] and 28 U.S.C. § 1581(c), which grant the Court jurisdiction over actions contesting determinations of evasion pursuant to the EAPA statute.  The Court reviews Customs' evasion determination for compliance with all procedures under 19 U.S.C. §§ 1517(c) and (f) and will hold unlawful "any determination, finding, or conclusion [that] is arbitrary, capricious, an abuse of

---

[2]  Congress amended 28 U.S.C. § 1581(c) to encompass EAPA cases via § 421(b) of Title IV of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 154, 168 (2016).  All statutory citations herein are to the 2018 edition of the United States Code and all citations to regulations are to the 2020 edition of the Code of Federal Regulations.

discretion, or otherwise not in accordance with law."  19 U.S.C. § 1517(c)(1)(A);

id. § 1517(g)(2).

## DISCUSSION

### I.      Retroactive Application of EAPA

This case presents an issue of first impression for the U.S. Court of

International Trade with respect to whether Customs may retroactively apply 19

U.S.C. § 1517 and 19 C.F.R. § 165.2 to entries made prior to the EAPA statute

coming into force.  In its May 18 Determination, Customs noted that the "EAPA

regulations state explicitly that the investigation is retrospective, covering entries

'made within one year before the receipt of an allegation under § 165.11 or of a

request for an investigation under § 165.14.'"  May 18 Determination at 3 n.7.

Based on this reasoning that the EAPA regulations allow an investigation to cover

entries made one year before the initiation of the investigation, Customs extended

this logic to include in its EAPA investigation entries made before the entry into

force of the EAPA statute.

Aspects argues that Customs' retroactive application of the EAPA statute

and regulations is unlawful for two reasons.  First, Aspects argues that 19 C.F.R.

§ 165.2 does not "explicitly" state that investigations under EAPA are retroactive

but, at best, implies retroactivity.  Pl.'s Br. at 12.  Second, Aspects argues that

Customs' interpretation of the regulations contradicts Congress' intent and the

clear language of the statute.  Id.  In support of this position, Aspects notes that the

Trade Facilitation and Enforcement Act of 2015, which contains the EAPA statute,

was enacted on February 24, 2016.  See Pub. L. 114-125, 130 Stat. 122 (Feb. 24,

2016).  The Trade Facilitation and Enforcement Act of 2015 provides that

amendments made under Section 421(c), including the EAPA statute, "shall take

effect on the date that is 180 days after the date of the enactment of this Act."  Id.

§ 421, 130 Stat. at 168; 19 U.S.C. § 1517 note.  Aspects argues that Congress

intended the EAPA statute to enter into force on August 22, 2016, 180 days after

the February 24, 2016 date of enactment, and that Customs lacked authority to

initiate or conduct EAPA investigations prior to August 22, 2016.  Pl.'s Br. at 12–

13.

Defendant argues that Aspects' retroactivity argument is moot because the

Government contends that all of Aspects' pre-EAPA entries that were subject to

the investigation were liquidated on or before February 16, 2018.  Def.'s Resp. at

12.  Defendant also notes that Customs stated in the Final Administrative

Determination that Customs relied "only on entries made after the effective date of

EAPA."  Id. (citing Final Admin. Determination at 8).  Defendant contends that

because the relevant entries have been liquidated and were not considered in the

Final Administrative Determination, the issue is moot and a ruling by the Court on

Aspects' retroactivity argument would be merely advisory.  Id. at 12–13.

Aspects counters that the retroactivity issue is not moot because at least

fifteen pre-EAPA entries (entered between January 1, 2016 and the date the EAPA

statute came into force on August 22, 2016) were included in the EAPA

investigation and for which liquidation is currently suspended or extended.  Pl.'s

Reply Further Supp. Mot. J. Agency R. ("Pl.'s Reply") at 5, ECF Nos. 26, 27.

## A.    Whether Aspects' Argument is Moot

The Court is limited to resolving actual disputes and cannot render legal

opinions that are merely advisory or hypothetical.  See Star Pipe Prods. v. United

States, 43 CIT __, __, 393 F. Supp. 3d 1200, 1217 (2019).  Defendant argues that

any ruling by the Court on Aspects' retroactivity argument would be an

impermissible advisory opinion because all of Aspects' pre-EAPA entries were

finally liquidated on or before February 16, 2018.  Def.'s Resp. at 12–13.  In

support of this argument, Defendant cites to a list of 43 entries identified in

Aspects' written arguments to Customs as entered between January 1, 2016 and

August 22, 2016 and considered by Customs in the EAPA investigation.  Id. at 12

(citing Aspects' Submission Written Arguments EAPA Investigation 7189 (Feb.

10, 2020) ("Pl.'s Written Arguments") at 19–20, PR 404, CR 306).  Aspects asserts

in its written arguments that the list of entries from before the date of the EAPA

statute's entry into force on August 22, 2016 was not exhaustive.  See Pl.'s Written

Arguments at 20 ("Aspects has identified that the following entries, *at a minimum*,

were improperly included under this EAPA Investigation and reviewed by

[Customs] in accordance." (emphasis in original)).  Aspects contends that it has

confirmed that liquidation of at least fifteen of its pre-EAPA entries remains

suspended or extended.  Pl.'s Reply at 5.

Because it appears that Customs included at least fifteen of Aspects' entries

in the EAPA investigation that were entered before the date that the EAPA statute

took effect, the Court observes that Customs will likely apply the Final

Administrative Determination to some pre-EAPA entries for which liquidation is

currently suspended or extended and some pre-EAPA entries that are subject to

reliquidation.  The Court concludes that Aspects' argument regarding retroactivity

is not moot.

## B.    Retroactivity of EAPA Investigations

Customs' regulation 19 C.F.R. § 165.2 provides:

> Entries that may be the subject of an allegation made under § 165.11 or
> a request for an investigation under § 165.14 are those entries of
> allegedly covered merchandise made within one year before the receipt
> of an allegation under § 165.11 or of a request for an investigation
> under § 165.14.   In addition, at its discretion, [Customs] may
> investigate other entries of such covered merchandise.

19 C.F.R. § 165.2.  Customs received AFMC's Allegation on April 6, 2017 and

formally initiated its EAPA investigation on May 9, 2017.  See AFMC's

Allegation; Initiation Mem.  In its Notice of Investigation and Interim Measures,

Customs advised Aspects that Customs was already reviewing Aspects' entries for

the 2016 calendar year for potential evasion of antidumping duties before AFMC's

Allegation was filed.  Notice of Investigation and Interim Measures at 1–2.  In the

May 18 Determination, Customs stated that EAPA regulations "explicitly" provide

that an EAPA investigation "is retrospective, covering entries 'made within one

year before the receipt of an allegation under § 165.11 or of a request for an

investigation under § 165.14.'"  May 18 Determination at 3 n.7.  Aspects argues

that this interpretation is unlawful because it would potentially include Aspects'

entries made before the EAPA statute entered into force.  Pl.'s Br. at 11–13.

The Court disfavors reading statutes retroactively when such application

would impair a party's rights, increase liability for prior conduct, or impose a new

duty for a transaction already completed.  Fernandez-Vargas v. Gonzales, 548 U.S.

30, 37 (2006).  It is a rule of general application that a statute will only be given

retroactive effect if required by either (1) the express language of the statute or

(2) necessary implication.  Id.; Ad Hoc Shrimp Trade Action Comm. v. United

States, 802 F.3d 1339, 1349 (Fed. Cir. 2015).

The Court applies a sequential analysis when considering the retroactive

application of a statute.  First, the Court considers "whether Congress has

expressly prescribed the statute's proper reach."  Fernandez-Vargas, 548 U.S. at 37

(quoting Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994)).  In the absence

of clear language, the Court applies its normal rules of statutory interpretation to decipher the statute's temporal reach.  Id. (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).  If the scope of the statute remains unclear, the Court considers "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment.'"  Id. (quoting Landgraf, 511 U.S. at 278)).

In this case, the intent of Congress is clear from the express language of the Act.  The Trade Facilitation and Enforcement Act of 2015, which contains the EAPA statute, was enacted on February 24, 2016.  See Pub. L. 114-125, 130 Stat. 122 (Feb. 24, 2016).  The EAPA statute states that "[t]he amendments made by this section shall take effect on the date that is 180 days after the date of the enactment of this Act."  Id. § 421(c), 130 Stat. at 168; 19 U.S.C. § 1517 note.  Pursuant to this provision, the statutory language makes it clear that Congress intended for the EAPA statute to take effect on August 22, 2016, 180 days after February 24, 2016 when the Trade Facilitation and Enforcement Act of 2015 was enacted.

Nothing in the language of the statute implies that Customs was authorized to take any investigatory action or affect entries prior to the EAPA statute coming into force.  The statutory language concerning covered merchandise, entry, evasion, and investigations does not specify that merchandise entered prior to the

EAPA statute taking effect may be included in an EAPA investigation.  See 19

U.S.C. §§ 1517(a)(3)–(5), (b).  The statutory provisions addressing interim

measures and the "effect of determinations" language may provide Customs with

the authority to extend the period for liquidating unliquidated entries that "entered

before the date of the initiation of the *investigation*," see id. § 1517(d)(1)(B)

(emphasis added); id. § 1517(e)(2), but there is nothing in the statute to suggest

that Customs' investigative authority extends to entries made prior to the EAPA

statute coming into force.

Furthermore, the Court is persuaded by the fact that permitting retroactive

application of the EAPA statute to entries that pre-date the EAPA statute's taking

effect would result in a disfavored consequence to the rights and liabilities of

importers, who would be potentially liable for conduct that arose from entering

merchandise prior to the EAPA statute's entry into force, without notice that such

conduct could be violative of a law that had not yet taken effect.  See Fernandez-

Vargas, 548 U.S. at 37 (retroactive application of a statute is disfavored when the

consequence affects substantive rights, liabilities, or duties on the basis of conduct

arising before the statute's enactment).  The Court recognizes that an importer's

obligation to provide truthful information to Customs predates the EAPA statute,

but the EAPA statute created new liabilities for pre-EAPA conduct through

expressly defining the act of evasion, mandating that Customs investigate

allegations of evasion, and imposing interim measures based on a reasonable

suspicion prior to a final determination.  See 19 U.S.C. §§ 1517(a)(5), (b), (e).

Because the language is clear that the EAPA statute entered into force on

August 22, 2016, 180 days after the Trade Facilitation and Enforcement Act of

2015 was enacted, the Court concludes that Customs' interpretation of 19 C.F.R.

§ 165.2 is unlawful because the retroactive application of this regulation would

effectively allow an EAPA investigation to affect conduct and entries made prior

to the EAPA statute entering into force.  The Court holds that an EAPA

investigation may not include merchandise entered prior to the EAPA statute's date

of entry into force on August 22, 2016.  The Court remands this case for Customs

to clarify its determination consistent with this opinion with respect to Aspects'

entries made prior to the EAPA statute's entry into force.

## II.     Consideration of Evidence Related to Document Destruction

Aspects argues that Customs' May 18 Determination and Final

Administrative Determination were based on impermissible hearsay evidence.

Pl.'s Br. at 13–14.  Aspects contends that in both the May 18 Determination and

Final Administrative Determination, Customs relied on statements in the

Verification Report alleging that Aspects' employees were observed deleting and

destroying documents and correspondence.[3]  Id. at 13; see also May 18

Determination at 7–8 (citing Verification Report at 16).  Because the Verification

Report was seemingly based on the observations of Customs' employees and was

prepared after the verification visit, Aspects contends that the included statements

constitute hearsay under the Federal Rules of Evidence.  Pl.'s Br. at 13; see also

Fed. R. Evid. 801, 802.  Aspects argues that no established hearsay exception

applies to the statements and that they should not have been relied on by Customs.

Pl.'s Br. at 13.

        Aspects also argues that Customs abused its discretion in not considering

affidavits offered by Aspects in support of its June 30, 2020 Request for

Administrative Review that addressed the allegations of document destruction.  Id.

at 14; see also Pl.'s Request Admin. Rev. at Exs., 1, 2.  Aspects contends that even

---

[3]  Although Aspects claims that Customs relied heavily on the Verification Report
in both the May 18 Determination and Final Administrative Determination with
regard to allegations that Aspects' employees destroyed evidence, the Final
Administrative Determination does not emphasize this point.  See Pl.'s Br. at 13.
In fact, Customs noted:

>        Aspects has only focused on one piece of evidence which arose during
>        the verification—namely, the destruction of evidence by an employee
>        during the visit to Aspects' Nantong satellite office—to discredit the
>        finding of evasion.  Even without this destruction of evidence, the
>        administrative record *still* contains substantial evidence of actions taken
>        by Aspects to underpay or avoid the payment of [antidumping] duties.

Final Admin. Determination at 8 (emphasis in original).

if these documents were untimely, consideration would not have been burdensome, and the documents should have been considered in order to have a complete record.  Pl.'s Br. at 14.

Defendant asserts that the Federal Rules of Evidence are not applicable in proceedings before Customs and that the Administrative Procedures Act ("APA") governs the admissibility of evidence in administrative proceedings.  Def.'s Resp. at 13.  Defendant contends that under the APA, hearsay evidence is admissible in administrative proceedings as long as it is not irrelevant, immaterial, or unduly repetitious and that evidence that meets the APA standard may be considered in light of its truthfulness, reasonableness, and credibility.  Id.

Defendant also argues that Aspects' affidavits were properly excluded because they were untimely and not based on facts already in the record.  Id. at 14–15.  Defendant contends that the proposed affidavits do not actually deny the allegations of document destruction and that Aspects has failed to provide a compelling reason to permit the untimely submissions.  Id. at 14, 16.

## A.    Hearsay

Aspects contends that statements relied on by Customs regarding Customs' officials observing instances of document destruction by Aspects' employees constituted inadmissible hearsay and should have been disregarded.  Pl.'s Br. at 13–14.  Defendant does not dispute that the statements made by Customs officials

and offered to prove that Aspects' employees destroyed documents during the

verification visit meet the definition of hearsay, an out of court statement made by

a declarant that is offered as evidence to prove the truth of the matter asserted in

the statement.  See Fed. R. Evid. 801.  Rather, Defendant contends that those

statements are admissible under the APA.  Def.'s Resp. at 13–14.

Unlike trials before a federal court that are governed by the Federal Rules of

Evidence, evidence in proceedings before federal agencies is admitted in

accordance with the APA.  Anderson v. United States, 16 CIT 324, 327, 799 F.

Supp. 1198, 1202 (1992); Tarnove v. Bentsen, 17 CIT 1324, 1326 (1993).  Under

the APA, "[a]ny oral or documentary evidence may be received, but the agency as

a matter of policy shall provide for the exclusion of irrelevant, immaterial, or

unduly repetitious evidence."  5 U.S.C. § 556(d).  The APA empowers those

presiding over administrative hearings to "rule on offers of proof and receive

relevant evidence."  Id. § 556(c)(3).  Hearsay evidence in administrative

proceedings is "admissible up to the point of relevancy."  Richardson v. Perales,

402 U.S. 389, 410 (1971).  If evidence meets this standard, it may be considered

"in light of its truthfulness, reasonableness, and credibility."  Anderson, 16 CIT at

327, 799 F. Supp. at 1202 (internal quotation omitted).  It is left to the agency to

determine the reliability of evidence and the weight to which it should be assigned.

Tarnove, 17 CIT at 1327.

Customs' verification team visited sites in China in April 2018.  Verification

Report at 3.  Customs prepared and revised the Verification Report, which

included a description of two instances of document destruction.  Id. at 1, 16–17.

In the first instance, Customs officials described a request made to an Aspects

Nantong employee to demonstrate how he designed container loading plans.  Id. at

16.  While waiting to view samples, the verification team observed the employee

deleting a chat record of conversations with a representative of Wuxi Yushea.  Id.

In the second instance, Customs officials described a member of the verification

team observing the same Aspects employee deleting dozens of files from his

computer.  Id. at 17.

In the May 18 Determination, Customs noted "multiple instances in which

one employee involved with the commingling process was observed deleting and

destroying information when such commingling was under discussion."  May 18

Determination at 4 (citing Verification Report at 16–17).  Customs noted that:

> These multiple examples of destruction of information during
> attempted verification of merchandise from multiple suppliers being
> organized in the same individual containers relates [sic] to the issue of
> whether or not specific merchandise imported by Aspects could be
> linked to specific manufacturers, which is of critical importance with
> regard to the appropriate cash deposit rates.

Id. at 7–8.

Evidence in an administrative proceeding is "admissible up to the point of relevancy." Richardson, 402 U.S. at 410. Aspects does not argue that the challenged evidence is irrelevant. In its Request for Administrative Review, Aspects indicated that it "does not accept *any* part of [Customs'] accusation as accurately reflecting what transpired during the [v]erification [v]isit at Aspects Nantong" and characterized Customs' conclusions as careless. Pl.'s Request Admin. Rev. at 9 (emphasis in original). Aspects challenged the Verification Report's failure to identify the official or officials who observed the alleged document destruction and the lack of evidentiary support from any other record documents, particularly evidence prepared contemporaneously with the alleged incident underlying the evasion determination. Id. at 9–10. Customs acknowledged Aspects' arguments in the Final Administrative Determination but did not address them substantively, stating only that "[e]ven without this destruction of evidence, the administrative record *still* contains substantial evidence of actions taken by Aspects to underpay or avoid the payment of [antidumping] duties." See Final Admin. Determination at 6, 8. The Court observes that Customs did not provide any analysis about the truthfulness, reasonableness, or credibility of the disputed evidence in weighing the accounts of the Verification Report, though Customs asserted that the evidence was not needed to establish substantial evidence of evasion. The Court concludes that Customs'

decision to disregard Aspects' affidavits was not arbitrary or capricious, but
because the Court remands this case on other issues, Customs may decide to
provide further explanation regarding the truthfulness, reasonableness, or
credibility of the evidence in dispute.

### B.   Disregarded Affidavits

Aspects submitted two affidavits with its June 30, 2020 Request for
Administrative Review addressing the allegations of document destruction.  Pl.'s
Request Admin. Rev. at Exs. 1, 2.  In the Final Administrative Determination,
Customs' Office of Trade, Regulations & Rulings rejected the two affidavits as
unrequested new evidence.  Final Admin. Determination at 8 n.29.  Aspects argues
that Customs' determination to disregard the affidavits was an abuse of discretion
because even if the documents were submitted untimely, consideration would not
have been burdensome.  Pl.'s Br. at 14.  Defendant disagrees and asserts that the
submissions were properly excluded as untimely and irrelevant.  Def.'s Resp. at
14–16.

Part 165 of 19 C.F.R. sets forth the regulatory procedures that govern the
investigation of claims of evasion of antidumping and countervailing duties.  See
generally 19 C.F.R. § 165.  Customs stated in the Final Administrative
Determination that Aspects' affidavits were rejected in part because parties may
only submit new information in response to a request by Customs pursuant to 19

C.F.R. § 165.44.  Final Admin. Determination at 8 n.29.  A review of 19 C.F.R.

§ 165.44 does not support Customs' proposition that the only manner in which

information may be submitted is in response to a request by Customs.  Rather, 19

C.F.R. § 165.44 states that "[Customs] may request additional written information

from the parties to the investigation at any time during the review process."  19

C.F.R. § 165.44.  The section then describes a process by which the parties must

comply with certain requirements, such as providing a public version in English

and in writing.  See id. §§ 165.4, 165.6, 165.44.  The Government does not defend

Customs' position that the only manner in which information may be submitted to

Customs is upon request pursuant to 19 C.F.R. § 165.44.  Defendant instead

acknowledges that parties may submit voluntary information under the EAPA

regulations within certain time limits, including a process by which to submit

rebuttal information.  Def.'s Resp. at 14–16; see 19 C.F.R. § 165.23.  Defendant

contends that Aspects' affidavits were submitted untimely after the 200 calendar

days after which Customs initiated the investigation.  Def.'s Resp. at 14–15; see 19

C.F.R. § 165.23(c)(2).

The affidavits submitted with Aspects' Request for Administrative Review

describe the accounts and impressions of two Aspects employees who were present

during the verification visit at which the alleged document destruction occurred.

Pl.'s Request for Admin. Rev. at Exs. 1, 2.  Aspects does not attempt to argue that

the affidavits were submitted timely, contending in its brief only that "[e]ven if these declarations are found by this Court to have been submitted untimely under EAPA or its implementing regulation, it would not have been burdensome for [Customs] to incorporate such declarations. . . ."  Pl.'s Br. at 14.  Aspects does not dispute the Government's argument that the affidavits were submitted "more than 18 months too late," well after the 200-day deadline set forth in the relevant EAPA regulations.  Def.'s Resp. at 15.

The EAPA statute and its regulations impose timelines for investigations. Parties must make voluntary submissions of factual information by "no later than 200 calendar days after [Customs] initiated the investigation."  19 C.F.R. § 165.23(c)(2).  Voluntary submissions after the 200th calendar day are not considered or placed on the administrative record.  Id.  If new factual information is placed on the record, parties to the investigation may provide rebuttal information within ten calendar days of the new factual information being placed on the record or served.  Id.

The Government argues that the deadline for voluntary submissions was December 7, 2018.  Def.'s Br. at 15.  In calculating the submission deadline, the Government used August 14, 2017 as the initiation date of the EAPA investigation. Id.; cf. Notice of Investigation and Interim Measures at 1, 2 (Customs sent a letter to Aspects dated August 14, 2017, which advised that the investigation was

commenced on May 9, 2017).  Assuming that Defendant's August 14, 2017 date

for the initiation of the investigation is correct, the deadline for voluntary

submission was December 7, 2018.  Aspects submitted the two affidavits in

dispute on June 20, 2020, which the Government notes "was more than 18 months

too late."  Def.'s Resp. at 15.  Aspects has not alleged that new factual information

was placed on the record triggering an additional opportunity to submit rebuttal

information under 19 C.F.R. § 165.23(c)(2).

Aspects does not dispute that its affidavits were filed late.  Aspects argues

that even if the submissions were untimely, Customs had an obligation to consider

the affidavits if doing so was not unduly burdensome.  Pl.'s Br. at 14.  In support

of its argument, Aspects cites Grobest & I-Mei Industrial (Vietnam) Co. v. United

States, 36 CIT 98, 815 F. Supp. 2d 1342 (2012), and NTN Bearing Corp. v. United

States, 74 F.3d 1204 (Fed. Cir. 1995), without additional analysis.  Pl.'s Br. at 14.

Administrative agencies have discretion in establishing and enforcing

deadlines, but such discretion is not absolute.  Grobest & I-Mei Indus. (Vietnam)

Co., 36 CIT at 122–23, 815 F. Supp. 2d at 1365–67.  When considering whether

Customs abused its discretion in rejecting an untimely filing, the Court considers

the goal of the relevant statute, weighs the burden placed on the agency by

accepting the late submission, and weighs the finality at the final results stage.  Id.

In considering the goals of the EAPA statute, the Court notes that the statute permits Customs only 60 days to complete its review of a determination.  19 U.S.C. § 1517(f)(2).  The statute also imposes deadlines for Customs to initiate an investigation, issue its determination, and enact interim measures, while limiting the extension of the deadline for issuing a determination to 60 days under specific circumstances.  Id. §§ 1517(b)(1), (c), (e).  These deadlines suggest a Congressional intent that EAPA investigations should proceed in a timely manner.

Furthermore, the Court notes that the affidavits do not challenge the allegations of document destruction in a dispositive way.  The first affidavit was prepared by an Aspects employee who was asked to provide documents during the verification visit.  Pl.'s Request Admin Rev. at Ex. 1.  The affidavit does not deny the allegations that files were deleted or destroyed, but the affidavit alleges that the Customs official observing the Aspects employee was "not satisfied" with the employee's "operation and speed of printing" and "said a few words of complaint." Id.  The second affidavit was also prepared by an Aspects employee present during the verification visit.  Id. at Ex. 2.  The second affidavit does not expressly deny the allegation of document destruction, but poses the rhetorical question "[w]ould anyone be so stupid to delete any data under the eyes of an investigator?"  Id.  The affidavit also opines that the Customs investigators concluded that documents were destroyed "based on their own assumption" and that the Aspects employees "don't

know where this '[d]eleting documents' is coming from." Id.  Based on the

content alleged in the affidavits, the Court notes that the facts in the affidavits do

not appear to be the type of information that, if considered, likely would have

resulted in the agency reaching a different conclusion.  Grobest, 36 CIT at 122–23,

815 F. Supp. 2d at 1365–67.

The Court observes that Aspects has not disputed the Government's

contention that the affidavits were filed more than 18 months late.  Because

Customs followed the relevant EAPA time limits and Aspects does not present

compelling reasons to justify deviation from the statutory and regulatory deadlines,

other than vague assertions that it would not have been burdensome for Customs to

consider the information or that the information would have completed the record

before Customs, the Court concludes that Customs did not abuse its discretion in

rejecting the untimely affidavits filed more than 18 months late.  The Court

sustains Customs' rejection of the two affidavits from the record.

### III.  Customs' Evasion Determination

Under the EAPA statute, Customs must support its determination of evasion

with substantial evidence.  19 U.S.C. § 1517(c)(1)(A).  For an affirmative evasion

determination, three elements are required: (1) that the subject entries were

covered merchandise at the time they entered the customs territory of the United

States; (2) that the subject entries were made by a materially false statement or act

or material omission; and (3) that the false statement or omission resulted in a

reduction or avoidance of applicable cash deposits or other security.  Id.

§ 1517(a)(5)(A); Diamond Tools Tech. LLC v. United States ("Diamond Tools"),

45 CIT __, __, 545 F. Supp. 3d 1324, 1347 (2021).  Aspects does not contest the

second factor that its entries were made by materially false statements or acts or

material omissions.  Aspects challenges only the first and third elements, arguing

that Customs failed to establish with substantial evidence that the entries were

covered merchandise and that any reporting misrepresentations or omissions

resulted in an avoidance of applicable duties.

### A.     Party Positions Regarding Covered Merchandise

Aspects argues that Customs failed to establish with substantial evidence

which of Aspects' entries were covered merchandise at the time of entry.  Pl.'s Br.

at 14–18.  Specifically, Aspects alleges that Customs disregarded Commerce's

scope ruling that certain merchandise was not covered by the Order and that

Customs included the uncovered merchandise improperly in Customs' Final

Administrative Determination.  Id. at 16–17.  Aspects also argues that the scope

determination should not have been applied retroactively and that those entries

determined to be covered merchandise were not covered prior to the review being

initiated.  Id. at 17–18.

Defendant counters that Aspects waived its ability to challenge the inclusion

of non-covered merchandise and covered merchandise that entered prior to the

scope review by failing to raise the arguments in Aspects' Request for

Administrative Review. Def.'s Resp. at 16–17. Defendant contends that if the

arguments were not waived, because Aspects' entry documents were "replete" with

misstatements about the nature of merchandise and a thorough cargo examination

is no longer possible, Customs is not capable of determining whether each

individual entry contained covered merchandise. Id. at 16–17. Defendant also

argues that Aspects' entries of covered merchandise made prior to the scope

referral were considered properly by Customs. Id. at 18–19.

## B.    Waiver of Aspects' Argument

Defendant contends that Aspects waived its ability to challenge in court

Customs' failure to distinguish between covered and non-covered merchandise and

consideration of covered merchandise that entered prior to Commerce's scope

referral by not expressly raising the arguments in Aspects' Request for

Administrative Review. Def.'s Resp. at 16–17. Aspects asserts that it raised these

issues in its Written Arguments to Customs, in which it argued that entries of

imported merchandise determined by Customs to not be covered by the Order—

item G-200 (desk/console table with drawers), items G-208L and G-208R (TV

cabinet with a minibar), item G-207 (trunk storage unit), and item GF-200 (bed

bench base)—could not be considered for purposes of the EAPA investigation.
Pl.'s Written Arguments at 25–26.  Aspects identified seven entries that it attested
did not contain covered merchandise and should have been disregarded by
Customs in making the evasion determination.  Id. at 26.  Aspects also argued that
entries of covered merchandise made prior to Commerce's scope referral should
have been excluded because the Scope Ruling could only apply prospectively.  Id.
Aspects identified seven entries that should have been disregarded on this ground.
Id. at 27.

          In its Request for Administrative Review, Aspects attempted to incorporate
by reference the arguments raised in its prior written submissions, stating:
"because this Administrative Appeal must be reviewed by [Customs] de novo, and
due to space limitations applicable to it, we refer to and incorporate by reference,
as if fully stated herein, Aspects' Written Argument and Response submissions."
Pl.'s Request Admin. Rev. at 8.  Aspects now argues that this effort was sufficient
to preserve the argument before the Court.  Pl.'s Reply at 8–9.

          Parties are procedurally required to raise arguments before the
administrative agency at the time the agency is considering the issue.  Dorbest Ltd.
v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (quoting Mittal Steel Point
Lisas Ltd. v. United States, 548 F.3d 1375, 1383 (Fed. Cir. 2008)).  When filing its
Request for Administrative Review, Aspects was required to include a statement of

"[t]he argument expressing clearly and accurately the points of fact and of law presented and citing the authorities and statutes relied on."  19 C.F.R. § 165.41(f)(5).

In its Written Arguments to Customs, Aspects articulated its factual and legal arguments regarding consideration of the merchandise included in the scope review.  Pl.'s Written Arguments at 25–28.  Aspects incorporated these previous written arguments into its subsequent Request for Administrative Review, although only satisfying the requirement minimally, by identifying the prior Written Arguments to Customs and incorporating the submission by reference "as if fully stated."  Pl.'s Request Admin. Rev. at 8.  Aspects' incorporation by reference was clear enough for Customs to note in the Final Administrative Determination that "Aspects incorporated those arguments made in its Written Argument submitted during the course of the EAPA investigation, which both expound upon arguments made in the Request for Administrative Review and include different arguments regarding the lawfulness of AFMC's allegation."  Final Admin. Determination at 6 n.19.  Despite this acknowledgement, Customs did not address Aspects' arguments regarding the inclusion of merchandise determined to be not covered by the Order or of merchandise determined to be covered by Commerce but entered prior to the scope referral.  Rather, Customs stated incorrectly that, "[i]ndeed, Aspects has not disputed that the importations consist of covered merchandise."  Id. at 8.  Because

Aspects sufficiently fulfilled the requirement under 19 C.F.R. § 165.41(f)(5) to

include a statement of the argument expressing clearly and accurately the points of

fact and of law presented and citing the authorities and statutes relied on when

Aspects incorporated by reference its Written Arguments in its Request for

Administrative Review, the Court concludes that Aspects did not waive its right to

raise those arguments before this Court.[4]

## C.     Commerce's Scope Ruling

Plaintiff argues that Customs erred by considering merchandise in the EAPA

investigation that had been determined by Commerce in a referral scope ruling to

not be covered by the Order.  Pl.'s Br. at 16–17.  Defendant contends that Customs

was justified in considering entries of merchandise determined to not be covered

by the Order because Customs determined that evidence demonstrated Aspects'

misrepresentations and Customs was unable to perform a thorough examination of

each entry.  Def.'s Resp. at 17–18.  In essence, Defendant argues that Customs

should be permitted to disregard Commerce's scope referral determination because

---

[4]  Aspects explained that page limitations prompted its strategy of incorporating prior arguments by reference.  Pl.'s Request Admin. Rev. at 8.  A request for administrative review may not exceed 30 pages.  19 C.F.R. § 165.41(f).  Aspects' request was only 21 pages excluding exhibits and 38 pages including exhibits.  See Pl.'s Request Admin. Rev.  Even though the Court concludes that Aspects sufficiently incorporated its prior arguments by reference, the Court cautions the Parties to articulate their administrative arguments clearly in order to avoid similar disputes of waiver in the future.

Aspects' entry documents were "replete" with misstatements about the nature of

merchandise, a thorough cargo examination is no longer possible, Customs is not

capable of determining whether each individual entry contained covered

merchandise, and therefore Customs should be permitted to consider most of

Aspects' entries as covered merchandise, notwithstanding Commerce's referral

determination that certain product categories were outside the scope of the Order.

Id. at 16–17.

The products covered by the relevant Order are wooden bedroom furniture.

Final Scope Ruling at 2.  Wooden bedroom furniture is generally, but not

exclusively, designed, manufactured, and offered for sale in coordinated groups, or

bedrooms, in which all of the individual pieces are of approximately the same style

and same material and/or finish.  Id.  During the EAPA investigation, pursuant to

19 U.S.C. § 1517(b)(4), Customs referred to Commerce the question of whether

certain of Aspects' merchandise was covered by the Order.  See Customs' Scope

Referral Request Mem. (seeking a covered merchandise referral because Customs

was unable to determine from the scope language whether the following pieces of

furniture are 'incorporated in' or 'attached to' subject merchandise, or are

otherwise subject to the Order: (1) a desk/console table with drawers (G-200);

(2) TV credenzas/dressers (G-206(1) and G-206(2)); (3) a TV cabinet with minibar

(G-208L and G-208R); (4) trunk storage (G-207); (5) a console/custom dresser

(GF-103L and GF-103R); and (6) a bed bench base (GF-200)).  Customs' Scope
Referral Request included a general description of the investigation and requested
a determination as to whether the identified items "are 'incorporated in' or
'attached to' subject merchandise, or are otherwise subject to the order."  Id. at 1–
2.  The Scope Referral Request was accompanied by sample entry documents,
photos, and diagrams.  See Customs' Scope Referral Attachments A–F, PR 285–
93, CR 226–34; Customs' Supp. Scope Referral Attachments, PR 374–79, CR
296–301.  Customs also provided explanations for why it was unable to determine
whether the items were within the scope of the Order.  Customs' Scope Referral
Request Mem. at 2–3.  For some items, Customs acknowledged inconsistencies in
Aspects' descriptions of the items in entry documents.  For example, in describing
one item, Customs noted:

> Although referred to as a desk on the entry documentation, [the item]
> is referred to as a console table with operable and decorative drawers
> on the invoices to [Aspects'] customer.  According to [Aspects], it
> imports desks from China to be placed in a hospitality room/hotel room
> along with matching wooden bedroom furniture such as dressers,
> headboards and night stands.  The desks are not always imported on the
> same entry with the wooden bedroom furniture.  However, we note that
> the desks are the same material and finish as the bedroom furniture and
> are being sold to the same U.S. customer.

Id.; see also Customs' Supp. Scope Referral Request for certain wooden bedroom
furniture under EAPA Investigation 7189, imported by Aspects (July 24, 2019)
("Customs' Supp. Scope Referral") at 1–2, PR 380, CR 302.

Commerce issued its Final Scope Ruling on December 31, 2019, which included analyses of each of the six categories of furniture in the context of the relevant scope language, photos of the subject merchandise that were provided in Customs' covered merchandise referral, summaries of comments from interested parties (including Aspects), and multiple attachments totaling over 600 pages.  See Final Scope Ruling.  In considering the intended purpose of the items under review, Commerce noted the inconsistent descriptions listed on entry documents, including purchase orders and invoices.  See id. at 16, 18–19, 31–32.  Commerce concluded that four of the products reviewed—G-200 (desk/console table with drawers), G-208L and G-208R (TV cabinet with a minibar), G-207 (trunk storage unit), and GF-200 (bed bench base)—were not within the scope of the Order.  See id. at 1, 9, 24, 27, 33–34.  Commerce concluded that two of the products reviewed—G-206(1) and G-206(2) (TV credenzas/dressers) and GF-103L and GF-103R (console/custom dresser)—were within the scope of the Order.  Id. at 1, 16–17, 19, 32, 34.  In reaching its determination, Commerce found "an analysis of the scope language and information from the Petition, the [] investigation, and prior scope rulings, which are the types of information examined pursuant to 19 C.F.R. § 351.225(k)(1), [to be] dispositive with respect to the items covered in [Customs'] covered merchandise referral."  Id. at 7.  Commerce also noted that its

determination relied on its "written description of the scope" and not HTSUS

subheadings.  Id. at 5.

In the May 18 Determination, Customs stated:

[w]ith regard to products Commerce found outside of the scope based
on product descriptions, in various instances during verification
[Customs] found discrepancies in the identification of merchandise
associated with actual entries, such "that the descriptions of
merchandise on documentation submitted by Aspects often differed
from those documents submitted by the manufacturers," as described
above.   Although Aspects may have correctly classified certain
imported products as type 03, [Customs] found discrepancies, such as
those relating to the identification of the producers of specific
merchandise, supporting a conclusion that applicable antidumping
duties were underpaid.

May 18 Determination at 8.  The Final Administrative Determination did not

directly address this point, stating only:

A review of the administrative record shows that, to the extent they are
not excluded pursuant to Commerce's Scope Ruling, the furniture items
involved in these importations are covered merchandise, as they are
pieces of [wooden bedroom furniture] from China, including, but not
limited to, nightstands, dressers, armoires, and headboards.  Indeed,
Aspects has not disputed that the importations consist of covered
merchandise.

Final Admin. Determination at 8.  The Final Administrative Determination

affirmed the May 18 Determination of evasion that applied to all merchandise

entered by Aspects on or after May 9, 2017 (covering merchandise both within and

outside the scope of the Order).  Id. at 11.

An element of evasion is that merchandise entering the United States be

covered by an antidumping or countervailing duty order.  19 U.S.C. §§ 1517(a)(3),

(a)(5)(A).  The EAPA statute in 19 U.S.C. § 1517(b)(4)(A) sets forth a process by

which Customs shall make a referral to Commerce if Customs cannot determine

whether the subject merchandise is covered by an antidumping order:

> If [Customs] receives an allegation under paragraph (2) and is unable
> to determine whether the merchandise at issue is covered merchandise,
> [Customs] shall –
> (i) refer the matter to the administering authority [Commerce] to
> determine whether the merchandise is covered merchandise pursuant to
> the authority of the administering authority [Commerce]. . . .

Id. § 1517(b)(4)(A)(i).

The EAPA statute in 19 U.S.C. § 1517(b)(4)(B) states that Commerce shall

be the appropriate agency to make a covered merchandise determination, which is

transmitted to Customs: "[a]fter receiving a referral under subparagraph (A)(i) with

respect to merchandise, the administering authority [Commerce] shall determine

whether the merchandise is covered merchandise and promptly transmit that

determination to [Customs]."  19 U.S.C. § 1517(b)(4)(B).

19 U.S.C. § 1517(b)(4)(D) also states that parties may file a complaint in the

U.S. Court of International Trade to contest a referral determination by Commerce:

"[n]othing in this paragraph shall be construed to affect the authority of an

interested party to commence an action in the United States Court of International

Trade under section 1516a(a)(2) of this title with respect to a determination of the

administering authority [Commerce] under this paragraph."  Id. § 1517(b)(4)(D).

   In this case, "[Customs] determined it was unable to determine whether

several of the many products at issue are covered merchandise, and pursuant to 19

U.S.C. § 1517(b)(4) and 19 C.F.R. § 165.16, [Customs] referred this matter to the

Commerce Department for a scope determination."  May 18 Determination at 3.

After receiving the referral request from Customs pursuant to 19 U.S.C.

§ 1517(b)(4)(A)(i), Commerce determined that four product categories imported

by Aspects were not covered by the Order and two product categories were

covered by the Order.  Final Scope Ruling at 1, 34.  Despite Commerce's Final

Scope Ruling to the contrary, Customs decided to include the non-covered

merchandise in its EAPA review because Customs concluded on its own that

Aspects had provided unreliable product descriptions and had underpaid applicable

antidumping duties.  May 18 Determination at 8–9.  Customs explained:

> With regard to products Commerce found outside of the scope based
> on product descriptions, in various instances during verification
> [Customs] found discrepancies in the identification of merchandise
> associated with actual entries, such "that the descriptions of
> merchandise on documentation submitted by Aspects often differed
> from those documents submitted by the manufacturers," . . . . Overall,
> the nature of the problems with the record responses in this
> investigation are broad enough to undermine the reliability of Aspects'
> reported entry information.

Id. at 8–10.  In the Final Administrative Determination, Customs apparently

continued to include merchandise in the EAPA investigation that Commerce had
deemed to be outside the scope of the Order, when Customs affirmed the May 18
Determination and applied the EAPA evasion determination to all of Aspects'
entries.  Final Admin. Determination at 11–12 (notwithstanding contrary language
in the Final Administrative Determination stating: "A review of the administrative
record shows that, to the extent they are not excluded pursuant to Commerce's
Scope Ruling, the furniture in these importations are covered merchandise"); id. at
8.

    The Court concludes that Customs' inclusion of merchandise in the EAPA
investigation that had been determined by Commerce to be outside the scope of the
Order is contrary to law because the EAPA statute does not permit Customs to
include merchandise that is not covered by the scope of the Order.  19 U.S.C.
§ 1517(c)(1)(A).  The Court notes that the EAPA statute states clearly that
Commerce, not Customs, is the appropriate administering authority to issue a
referral determination of whether merchandise is covered or not.  Id.
§ 1517(b)(4)(A)(i), (B).  Allowing Customs to override and disregard a statutorily
authorized Final Scope Ruling by the administering authority would be contrary to
law because this would effectively substitute Customs as the administering
authority rather than Commerce.  Id. § 1517(b)(4)(A)(i).

In attempting to defend Customs' rejection of Commerce's Final Scope

Ruling, Defendant cites to 19 U.S.C. § 1517(c)(3), which permits Customs to use

adverse inferences when a party or person is determined to have "failed to

cooperate by not acting to the best of the party or person's ability to comply with a

request for information." Def.'s Resp. at 18; 19 U.S.C. § 1517(c)(3). Customs did

not indicate, however, that it was drawing an adverse inference pursuant to 19

U.S.C. § 1517(c)(3) based on Aspects' failure to cooperate with the EAPA

investigation, so this argument is inapposite. Rather, Customs stated in the May 18

Determination that Customs included merchandise in the EAPA investigation that

had been deemed to be outside the scope of the Order by Commerce because

Customs found discrepancies in the documentation provided by Aspects.

For referrals to Commerce, 19 C.F.R. § 165.16 states that, "[t]he referral

may contain any necessary information available to [Customs] regarding whether

the merchandise described in an allegation is subject to the relevant

[antidumping/countervailing duty] orders." 19 C.F.R. § 165.16(b). In this case,

Customs defined the parameters of the scope referral to Commerce. See Customs'

Supp. Scope Referral at 1–3 (referring to attached product descriptions, sample

invoices, purchase orders, photographs, specification descriptions, sample sales,

and entry documentation, among other information referenced in Customs' scope

referral request to Commerce).  According to Customs, information on the record

included:

> copies of entry packages related to 2016 [and 2017] entries, to include
> the entry summary, commercial invoice, purchase order, proof of
> payment to the supplier, accounting records, broker bill, bill of lading,
> packing list, specification sheets, photos of the merchandise, and
> manufacturer name and address, as well as any evidence establishing
> that the identified manufacturer produced the goods (production
> records, purchase invoices, *etc*.).  .  .  .  Further, [Customs] conducted a
> site visit to Aspects' facility and met with company representatives. . . .

May 18 Determination at 2.

Customs determined that the information provided by Aspects was allegedly

inaccurate and that entries with documentation marked as merchandise outside the

scope of the Order may have actually contained covered merchandise.  See, e.g.,

Final Admin. Determination at 7–10 ("The administrative record in this case is

replete with examples of the different ways in which Aspects manipulated

shipments of covered merchandise in ways that would affect the [antidumping]

duties applied to each entry and would therefore indicate evasion.").  Customs

identified numerous examples of discrepancies in documentation and drew the

general conclusion that, "[o]verall, the nature of the problems with the record

responses in this investigation are broad enough to undermine the reliability of

Aspects' reported entry information."  May 18 Determination at 4–10.  Based on

its own observations, Customs decided to ignore Commerce's Final Scope Ruling

and instead determined that Customs "will continue to suspend the liquidation for
any entry imported by Aspects that has entered on or after May 9, 2017, the date of
initiation." Id. at 10.  Presumably any information regarding discrepancies in entry
paperwork and actual entry merchandise were submitted to Commerce during the
scope referral, however, so that Commerce could consider all relevant information
about Aspects' entries in its scope ruling.

 Despite the fact that Customs itself provided the information to Commerce
in the scope referral request, Customs disregarded Commerce's Final Scope Ruling
and included merchandise in the EAPA investigation that Commerce had
determined to be outside the scope of the Order.  The Court concludes that
Customs cannot disregard Commerce's Final Scope Ruling that Customs requested
pursuant to the EAPA statute, nor can Customs substitute itself as the
administering authority contrary to statute, simply because Customs disagrees with
Commerce's Final Scope Ruling.  The EAPA statute is clear that Commerce is the
administering authority to determine whether the subject merchandise is outside
the scope of the antidumping order, and that disputes contesting the results of the
Final Scope Ruling are within the jurisdiction of this Court.  19 U.S.C.
§§ 1517(b)(4)(A)(i), (b)(4)(D).

 The Court concludes that Customs' decisions in the May 18 Determination
and the Final Administrative Determination to disregard Commerce's Final Scope

Ruling and instead to include non-covered merchandise in the EAPA investigation

are not in accordance with law.  The EAPA statute is clear that only merchandise

covered by an antidumping order may be included in an EAPA investigation.  19

U.S.C. §§ 1517(a)(3), (a)(5)(A).

Because Customs included both covered and non-covered merchandise in its

EAPA investigation, the Court remands this matter for further consideration by

Customs with instructions to only include merchandise within the scope of the

Order in the EAPA investigation.  The Court suggests that on remand Customs

may choose to revisit the scope determination and consider whether to make a new

scope referral to Commerce, or reconsider Customs' adverse inference

determination; regardless which path Customs chooses on remand, it is clear to the

Court that only merchandise within the scope of the Order may be included in the

EAPA investigation.  The Court defers its substantive analysis of Customs'

evasion determination until after the Government provides its remand results, when

there will presumably be more clarity as to what merchandise is properly included

in the EAPA investigation according to the statutory requirements and in

conformity with this opinion.  The Court expects that the remand results will

address the evasion analysis only for merchandise that is within the scope of the

relevant antidumping duty order.

## IV.    Deprivations of Due Process

Aspects argues that Customs' administration of the EAPA investigation and the EAPA implementing regulations deprived Aspects of its due process rights to present a defense and be heard.  Aspects asserts that it was deprived of protected interests by: (1) the lack of a mechanism for sharing business confidential information; (2) the lack of access to the complete administrative record; and (3) the lack of a meaningful opportunity to be heard before interim measures were imposed.  Pl.'s Br. at 25–28; Pl.'s Reply at 16–18.

Defendant argues that Aspects' constitutional arguments fail because Aspects was not deprived of a protected interest.  Def.'s Resp. at 22–23.  Aspects claims that it was deprived of a liberty interest in its professional reputation and a property interest in the duties that would be owed upon an affirmative finding of evasion.  Pl.'s Br. at 25; Pl.'s Reply at 16–17.  Defendant contends that neither of the asserted interests are protected interests.  Def.'s Resp. at 22–23.

With regard to access to information, Aspects asserts that due process requires the sharing of unredacted business confidential information, at least through counsel.  Pl.'s Br. at 25–26.  Aspects contends that the sharing of business confidential information is common practice in antidumping and countervailing duty investigations and administrative reviews conducted by Commerce, but no mechanism exists for such sharing in EAPA investigations.  Id.  Aspects argues

that permitting parties to view public redacted versions of confidential documents is not sufficient to allow a party to mount a defense.  Id. at 26–27.  Aspects cites an example of the Verification Report, which Aspects contends "contains entire sentences of redacted information, making it impossible for Aspects to fully understand the 'findings' that were being made against it and to meaningfully defend itself against such 'findings.'"  Pl.'s Br. at 27.  Aspects contends that the public documents that were provided during the investigation were overly redacted in excess of what is permitted under 19 C.F.R. § 165.4.  Id.

Defendant argues that Aspects has failed to demonstrate how the procedures afforded by the EAPA statute and its regulations violated Aspects' due process rights.  Def.'s Resp. at 24.  Defendant notes specifically that despite now having access to confidential information under a protective order, Aspects has not identified any protected information that would have changed Aspects' arguments before Customs.  Id.

With regard to the imposition of interim measures, Aspects argues that it was entitled to a meaningful opportunity to be heard when participating in a proceeding before Customs.  Pl.'s Br. at 28 (citing PSC VSMPO-Avisma Corp. v. United States, 688 F.3d 751, 761–62 (Fed. Cir. 2012)).  Aspects contends that it was not afforded an opportunity to be heard before the imposition of interim measures because the EAPA regulations require Customs to give notice of interim

measures only after the interim measures are imposed.  Id.; see also 19 C.F.R.
§ 165.24(c).

Defendant contends that if Aspects has a protected interest, it was provided
with adequate opportunity to present its case before the administrative agency.
Def.'s Resp. at 23–24.  Defendant notes that the EAPA regulations allow for
voluntary submissions of information, submissions of written arguments, and
administrative review, and that Aspects took advantage of these procedures.  Id.
(citing 19 C.F.R. §§ 165.23, 165.26, 165.41, 165,42; 19 U.S.C. § 1517(f)).

## A.    Legal Framework

The Fifth Amendment prohibits deprivation of life, liberty, or property
without due process of law.  U.S. Const. amend V.  The Court's analysis of due
process claims begins by determining whether Plaintiff has a protected interest that
has been deprived through an action of the Government.  Int'l Custom Prods., Inc.
v. United States, 791 F.3d 1329, 1337 (Fed. Cir. 2015).  If Plaintiff has a protected
interest, the Court determines what process is due.  Nereida Trading Co. v. United
States, 34 CIT 241, 248, 683 F. Supp. 2d 1348, 1354 (2010).

## B.    Protected Interest

Aspects has alleged that both a liberty and property interest were denied
during the EAPA investigation.  Pl.'s Br. at 25.  Aspects claims a liberty interest in
its professional reputation, goodwill, and freedom to take advantage of business

opportunities that might suffer harm through the stigmatization caused by

publication of the Notice of Investigation and Interim Measures and May 18

Determination.  Id.; Pl.'s Reply at 16–17.  Aspects' assertion is incorrect.  It is

well-established that an importer's ability to "engag[e] in foreign commerce is not

a fundamental right protected by notions of substantive due process."  NEC Corp.

v. United States, 151 F.3d 1361, 1369 (Fed. Cir. 1998) (citations omitted).  The

Court concludes that Aspects cannot claim a liberty interest to engage in foreign

commerce based on speculative harm to future business opportunities.

Aspects claims a property interest in the duties owed upon an affirmative

finding of evasion.  Pl.'s Br. at 25.  While importers do not have a protected

interest in the future importation of goods at a particular rate, see Nereida Trading

Co., 34 CIT at 248, 683 F. Supp. 2d at 1355, importers may have a protected

interest in the proper assessment of duties on goods already imported.  Diamond

Tools, 45 CIT at __, 545 F. Supp. 3d at 1341; Royal Brush Mfg. v. United States

("Royal Brush I"), 44 CIT __, __, 483 F. Supp. 3d 1294, 1305 (2020); Nereida

Trading Co., 34 CIT at 248, 683 F. Supp. 2d at 1355.  The Court concludes that

Aspects has statutory and regulatory rights to appropriate process under the EAPA

statute and its regulations.

### C.    Access to Information Claims

Aspects argues that it was denied access to "essential evidence" considered by Customs during the EAPA investigation.  Pl's Br. at 25–27.  Aspects contends that the EAPA regulations, unlike the regulations relating to antidumping and countervailing duty investigations and reviews, do not provide a mechanism for the sharing of unredacted business confidential information, at least through counsel.  Id. at 25–26.  Aspects further contends that the regulations that allow for the sharing of redacted public versions of confidential documents are insufficient to allow a party to an EAPA investigation to present a robust defense.  Id. at 25–27.

The Court has recognized recently that in an EAPA investigation, due process forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation.  Royal Brush I, 44 CIT at __, 483 F. Supp. 3d at 1306 (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 289 n.4 (1974)).  A party participating in an administrative proceeding has a procedural right to an opportunity to be heard.  PSC VSMPO-Avisma Corp., 688 F.3d at 761–62.  In order to provide adequate due process, Customs' procedures must afford an opportunity for parties subject to an EAPA investigation to respond to opposing evidence.  Royal Brush I, 44 CIT at __, 483 F. Supp. 3d at 1306.

Customs' regulations permit interested parties to an EAPA investigation to request confidential treatment for information that "consists of trade secrets and

commercial or financial information obtained from any person, which is privileged

or confidential in accordance with 5 U.S.C. § 552(b)(4)."  19 C.F.R. § 165.4(a).

Confidential information placed on the administrative record by an interested party

or Customs must be accompanied by a public summary that allows for a reasonable

understanding of the redacted information.  Id. §§ 165.4(a)(2), (e).  Unlike

antidumping and countervailing duty investigations and reviews conducted by

Commerce, the EAPA statute does not include a mechanism for limited disclosure

of confidential information through a protective order.  Compare 19 U.S.C. § 1517

with id. § 1677f(c)(1)(A).

Requiring "a summary of the bracketed information in sufficient detail to

permit a reasonable understanding of the substance of the information" balances

the competing needs of protecting certain sensitive information from public

disclosure and providing parties subject to an EAPA investigation with a

meaningful opportunity to defend against allegations of evasion.  See 19 C.F.R.

§ 165.4(a)(2); see also Royal Brush Mfg. v. United States ("Royal Brush II"), 45

CIT __, __, 545 F. Supp. 3d. 1357, 1367 (2021).  When provided with a summary

of sufficient detail, parties have an adequate opportunity to respond to adverse

evidence.  See Royal Brush II, 45 CIT at __, 545 F. Supp. 3d at 1367 (citing Royal

Brush I, 44 CIT at __, 483 F. Supp. 3d at 1306); see also Diamond Tools, 45 CIT

at __, 545 F. Supp. 3d at 1343.

Aspects argues that Customs failed to comply with its regulation to provide

a sufficient public summary of business confidential information and that due

process requires more than what was afforded under the applicable regulations.

Pl.'s Br. at 25–27.  Aspects argues that Customs' application of 19 C.F.R.

§ 165.4(a) deprived Aspects of due process because public versions of documents

provided in the investigation were overly redacted and did not allow for an

understanding of relevant facts.  Id. at 27.  19 C.F.R. § 165.4(a) provides that

information will be treated as business confidential if it contains "trade secrets and

commercial or financial information obtained from any person, which is privileged

or confidential in accordance with 5 U.S.C. § 552(b)(4)."  19 C.F.R. § 165.4(a).

Aspects provided an example of the alleged excessive redactions with a citation to

pages 15 through 17 of the Verification Report, corresponding to the section

captioned "Exporter's Role."  Pl.'s Br. at 27; Pl.'s Reply at 17–18.  The redactions

in the identified section consist of the names of individuals, the general status and

compensation details for employees, shipping details, and details of how

information used in container loading plans was provided to Aspects.  See

Verification Report at 15–18.

19 C.F.R. § 165.4 requires that confidential information placed on the

administrative record be accompanied by a public summary of the redacted

information or an explanation of why a summary is not possible.  19 C.F.R.

§ 165.4. The administrative record in this case does not include a public summary of redacted information for the Verification Report, which is problematic because both the May 18 Determination and Final Administrative Determination rely heavily on the Verification Report and cite to the specific section of the Verification Report referenced by Aspects. See May 18 Determination at 4, 7; Final Admin. Determination at 10. Among the redactions on the pages identified by Aspects are references to sales terms that Aspects alleges are inaccurate. See Pl.'s Br. at 23; Verification Report at 16–18. The Court concludes that Customs' failure to comply with its regulations deprived Aspects of an opportunity to respond. See Royal Brush I, 44 CIT at __, 483 F. Supp. 3d at 1306–08; Ad Hoc Shrimp Trade Enf't Comm. v. United States, 46 CIT __, __, 578 F. Supp. 3d 1310, 1320–21 (2022); see also Kemira Fibres Oy v. United States, 18 CIT 687, 695, 858 F. Supp. 229, 235–36 (1994). The Court remands the matter to Customs to address and remedy the lack of public summaries of redacted information and to provide Aspects with an opportunity to respond to the information that should have been made available during the administrative proceeding.

### D.    Interim Measures

Aspects argues that Customs' imposition of interim measures without first allowing Aspects an opportunity to be heard deprived Aspects of due process. Pl.'s Br. at 28. Under the EAPA statute, Customs is empowered to impose interim

measures during the first 90 days of an investigation if there is a "reasonable

suspicion" that evasion occurred.  19 U.S.C. § 1517(e).  Customs must issue

notification of its decision to the parties to the EAPA investigation within five days

of interim measures taking effect.  19 C.F.R. § 165.24(c).  If the EAPA

investigation results in a final determination that evasion occurred, Customs may

adopt the interim measures in the final determination.  19 U.S.C. § 1517(d).  If the

EAPA investigation results in a final determination that no evasion occurred, any

imposed interim measures will be lifted and any additional duties or cash deposits

collected will be returned with interest.  19 C.F.R. § 165.27(c) (providing for

liquidation upon a determination that covered merchandise did not enter the

customs territory of the United States through evasion); id. § 24.36.  An importer

subject to an EAPA investigation is able to offer voluntary submissions of

information, id. § 165.23, and written arguments, id. § 165.26.  An importer may

also seek *de novo* review of Customs' determination of evasion.  19 U.S.C.

§ 1517(f).

     Interim measures under the EAPA statute are temporary and extend only

until the investigation results in a determination that evasion occurred or did not

occur.  See id. § 1517(d); 19 C.F.R. § 165.27(c).  During the pendency of an EAPA

investigation, parties under investigation have mechanisms through which to

respond to the allegations of evasion.  19 C.F.R. §§ 165.23, 165.26.

Aspects has not alleged that Customs deviated from these procedures and the

record includes examples of Aspects submitting written arguments during the

administrative proceeding.  See Pl.'s Written Argument; Pl.'s Resubmission

Written Arguments (Mar. 10, 2020), PR 415, CR 308; Pl.'s Request Admin. Rev.

Because Customs' regulations provided Aspects with an opportunity to contest the

allegation of evasion and the imposition of interim measures, and Aspects was able

to take advantage of the opportunity to provide several written submissions, the

Court concludes that Aspects has not demonstrated that it was deprived of due

process by the imposition of interim measures.

### V.    EAPA Investigation and Regulatory Audit

The EAPA statute allows Customs when making a determination of evasion

to "collect such additional information as is necessary to make the determination

through such methods as [Customs] considers appropriate."  19 U.S.C.

§ 1517(c)(2).  This broad statutory authority is clarified by regulation to include

"obtain[ing] information from [Customs'] files, from other agencies of the United

States Government, through questionnaires and correspondence, and through field

work by its officials."  19 C.F.R. § 165.5.

Aspects argues that Customs unlawfully combined the EAPA investigation

with a regulatory audit.  Pl.'s Br. at 29.  19 C.F.R. § 165.47 authorizes Customs to

"undertake additional investigations or enforcement actions" in EAPA cases.  19

C.F.R. § 165.47.  Aspects contends that this authorization does not permit Customs to combine distinct types of investigations and that in combining an EAPA investigation with a regulatory audit, Customs deprived Aspects of certain protections and applied to the regulatory audit the increased discretionary powers provided under the EAPA statute.  Pl.'s Br. at 29.

When the EAPA investigation was initiated, Customs was already conducting a review of Aspects' entries for calendar year 2016 for potential evasion of antidumping duties.  Notice of Investigation and Interim Measures at 2. In its Reply, Aspects states that the on-site visit to China was conducted by an audit team and that "the Verification Report was issued by an audit team, following audit procedures, and making findings with an eye toward audit."  Pl.'s Reply at 4.  This characterization is not supported by the language of the Verification Report, which identifies the investigators as an "EAPA team" and states:

> The procedures that we performed to assist with the EAPA investigation do not constitute an audit performed in accordance with generally accepted government auditing standards.  The EAPA investigation has been conducted in accordance with Title 19 C.F.R. § 165.2, Title IV, Section 421 of the Trade Facilitation and Trade Enforcement Act of 2015, commonly referred to as EAPA.  The EAPA investigation has been overseen by [Customs' Trade Remedy & Law Enforcement Directorate], and conducted in conjunction with Consumer Products Mass Merchandising Center, National Threat Analysis Centers, and [Regulatory Audit and Agency Advisory Services].  This memorandum was prepared by [Regulatory Audit and

Agency Advisory Services] and includes the analysis of other [Customs] offices involved in the investigation.

Verification Report at 1, 2.

The EAPA statute grants to Customs broad discretion in how it can collect and verify information.  19 U.S.C. § 1517(c)(2).  This includes the use of on-site verifications.  Id. § 1517(c)(2)(B); 19 C.F.R. § 165.25.  This Court has been presented with no evidence that the verification was conducted in a manner inconsistent with an EAPA investigation.  Even if information was obtained through a separate audit or review, such information would be available to Customs in its evasion review.  19 U.S.C. § 1517(c)(2)(B); 19 C.F.R. § 165.5.  Because no evidence has been presented to establish that Customs acted outside its statutory and regulatory authority, the Court concludes that Customs' collection and verification of information about Aspects' entries was in accordance with the law.

## Conclusion

For the foregoing reasons, the Court concludes that:

(1)    Customs' retroactive inclusion in its evasion determination of Aspects' entries made before the EAPA statute came into force on August 22, 2016 was not in accordance with the law;

(2)    Customs did not abuse its discretion in disregarding Aspects'
       affidavits submitted with the June 30, 2020 Request for
       Administrative Review;

(3)    Aspects did not waive its ability to challenge Customs' consideration
       of non-covered merchandise;

(4)    Customs' inclusion in the EAPA investigation of merchandise
       determined by Commerce in the Final Scope Ruling to not be covered
       by the Order was not in accordance with the law;

(5)    Customs' evasion determination is remanded for further consideration
       to the extent that the evasion investigation included merchandise
       determined by Commerce in the Final Scope Ruling to be not covered
       by the Order;

(6)    Customs' failure to provide sufficient public summaries of
       confidential documents on the administrative record as required by 19
       C.F.R. § 165.4 was not in accordance with the law;

(7)    Customs did not deprive Aspects of due process protections by
       imposing interim measures before Aspects had an opportunity to
       respond to the allegations of evasion; and

(8)    Customs did not unlawfully combine the EAPA investigation with a
       regulatory audit.

Customs' determination of evasion is remanded.  Accordingly, it is hereby

ORDERED that Customs' evasion determination is remanded to Customs

for further proceedings consistent with this opinion; it is further

ORDERED that this case shall proceed according to the following schedule:

(1)     Customs shall file its remand redetermination on or before March 27,

2023;

(2)     Customs shall file the administrative record on or before March 27,

2023;

(3)     Comments in opposition to the remand determination shall be filed on

or before April 24, 2023;

(4)     Comments in support of the remand determination shall be filed on or

before May 22, 2023; and

(5)     The joint appendix shall be filed on or before May 22, 2023.


                                        /s/ Jennifer Choe-Groves
                                        Jennifer Choe-Groves, Judge


Dated:      November 28, 2022
                 New York, New York