**PUBLIC DOCUMENT**

**FINAL REMAND REDETERMINATION**
*Aspects Furniture International, Inc. v. United States*
**EAPA Investigation No. 7189**
**Court No. 20-003824 (Ct. Int'l Trade)**

March 27, 2023

## I.    SUMMARY

U.S. Customs and Border Protection (CBP) has prepared this remand redetermination pursuant to the opinion of U.S. Court of International Trade (the Court) issued on November 28, 2022 in *Aspects Furniture International, Inc. v. United States*, 607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) (hereinafter, Remand Order).  This remand concerns CBP's affirmative determination of evasion of the antidumping duty (AD) order on wooden bedroom furniture from People's Republic of China (Order)[1] against Aspects Furniture International, Inc. (Aspects) issued pursuant to its authority under the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517.[2] The Court partially sustained CBP's Determination, but remanded certain parts of CBP's original determination as to evasion.  Specifically, the Court directed CBP: (1) to clarify its determination consistent with the Court's opinion with respect to Aspects' entries made prior to the EAPA statute's entry into force;[3] (2) to reconsider its determination of evasion to include in the EAPA

---

[1] *Wooden Bedroom Furniture from the People's Republic of China: Antidumping Duty Order*, 70 Fed. Reg. 329 (Dep't Commerce January 4, 2005).
[2] Confidential Notice of Final Determination as to Evasion in EAPA Case No. 7189, Confidential Record No. (C.R.) 311 (May 18, 2020) (hereinafter, May 18 Determination); Administrative Review Determination, EAPA Case No. 7189 (September 24, 2020) (hereinafter, Administrative Review).
[3] *Aspects Furniture International, Inc. v. United States*, 607 F. Supp. 3d 1246, 1257 (Ct. Int'l Trade 2022) (hereinafter, Remand Order).

investigation only the merchandise within the scope of the Order;[4] and, (3) to address and remedy the lack of public summaries of redacted information and to provide Aspects with an opportunity to respond to the information that should have been made available during the administrative proceeding.[5]  Finally, the Court concluded that CBP's consideration of its personnel's observations during the on-site verification was not arbitrary or capricious, but noted that "Customs may decide to provide further explanation regarding the truthfulness, reasonableness, or credibility of the evidence."[6]

As explained below, CBP finds that the determination of evasion does not apply to entries made prior to the EAPA statute's entry into force.  CBP further finds, drawing adverse inferences from the facts available on the record, that all entries by Aspects subject to the EAPA investigation contained covered merchandise.  Finally, pursuant to a subsequent order of this Court, CBP is not required to address the lack of public summaries.

On March 14, 2023, CBP issued a draft of this remand redetermination to Aspects and to the alleger, American Furniture Manufacturers Committee for Legal Trade.  On March 21, 2023, Aspects submitted its written comments to the draft remand redetermination.[7]  The alleger did not submit any comments.  We address Aspects' arguments in detail below.

## II.   BACKGROUND

On May 9, 2017, CBP initiated an investigation against Aspects pursuant to EAPA based on an allegation that Aspects was importing Chinese-origin wooden bedroom furniture into the

---

[4] Remand Order at 1269.
[5] *Id.* at 1273.
[6] *Id.* at 1260.
[7] Aspects, Court Ordered Remand Proceedings for EAPA Case No. 7189 – Plaintiff's Comments to CBP's Draft Remand Redetermination Aspects Furniture International, Inc. v. United States U.S. Court of International Trade Court No. 20-03824, March 21, 2023 (hereinafter, Aspects' Comments).

United States without paying AD duties.[8]  CBP imposed interim measures against Aspects on

August 14, 2017, finding that reasonable suspicion existed that Aspects evaded the Order.[9]

During the course of the investigation, CBP could not determine whether six products imported

by Aspects were covered by the Order, and referred the matter to the Department of Commerce

(Commerce) under 19 U.S.C. § 1517(b)(4).[10]  CBP determined that referral was not necessary

with respect to several other items imported by Aspects because it was able to determine that

such merchandise was within the scope of the Order.  While the scope referral was pending

before Commerce, CBP stayed all deadlines in the investigation.  Commerce issued its response

to CBP's covered merchandise referral on January 8, 2020, finding that two of the six products

referred to Commerce were covered by the Order, and that remaining four products did not

constitute covered merchandise.[11]  Based on the response from Commerce, on May 18, 2020,

CBP issued an affirmative determination of evasion against Aspects.[12]  CBP found that the

substantial evidence on the record demonstrated that Aspects entered covered merchandise into

the United States without payment of requisite AD duties.[13]  On Administrative Review, CBP's

Regulations and Rulings Directorate affirmed the findings of the May 18 Determination.[14]

Aspects challenged CBP's May 18 Determination and the Administrative Review.  As

relevant to this remand, in its challenge, Aspects argued that CBP improperly applied the May 18

Determination to the entries that were made prior to the date of the EAPA statute's entry into

---

[8] May 18 Determination.
[9] Notice of Investigation and Interim measures, EAPA Investigation No. 7189 (August 14, 2017), C.R. 113.
[10] Scope Referral Memorandum, EAPA Investigation No. 7189 (December 22, 2017), P.R. 294.
[11] Department of Commerce, Covered Merchandise Referral Regarding EAPA Investigation No. 7189 (January 8, 2020), P.R. 387 (hereinafter, Scope Ruling).
[12] May 18 Determination.
[13] *Id.* at 9.
[14] Administrative Review.

force, August 22, 2016.[15]  Aspects further argued that CBP improperly found that Aspects evaded the Order with respect to merchandise that Commerce found to be not covered.[16] Aspects also argued that CBP deprived it of its due process rights, and that CBP's investigation procedures were flawed.[17]

The Court remanded the matter to CBP: (1) to clarify its determination consistent with this opinion with respect to Aspects' entries made prior to the EAPA statute's entry into force; (2) to reconsider its determination of evasion to include in the EAPA investigation only the merchandise within the scope of the Order; and (3) to address and remedy the lack of public summaries of redacted information and to provide Aspects with an opportunity to respond to the information that should have been made available during the administrative proceeding.

## III.   REMANDED ISSUES

### A.  Pre-EAPA Entries

In the Remand Order, the Court held that the EAPA investigation may not include entries made prior to August 22, 2016, the date when EAPA entered into force.[18]  On remand, the Court ordered CBP to clarify its determination with respect to the entries made prior to the EAPA statute's entry into force.[19]  The Court also noted that CBP included at least 15 of Aspects' unliquidated entries in the EAPA investigation, and CBP intended to apply the May 18 Determination and the Administrative Review to those entries.[20]  Upon review of the information on the record, and in line with the Remand Order, CBP finds that the May 18 Determination and the Administrative Review do not apply to Aspects' entries made prior to August 22, 2016.

---

[15] Aspects' Motion for Judgment on the Administrative Record (Pl.'s Brief) at 11, ECF No. 20.
[16] Pl.'s brief at 16-17.
[17] *Id.* at 25-29.
[18] Remand Order at 1257.
[19] *Id.*
[20] *Id.* at 1256.

Under 19 C.F.R. § 165.2, entries that may be the subject of the EAPA investigation are those entries of allegedly covered merchandise made within one year before the receipt of an allegation.[21]  In addition, at its discretion, CBP may investigate other entries of such covered merchandise.[22]  In its Notice of Initiation and Interim Measures, CBP defined the period of investigation (POI) for this matter as covering entries from January 1, 2016 through pendency of the EAPA investigation, i.e., May 18, 2020.[23]  CBP explained that it was aligning the POI of the EAPA investigation with its ongoing review of Aspects' entries and extended the scope of the investigation to include the entries from the entire calendar year of 2016.[24]  CBP's May 18 Determination extended to all Aspects' entries made during the POI, including entries filed in the 2016 calendar year.[25]  In the Administrative Review, CBP stated that its analysis relied only on entries made after the effective date of EAPA, August 22, 2016.[26]

During the course of this litigation, and, in particular, in response to Aspects' arguments raised in its opening and reply briefs regarding retroactive application of EAPA,[27] CBP reviewed the status of Aspects' pre-August 22, 2016 entries.  As a result of this research, CBP determined that all of Aspects' 39 entries made between January 1, 2016 and August 22, 2016 had been liquidated on or before August 21, 2018, prior to issuance of the May 18 Determination and the Administrative Review.  Aspects did not protest the liquidations under 19 U.S.C. § 1514.  On September 16, 2021, the parties filed a Joint Status Report advising the Court of this

---

[21] 19 C.F.R. § 165.2.
[22] *Id.*
[23] Notice of Investigation and Interim Measures, EAPA Investigation No. 7189 (August 14, 2017), C.R. 113, at 2.
[24] *Id.*
[25] *See* May 18 Determination.
[26] Administrative Review at 8.
[27] Pl.'s Brief at 11-13; Plaintiff's Reply Brief in Support of Motion for Judgment on the Agency Record (Pl.'s Reply), ECF 26, at 5-8

information.[28]  Because all pre-August 2016 entries reviewed in the EAPA investigation have

been liquidated, CBP finds that the May 18 Determination and the Administrative Review do not

extend to those entries.

### B.  Evidence Obtained at Verification

In the May 18 Determination and the Administrative Review, CBP relied on statements

and observations by CBP employees reflected in the Verification Report indicating that Aspects'

employees were observed deleting and destroying documents and correspondence.[29]  Aspects

challenged CBP's reliance on these observations, arguing that the employee statements

constituted impermissible hearsay under the Federal Rules of Evidence.[30]  In the Remand Order,

the Court found that CBP's reliance on such CBP employee statements was not arbitrary and

capricious; however, the Court afforded an opportunity to CBP to provide an analysis consistent

with the Administrative Procedure Act regarding the truthfulness, reasonableness, or credibility

of the evidence.[31]

As part of the verification of information placed on the record by Aspects and Aspects

Nantong; and two of Aspects' suppliers, Nantong Fuhuang Furniture Co. Ltd. (Nantong

Fuhuang) and Wuxi Yushea Furniture Co. Ltd. (Wuxi Yushea), CBP visited the facilities of

Aspects Nantong, Nantong Fuhuang, and Wuxi Yushea.[32]  At each site, the CBP verification

team interviewed company officials about their respective company operations and

recordkeeping, toured the facilities of each company, and reviewed original documents to ensure

---

[28] Joint Status Report, September 16, 2021, ECF 30.
[29] May 18 Determination at 7-8; Administrative Review at 11; *see also* On-Site Verification Report,
EAPA Investigation No. 7189, (December 13, 2018), C.R. 295 at 16-17 (hereinafter, Verification Report).
[30] Pl.'s Brief at 13.
[31] Remand Order at 1259-1260.
[32] Verification Report at 3.

that the information placed on the record in the EAPA investigation was correct.[33]  After the
visit, the verification team put together a report detailing the results of the verification as well as
the summaries of employee interviews.[34]  Included in the Verification Report is an observation
made by the CBP verification team that an employee of Aspects Nantong deleted a chat record
from a Wuxi Yushea employee and on another occasion removed numerous files from his
computer in the presence of the members of the verification team.[35]  The Verification Report
contained an observation that "Aspects' employees actively deleted and destroyed documents
and correspondence related specifically to the container loading and shipment."[36]  In the May 18
Determination, CBP found the evidence of destruction of documents as one of the contributing
factors for its conclusion that Aspects' documents were not reliable.[37]  On Administrative
Review, CBP found that the record included substantial evidence of evasion, even without the
information about destruction of evidence.[38]

CBP has no reason to question the truthfulness, reasonableness, or credibility of the CBP
employees' interpretation of the evidence obtained at verification.  The on-site verification was
conducted by a team of CBP employees that included experienced professionals from the Center
of Excellence and Expertise for Consumer Products and Mass Merchandising, Regulatory Audit
and Agency Advisory Services (RAAAS), National Threat Analysis Center, and the international
trade specialists from the Trade Remedy Law Enforcement Directorate (TRLED).  Following the
verification, RAAAS prepared a verification report in coordination with the other CBP offices

---

[33] *Id.* at 4.
[34] Verification Report.
[35] *Id.* at 16-17.
[36] *Id.* at 17-18.
[37] May 18 Determination at 8.
[38] Administrative Review at 8.

involved in the verification.[39]  CBP does not publicly disclose the identities of these

professionals in order to protect their privacy.  However, the individuals who observed the

destruction of documents included the international trade specialists who prepared the May 18

Determination.  CBP has no reason to doubt the truthfulness and credibility of personal

observations of its employees.

Further, CBP employees are subject to the CBP Standards of Conduct, which require

CBP employees to demonstrate the highest standards of ethical and professional conduct to

ensure efficient performance of government services.[40]  By CBP policy, employees who

knowingly make false, misleading, incomplete, or ambiguous statements, whether oral or

written, in connection with any matter of official interest may be subject to disciplinary action.[41]

Consequently, if CBP employees were to intentionally fabricate information regarding the

verification, they would be potentially subject to disciplinary action, and potential removal from

employment.  As such, CBP finds that the statements in the Verification Report regarding

destruction of evidence witnessed by the verification team at Aspects' facility to be truthful and

credible.

CBP also finds that it is reasonable to rely on the statements and observations of its

employees who are tasked with validating the information placed by interested parties on the

administrative record.  The purpose of an on-site verification in EAPA investigations is to check,

review, and corroborate factual information previously placed on the record.  As part of this

process, the CBP team conducting the verification must make observations and conclusions

regarding the information reviewed during the on-site verification process at an interested party's

---

[39] Verification Report at 2.

[40] U.S. Customs and Border Protection Standards of Conduct, CBP Directive No. 51735-013B at 1.

[41] *Id*.

facility.  For example, the verification team compares the documentary evidence to the actual production processes taking place at the foreign supplier's facility.  It is precisely the responsibility of the verification team to make and record their observations during a verification.  As such, it is reasonable for CBP to rely on the statements of the verification team regarding destruction of evidence witnessed during Aspects' verification.

### C.  Covered Merchandise Referral

In the Remand Order, the Court found that CBP disregarded Commerce's scope ruling and instead included non-covered merchandise in its finding of evasion.[42]  The Court remanded the matter to CBP for further consideration with instructions to only include merchandise within the scope of the Order in the EAPA investigation.[43]  In doing so, the Court noted that on remand CBP may choose to revisit the scope issue and consider whether to make a new scope referral to Commerce, or reconsider its adverse inference determination.[44]  The Court deferred the substantive consideration of the evasion determination until after CBP provided a clarification regarding the merchandise included in the May 18 Determination.[45]

As discussed in the May 18 Determination, during the course of the investigation, CBP concluded that it could not determine whether certain wooden bedroom furniture items imported by Aspects Furniture were covered by the Order.[46]  As a result, pursuant to its authority under section 1517(b)(4), CBP referred the matter to Commerce for a determination as to whether six specific products imported by Aspects constituted covered merchandise.[47]  CBP did not include

---

[42] Remand Order at 1269.
[43] *Id*.
[44] *Id*.
[45] *Id*.
[46] May 18 Determination at 3.
[47] *Id.*; *see also* Scope Referral Memorandum, EAPA Investigation No. 7189 (December 22, 2017), P.R. 294.

in the referral several other wooden bedroom furniture products where CBP was able to

determine that they were covered by the scope of the Order.[48]  Commerce transmitted its scope

ruling to CBP on January 8, 2020.[49]  Commerce determined that four out of the six products

referred by CBP, the desk/console table with drawers (G-200), the TV cabinet with a minibar

(G0208L and G-208R), the trunk storage unit (G-207), and the bed bench base (GF-200) were

not covered by the scope of the Order.[50]  However, Commerce found that two out of the six

products, the TV credenzas/dressers (G-206(1) and G- 206(2)) and the console/custom dresser

(GF-103L and GF-103R), were covered by the Order.[51]

In the May 18 Determination, CBP determined that entry information provided by

Aspects' was unreliable and concluded:

> Overall, the nature of the problems with the record responses in this
> investigation are broad enough to undermine the reliability of Aspects'
> reported entry information.  Therefore, on the basis of the aforementioned
> analysis, CBP determines that substantial evidence exists demonstrating
> Aspects misidentified the applicable AD cash deposit rate for entries of
> subject merchandise, and in other instances failed to declare entered subject
> merchandise to be subject to the AD order.  As a result, Aspects' entries are
> subject to the China-wide entity rate for the AD order on wooden bedroom
> furniture from China, currently 216.01 percent.[52]

As an initial matter, CBP has not disregarded Commerce's findings in the May 18

Determination and the Administrative Review.  Under 19 U.S.C. § 1517(a)(3)(A), the term

"evasion" is defined as entry of *covered merchandise* into the United States by means of material

false statements.[53]  CBP does not purport to find evasion with respect to any entries that it finds

---

[48] May 18 Determination at 3.
[49] *See* Scope Ruling.
[50] Scope Ruling at 1.
[51] *Id*.
[52] May 18 Determination at 10.
[53] 19 U.S.C. § 1517(a)(3)(A).

do not contain covered merchandise.  That said, CBP finds, after making inferences that are adverse to Aspects' interests from the facts otherwise available on the record, that all of Aspects' entries subject to the EAPA investigation contained covered merchandise.

Under 19 U.S.C. § 1517(c)(3), if CBP finds that an importer, alleger, foreign producer or exporter, or a foreign government "has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information," CBP may, in making a determination of evasion "use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination."[54]  In this case, CBP finds that Aspects, through its satellite office in China, Aspects Nantong,[55] failed to cooperate by not acting to the best of its ability to comply with CBP's requests for information at the on-site verification conducted by CBP.

CBP finds that on two occasions during the verification of Aspects Nantong, Aspects Nantong staff were observed destroying information in response to questions from the verifiers. In one instance, an employee of Aspects Nantong who "prepares container loading drawings for the manufacturers" and who would regularly generate "container loading designs…based on a container loading plan spreadsheet" was observed by CBP verifiers "delet{ing} the chat record" with the general manager of Wuxi Yushea immediately after that Aspects Nantong employee was asked a question relating to container loading designs.[56]  Subsequently, that same Aspects Nantong employee was seen by a verifier "delete{ing} dozens of files from his computer" after he was asked "to provide samples of the container loading plans and spreadsheets."[57]  The verification team noted that Aspects' staff "actively deleted and destroyed documents and

---

[54] 19 U.S.C. § 1517(c)(3)(A).
[55] *See* Aspects' Response to CBP Request for Information, April 5, 2018, at 2-3, C.R. 275.
[56] Verification Report at 16.
[57] *Id.* at 17.

correspondence related specifically to the container loading and shipment."[58]  In short, during verification of an overseas facility of the U.S. importer, at which counsel for the importer was present, Aspects staff destroyed information in response to CBP inquiries relating to what merchandise was shipped, and by which manufacturer.  By destroying evidence, Aspects' staff intentionally withheld information from CBP, and as such, CBP finds that Aspects failed to cooperate by not acting to the best of its ability to respond to CBP's requests for information during the verification.

As a result of Aspects' failure to cooperate, CBP was unable to obtain critical information regarding Aspects' imports of wooden bedroom furniture into the United States. Specifically, "CBP concluded {that} there were shipments to Aspects for which the manufacturer of the merchandise could not be identified, merchandise was described inaccurately on invoices, and there were errors in the valuation of merchandise."[59]  In addition, CBP was unable to determine a logical explanation for the inconsistencies in the weight and values between sales and shipping documents.[60]  For example, there is no explanation why in some cases the number of cartons and weight of the shipment found on the manufacturer's export forms were lower than on the bill of ladings provided to CBP by Aspects.[61]  Ultimately, because of Aspects' failure to cooperate, CBP was unable to rely on Aspects' entry, sales, and shipping documents to determine which of Aspects' entries contained covered merchandise, and which did not.  As such, CBP is using inferences that are adverse to Aspects' interests and relying on the facts otherwise available on the record to find that all of Aspects' entries subject to

---

[58] *See id.* at 17-18.
[59] May 18 Determination at 4.
[60] *Id.*
[61] Administrative Review at 9.

the EAPA investigation, between August 22, 2016 and May 18, 2020, contained covered merchandise.

Facts otherwise available on the record indicate that Aspects systematically misrepresented the descriptions of merchandise in the entry documents, such that CBP cannot trust the veracity of any description of imported merchandise, and specifically, which particular entries include covered merchandise. In other words, while CBP agrees with Commerce's decision as to which products are covered merchandise and which are not, CBP cannot rely on the veracity of Aspects' descriptions to have properly designated which entries contain which products. CBP detailed the concerns with Aspects' documentation in the Verification Report, the May 18 Determination, and the Administrative Review. The "verification team {indicated that while it} believes that both {verified} suppliers (i.e., Nantong Fuhuang and Wuxi Yushea) were able to produce the {wooden bedroom furniture} at sufficient quantities as to account for the imported merchandise totals," it "identified other information such as co-mingled {sic} merchandise, inaccurate merchandise descriptions, and value errors that indicate Aspects may have evaded duties on entries of {wooden bedroom furniture}."[62] Also, the verifiers could not confirm whether Nantong Fuhuang and Wuxi Yushea were the manufacturers for all of the merchandise that Aspects reported on its entry documentation.[63] Thus, during the verification, Aspects failed to cooperate to the best of its ability by failing to provide CBP with the accurate information that was needed for Aspects to carry its burden to demonstrate the necessary details through reliable information.

Moreover, during the verification, CBP verifiers identified numerous occasions where the product descriptions on Aspects' internal documents were substantially different from

---

[62] *See* Verification Report at 4.
[63] *See id.* at 17.

information that was provided to CBP.[64]  For example, the Verification Report noted an instance where an item appeared as a "slab wood top" on the invoice presented by Wuxi Yushea at verification; as a "wood top" on the container loading plan presented at verification and the entry package invoice; and again, as an "entry console" on the warehouse document presented at verification and on the entry package invoice."[65]  CBP also found that, in many cases, descriptions of merchandise on documents provided to CBP by Aspects were different from descriptions of merchandise submitted to CBP by the manufacturers for the same set of entries.[66] In some cases, CBP noted that the product descriptions were changed in a manner that placed the product outside of the scope.[67]  CBP listed specific examples in the Verification Report where such discrepancies existed.[68]  For example, on an invoice for one entry which Wuxi Yushea presented at verification, items were described as either a type of "king headboard or double headboard," which is covered merchandise, while on the invoice that was submitted as a part of Aspects' entry package, all of those item numbers were described as "Wall Panels."[69]  In another example, merchandise that was described by Wuxi as a "nightstand" (i.e., covered merchandise), was described by Aspects as "end table" (i.e., merchandise not covered by the Order).[70]  Based on these observations, CBP continues to find that "Aspects' changing of merchandise descriptions from products that would fall within the scope of the AD order to ones that would fall outside of the scope of the AD order goes beyond inadvertent misreporting, and instead evidences evasion of the Order."[71]

---

[64] May 18 Determination at 6; *see e.g.*, Verification Report at 8.
[65] Verification Report at 7.
[66] *Id.* at 10.
[67] *Id.*; May 18 Determination at 6.
[68] Verification Report at 10.
[69] *Id*.
[70] *Id.*; *see also* Administrative Review at 11.
[71] May 18 Determination at 9.

The verification team identified numerous discrepancies in the record information that called into question the identity of suppliers, the specific types of merchandise shipped and entered, and the valuation of the merchandise.  Such information is critical for the proper identification of AD rates and calculating AD duties.  Neither Aspects nor its suppliers identified such discrepancies in their RFI responses or in any other way prior to the verification.

During the verification, CBP also found that Aspects was commingling merchandise from various manufacturers.  Specifically, CBP concluded that it was "unable to verify that the stated manufacturers on Aspects' entry documentation were, in fact, the manufacturers of the subject merchandise."[72]  CBP noted that "{o}fficials at both {verified Chinese} manufacturing facilities indicated that containers from Aspects sometimes arrived at their facilities already partially loaded with merchandise from other manufacturers," and that "{a}ccording to the officials' statements and records, Aspects requested that the suppliers participating in the verification comingle {sic} their merchandise with the merchandise already loaded in the containers."[73]  CBP also noted that it "obtained invoices from the manufacturers that differed from the invoices Aspects provided to CBP with its entries and later, when requested to provide supporting commercial documents," and that it had "also observed numerous discrepancies in weight and value between various sales and shipping documents from Aspects, {its} freight forwarders, and the foreign manufacturers."[74]  The Verification Report identified numerous specific examples of such discrepancies.[75]

---

[72] Verification Report at 10.
[73] *Id.* at 4.
[74] *See id.*
[75] *See id.* at 4-9.

15

CBP also concluded that it "could not verify if the value of the merchandise that Aspects provided to CBP is accurate and if the values appropriately account for assists when relevant."[76] The Verification Report notes "that the proper valuation of the finished goods could not be verified."[77]  CBP found that it was "unable to verify in China whether or not Aspects declared the correct price actually paid or payable in the entry documents submitted to CBP."[78]  CBP further found that "the invoices provided by Aspects to CBP in its entry packages often contain merchandise from different manufacturers on one invoice that are attributed to a single manufacturer," and noted that the "{e}vidence obtained at verification established that the manufacturer on the entry package invoice did not necessarily produce all merchandise listed on the invoice."[79]  CBP further noted that "invoices that Aspects and its suppliers placed on the record prior to verification often conflict."[80]  The Verification Report provides specific examples of the discrepancies in value.[81]

Drawing adverse inferences from the above facts otherwise available on the record, CBP finds that misrepresentations on Aspects' entry documents as well as on its internal shipping and sales documents were pervasive.  Overall CBP determines that the documents provided by Aspects are unreliable.  Absent a thorough cargo exam of each entry, which is no longer possible (and which would be an unduly burdensome process even if theoretically possible), the true nature of the merchandise contained in the shipments cannot be determined by review of the documents submitted by Aspects and its manufacturers.  Aspects states that it provided CBP with

---

[76] *Id.* at 11.
[77] *Id*.
[78] *Id*.
[79] *Id*.
[80] *See id.*
[81] *See id.* at 11-15.

a list of entries that did not contain covered merchandise as found by Commerce.[82]  However, during the verification, the CBP verification team reviewed at least two of the entries listed by Aspects as containing non-covered merchandise and concluded that such entries contained inconsistent information regarding the value of merchandise or included inaccurate product descriptions.[83]  Hence, Aspects' claims cannot be taken at face value.  In drawing adverse inferences, we highlight the inconsistency of merchandise descriptions across shipping and sales documents, and specifically the fact that the merchandise descriptions were changed in some cases from covered merchandise to describe merchandise out of the scope of the Order.  As a result, CBP cannot rely on the declaration on entry documents to determine which entries contain covered merchandise.  Given Aspects' failure to cooperate during the investigation and drawing inferences adverse to Aspects' interests from the pervasive misrepresentations on Aspects' documentation, CBP finds that all entries entered between August 22, 2016 and May 18, 2020, subject to the EAPA investigation contained covered merchandise.  Thus, CBP finds that Aspects evaded the Order by importing covered merchandise into the United States through evasion.

CBP incorporates by reference the evasion determination from the May 18 Determination and the Administrative Review.

### D.  Public Summaries

On December 7, 2022, CBP issued a letter[84] to the parties to this remand proceeding – Aspects, Nantong Fuhuang, Wuxi Yushea, and American Furniture Manufacturers Committee

---

[82] Aspects, Submission of Written Argument, February 10, 2020 at 26 (C.R. 306) (listing the entries that according to Aspects did not contain covered merchandise).
[83] Verification Report at 8-10.
[84] *See* Letter from Brian M. Hoxie to Counsel for Aspects Furniture International, Inc., Wuxi Yushea Furniture Co., Ltd., American Furniture Manufacturers Committee for Legal Trade, and the General

for Legal Trade – advising that CBP was reopening the administrative record for a limited period

of time to permit the parties to submit revised public versions of certain documents the parties

had previously placed on the administrative record.  In order to comply with the Remand Order

that CBP "address and remedy the lack of public summaries of redacted information" and

"provide Aspects with an opportunity to respond to the information that should have been made

available during the administrative proceeding," CBP requested that the parties to the remand

review the public versions of the documents each entity previously submitted to the

administrative record and provide revised public summaries compliant with 19 C.F.R. §

165.4(a)(2).[85]  In doing so, CBP instructed the parties that public summaries of any bracketed

business confidential information must include sufficient detail so as to permit a reasonable

understanding of the substance of the bracketed information, in accordance with 19 C.F.R. §

165.4(a)(2).[86]  CBP explained to the parties that if business confidential documents were not

susceptible to summarization, the parties must submit an explanation as to why the document

cannot be publicly summarized.[87]  CBP further advised that new certifications pursuant to 19

C.F.R. § 165.4(d) were also required as to the information contained in the documents.[88]  The

parties were required to submit the revised documents no later than December 21, 2022 at 5:00

Eastern Time (ET).[89]  Finally, CBP stated that, as part of the remand proceedings, it would

provide revised public versions of the documents placed on the administrative record to the

---

Manager for Nantong Fuhuang Furniture Co., Ltd, Re: *Aspects Furniture International, Inc. v. United States*, CIT No. 20-03824 (December 7, 2022 Letter).
[85] *Id.*; Remand Order at 1273.
[86] *See* December 7, 2022 Letter at 2.
[87] *Id.*
[88] *Id.*
[89] *Id.*

parties and permit an opportunity to submit rebuttal information and written arguments relevant to the revised versions.[90]

On December 9, 2022, Counsel for Aspects responded to CBP's letter and noted that it complied with the requirements set forth in 19 C.F.R. § 165.4 and was not the subject of the Remand Order, and because such re-submitting of public versions of documents, as requested in CBP's Letter, "would be futile and result in substantial costs for {his} client, given the extent of the information requested, AFI's position is that it is not required to comply with CBP's letter."[91] On December 13, 2022, CBP responded to Aspects' message and reiterated that, consistent with CBP's December 7, 2022 Letter, CBP has identified business confidential documents submitted by Aspects that did not comply with the requirements of 19 C.F.R. § 165.4 and, as such, "CBP is requesting that Aspects resubmit those documents with public summaries consistent with section 165.4(a)(2)."[92]

After conferring with the Government counsel, on December 20, 2022, counsel for Aspects filed an unopposed motion to partially vacate the Court's order, seeking to remove the requirement of public summaries by all parties subject to the remand.[93]  On December 23, 2022, the Court granted in part the motion with respect to Aspects' request to withdraw and waive its claims and arguments pursuant to 19 C.F.R. § 165.4 and the lack of public summaries but denied in part with respect to their request to vacate portions of the Court's November 28, 2022 order.[94]  On December 23, 2022, the Government filed an unopposed motion for clarification,

---

[90] *Id.*

[91] *See* Email from Counsel for Aspects Furniture International, Inc., Re: EAPA 7189 (Remand) - Letter to various parties regarding public summaries (December 9, 2022).

[92] *See* Email from CBP, Re: EAPA-00007802 - response to email (December 13, 2022).

[93] *See* Plaintiff Aspects International Furniture, Inc.'s Unopposed Motion to Partially Vacate the Court's November 28, 2022 Remand Order, (December 20, 2022), ECF No. 32.

[94] *See* Court's Order (December 23, 2022), ECF No. 33.

specifically seeking whether the Court expects "Customs to address and remedy the lack of public summaries of redacted information and to provide Aspects with an opportunity to respond to the information that should have been made available during the administrative proceeding."[95] On December 23, 2022, the Court granted CBP's motion and ordered that CBP "is not required to address and remedy the lack of public summaries of redacted information on remand" but all other deadlines and instructions in the Remand Order remain in effect.[96]

## IV.   INTERESTED PARTY COMMENTS

### *Comments by Aspects*

- Aspects agrees with CBP's finding in the draft remand redetermination that the May 18 Determination and the Administrative Review do not apply to Aspects' entries prior to the effective date of EAPA.[97]

- Aspects agrees with CBP's determination regarding public summaries.[98]

- Aspects argues that CBP's findings regarding destruction of evidence are immaterial to the finding of evasion.  Specifically, Aspects contends that the draft remand redetermination did not identify what "kinds of 'material' records were subject to destruction" and that "{i}n the EAPA context, 'material' requires the analysis of the technical notions of 'covered merchandise' and 'evasion.'"[99] Aspects asserts that Aspects fully cooperated during the verification and provided CBP with documents for hundreds of entries, which CBP ignored.[100]

---

[95] *See* Defendant's Unopposed Motion for Clarification (December 20, 2022), ECF No. 34.
[96] *See* Court's Order (December 23, 2022), ECF No. 35.
[97] Aspects' Comments at 2.
[98] *Id.* at 9-10.
[99] *Id.* at 3-4.
[100] *Id.* at 3-4.

- Aspects contends that even if CBP witnessed a destruction of documents, the incidents that CBP cites are isolated and do not support CBP's conclusion that all of Aspects' documents are unreliable.[101]

- Aspects challenges CBP's application of adverse inferences to find that all of Aspects' entries contained covered merchandise.  Aspects argues that in selecting facts otherwise available, CBP ignored the evidence that would let it determine that the vast majority of Aspects' entries were exported by Wuxi Yushea and CBP is able to determine which of those items are covered and which are not.[102]

***CBP Position***

CBP disagrees with Aspects' comments regarding the application of adverse inferences and the covered merchandise issue.  CBP therefore did not make any changes to the draft remand redetermination.

Aspects argues that two instances of destruction of evidence cited in the draft remand redetermination have no impact on either the covered merchandise requirement or any of the elements of evasion in an EAPA investigation.[103]  Aspects contends, without citing to any authority, that in the "EAPA context, 'material' requires the analysis of the technical notions of 'covered merchandise' and 'evasion.'"[104]  Aspects, however, is misinterpreting CBP's findings.  As discussed above, CBP found that Aspects failed to cooperate to the best of its ability in responding to CBP's requests for information during the verification when Aspects' employees deleted electronic files in response to CBP's questions.  Aspects attempts to minimize the impact of this egregious violation by stating that it provided CBP with information for hundreds of

---

[101] *Id.* at 4-5.
[102] *Id.* at 7-9.
[103] *Id.* at 3.
[104] *Id.* at 4.

entries.[105]  However, Aspects' employees' actions were neither insignificant nor limited in scope.  As we state in this remand redetermination, CBP verifiers witnessed an Aspects' employee deleting "dozens" of files from his computer when CBP requested information regarding container loading plans.[106]  As explained above, the destruction of evidence was significant because such actions prevented CBP from fully understanding the scope of Aspects' Nantong operations and which products from which manufacturers were exported to the United States.[107]  In addition, given that dozens of files were deleted, CBP simply does not know the contents of those files and what impact they would have on a determination as to evasion.  CBP only observed that Aspects' employees withheld that evidence from CBP.

Further, CBP does not accept the interpretation of "materiality" offered by Aspects.  While the definition of evasion in section 1517(a)(5) requires "material false statements, acts or omissions," such materiality requirement applies to false statements made to CBP that result in AD/CVD being reduced or not paid.[108]  EAPA also provides that CBP may draw inferences that are adverse to the interests of a party, if CBP finds that such party failed to cooperate by not acting to the best of its ability to comply with CBP's request for information. [109]  Regardless, however, the actions of Aspects' employees during the verification are significant to CBP's finding of lack of cooperation by Aspects and to the drawing of adverse inferences, and do not

---

[105] *Id.*
[106] *See supra* p. 11; Verification Report at 11.
[107] *Supra* pp. 11-12.
[108] 19 U.S.C. § 1517(a)(5)("the term 'evasion' refers to entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.").
[109] *See* 19 U.S.C. § 1517(c)(4).

need to independently meet the materiality requirement for a finding of evasion.[110]  The purpose of the adverse inference provision in EAPA is to deter exactly the type of conduct that Aspects' employees engaged in during the verification.[111]  To require CBP to show that destroyed or withheld evidence would have been material would be illogical, since CBP cannot know the contents or specific impact of evidence which it did not see.  That said, it is reasonable to infer that the evidence would have been material, since the party felt compelled to prevent CBP from reviewing such evidence by destroying it.  However, here, there exists more than an inference to support a conclusion that the evidence was material, since the nature of at least some of the documents that were destroyed (i.e., the container loading documents) render the documents highly relevant to the issues presented in this EAPA investigation.  Hence, in this case, even if materiality were to be required, that burden has been met.

Finally, while Aspects notes that it provided CBP with information on hundreds of entries, it bears repeating that CBP identified numerous deficiencies and falsities in these documents, and that Aspects failed to cooperate by failing to provide CBP with accurate information.  CBP specifically outlined these inaccuracies in this remand redetermination,[112] the Verification Report,[113] the May 18 Determination,[114] and the Administrative Review.[115]  The record unequivocally supports CBP's conclusion that Aspects' documents were replete with false information.  As such, contrary to Aspects' assertions, the documents could not be relied upon as "facts otherwise available."

---

[110] *Cf. Papierfabrik August Koehler AG, v. United States*, 180 F. Supp. 3d 1211 (Ct. Int'l Trade 2016) (finding that in determining whether adverse inferences were appropriate, Commerce was not required to consider whether importer's deliberate omissions of volume and value information were material).
[111] H.R. Rep. No. 114-114, at 81.
[112] *Supra* pp. 11-17.
[113] Verification Report at 4-17.
[114] May 18 Determination at 4-8.
[115] Administrative Review at 8-10.

In challenging CBP's selection of facts otherwise available on the record, Aspects contends that it imports made-to-order articles for hotels only, which should mean that its entries must also contain non-wooden bedroom furniture items.[116]  At the outset, Aspects cites no evidence from the record that supports this conclusion.  In other words, Aspects is urging CBP to trust Aspects' speculation that some of Aspects' entries reviewed in the EAPA investigation must contain items other than wooden bedroom furniture.  However, CBP cannot rely on Aspects' statements alone.  As CBP finds in this remand redetermination, Aspects' entry packages contain numerous inconsistent descriptions of merchandise across invoices, purchase contracts, and the entry summaries.  CBP also pointed out instances where merchandise descriptions were changed in a way to obfuscate whether the merchandise was covered merchandise.[117]  Aspects offers no specific examples from the record where it can positively identify which of its entries do not contain covered merchandise.

Aspects also attempts to argue that CBP is contradicting itself in the adverse inference analysis.  To illustrate this alleged contradiction, Aspects asserts that "(1) CBP was able to determine, without issues, which items were "covered merchandise" and which were not, and (2) for "certain" items only, because CBP was unable to decide which of them were "covered merchandise" and which were not, CBP sought Commerce's help through its scope referral."[118]  Aspects' attempt fails, because the two findings are not contradictory.  CBP referred the matter to Commerce because CBP could not determine whether specific types of furniture items were covered by the AD Order.[119]  That finding is separate and distinct from a determination that CBP

---

[116] Aspects' Comments at 6.
[117] *See supra* pp. 13-14.
[118] Aspects' Comments at 6.
[119] *See supra* pp. 2-3; Scope Referral Memorandum, EAPA Investigation No. 7189 (December 22, 2017), P.R. 294.

is unable to discern – *in reality* – which of Aspects' entries contain covered merchandise and which do not.  As stated above, absent a cargo examination, based on the documents alone, it is impossible to determine which of Aspects' entries do not contain covered merchandise.[120]

Finally, Aspects asserts that CBP failed to explain how other facts on the record "could help the agency discern which of the items imported by {Aspects} constituted 'covered merchandise' and which did not."[121]  To support its argument, Aspects states that items that appear on both Aspects' and Wuxi Yushea's records were manufactured by Wuxi Yushea and imported by Aspects.[122]  First, Aspects misinterprets CBP's finding.  CBP does not have difficulty discerning which types of imported items constitute covered merchandise.  That question, to the extent there was one, has been resolved by the covered merchandise referral to Commerce.  The record evidence does not allow CBP to discern which *entries* contain covered merchandise and which do not because CBP finds that the documentary evidence provided by Aspects is incurably flawed, and drawing adverse inferences from the facts otherwise available on the record, CBP finds that all of Aspects' entries contain covered merchandise.

Second, Aspects' argument, that in selecting facts otherwise available CBP failed to consider favorable evidence, is unpersuasive.  Aspects argues that Wuxi Yushea's documentation is reliable and indicates which products exported from Wuxi Yushea were covered merchandise.[123]  CBP does not disagree that to the extent the record evidence demonstrates that certain entries contain merchandise not subject to the AD Order consistent with Commerce's finding, the evasion determination should not apply to such non-subject merchandise.  However, Aspects has not provided reliable information that would definitively

---

[120] *See supra* p. 16.
[121] Aspects' Comments at 8.
[122] *Id.*
[123] *Id.* at 8-9.

identify which entries contain non-subject merchandise.  In this remand redetermination, citing

to the Verification Report, CBP identified numerous instances where merchandise descriptions,

manufacturers, and values varied from document to document for the same entry packages,

including on documents submitted by Wuxi Yushea.[124]  CBP found evidence of commingling at

Aspects' facility, and it was unable to determine, based on the documents on the record, which

manufacturers produced which merchandise.[125]  CBP also found that merchandise descriptions

differed between invoices generated by Aspects and Wuxi Yushea.[126]  Contrary to what Aspects

argues, CBP found that Wuxi Yushea's documents also contained inconsistencies regarding

weights and values of merchandise.[127]  And, even if CBP were to find that documents submitted

by Wuxi Yushea were reliable, to the extent the weight, value, and merchandise descriptions on

Wuxi Yushea's documents contradict the information on entry summaries submitted to CBP,

Aspects nevertheless made material false statements to CBP that resulted in reduction of

applicable cash deposits being paid, and thus engaged in evasion under EAPA.  Aspects does not

point to any record evidence to support its arguments, and again, is expecting CBP to take

Aspects at its word, without having given CBP any basis to do so in this investigation.

## V.   CONCLUSION

In accordance with the Remand Order, we have analyzed the issues CBP was instructed

to reconsider or further explain in this remand redetermination.  Specifically, CBP clarified its

finding regarding Aspects' entries made prior to the effective date of EAPA.  In addition, CBP

explained the reliability of the observations made by its officials during the verification process.

CBP applied adverse inferences to Aspects' interests due to its failure to cooperate during the

---

[124] *See supra* pp. 11-17.
[125] May 18 Determination at 4.
[126] Verification Report at 10.
[127] *Id.* at 9.

verification, and found that all of Aspects' entries subject to the EAPA investigation contained covered merchandise.  Finally, CBP was not required to address its obligations under 19 C.F.R § 165.4(a).  CBP further incorporates by reference the analysis and the finding of evasion in the May 18 Determination and the Administrative Review.

/s/

Victoria Cho

Acting Director – Enforcement Operations Division
Trade Remedy Law Enforcement Directorate
Office of Trade
U.S. Customs & Border Protection

ALICE
A KIPEL

Digitally signed
by ALICE A
KIPEL
Date:
2023.03.27
15:21:30 -04'00'

/s/

Alice A. Kipel

Executive Director
Regulations and Rulings
Office of Trade
U.S. Customs and Border Protection