# UNITED STATES COURT OF INTERNATIONAL TRADE

<u>BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE</u>

|  |  |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant. ) <br> ) | Court No. 20-03824 |

## PLAINTIFF ASPECTS FURNITURE INTERNATIONAL, INC.'S COMMENTS IN OPPOSITION TO <u>AGENCY FINAL REMAND REDETERMINATION PURSUANT TO COURT ORDER</u>

                                                            Respectfully submitted,

                                                            <u>/s/ Robert W. Snyder</u>
                                                            ROBERT W. SNYDER
                                                            LAURA A. MOYA
                                                            Law Offices of Robert W. Snyder
                                                            6 Morgan, Suite 114
                                                            Irvine, CA 92618
                                                            Telephone: (949) 453-8688
                                                            E-mail(s): rsnyder@rwsnyderlaw.com
                                                                                lmoya@rwsnyderlaw.com

                                                            Counsel for Plaintiff ASPECTS
                                                           FURNITURE INTERNATIONAL, INC.

Dated: **April 24, 2023**
       Irvine, CA

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................................ i.

**TABLE OF AUTHORITIES** ................................................................................................ ii.

**INTRODUCTION**.................................................................................................................. 1

**STANDARD OF REVIEW** ................................................................................................... 3

**ARGUMENT**.......................................................................................................................... 4

   A.   CBP's Remand Redetermination as to Aspects' Purported Evidence Destruction Continues To Be Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, as the Agency Fails to Explain How Such Evidence Has Any Relevance or Material Impact on Its "Evasion" Determination.................................................. 4

   B.   CBP's Finding of Evasion Against AFI Continues To Be Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Failed to Establish, by Substantial Evidence, Which of AFI's Subject Entries, if Any, Were Covered Merchandise at the Time they Were Made, as Required Under 19 U.S.C. § 1517(c)(1)(A)............................. 9

   C.   CBP's Finding of Evasion Against Aspects Continues To Be Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Failed to Demonstrate, by Substantial Evidence, that Aspects Avoided Payment of "Applicable" Antidumping Cash Deposits or Other Security, as Required Under 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1 / CBP's Finding of Evasion Cannot be Sustained because CBP Continues to Misinterpret and Misapply the Plain Language of § 1517(a)(5)(A) ................... 14

**CONCLUSION** ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                           **PAGE(S)**

*Richardson v. Peralas,*
   402 U.S. 389 (1971)......................................................................................…... 6

*Trust Chem Co. v. United States,*
   819 F. Supp. 2d 1373 (Ct. Int'l Trade 2012) ......................................................…... 3

**STATUTES & REGULATIONS**

19 U.S.C. § 1517(a)(3) …………………………………………………………………... 6

19 U.S.C. § 1517(a)(5)(A) …………………………………………………………………3, 6, 7 14

19 U.S.C. § 1517(c)(1)(A) …………………………………………………………………. 7, 9

19 U.S.C. § 1517(c)(3) …………………………………………………………………..... 12

19 U.S.C. § 1517(c)(3)(A) ………………………………………………….........................9

19 U.S.C. § 1517(c)(3)(C) …………………………………………………….....................9

19 U.S.C. § 1517(g)(2) .................................................................................................. 3

19 U.S.C. § 1517(g)(2)(A) ……………………………………………………….............. 2, 3

19 U.S.C. § 1517(g)(2)(B) …………………………………………………………….... 2, 3

19 C.F.R. § 165.1 ……………………………………………………………….................14

19 C.F.R. § 142.3 …………………………………………………….…………….......7, 12

19 C.F.R. § 163 …………………………………………………………………..............12

**INTRODUCTION**

Plaintiff, Aspects Furniture International, Inc. (hereinafter, "Plaintiff" and/or "AFI"/"Aspects"), respectfully submits its comments in opposition to U.S. Customs and Border Protection's (hereinafter, "CBP or "Customs") Final Remand Redetermination, as issued on March 27, 2023, pursuant to this Court's November 28, 2022 opinion associated with CBP's Enforce and Protect Act (hereinafter, "EAPA") Case No. 7189 (hereinafter, "EAPA Investigation"). *See Final Remand Redetermination*, *Aspects Furniture International, Inc. v. United States*, EAPA Investigation No. 7189, Court No. 20-03824 (Ct. Int'l Trade) (March 27, 2023) (hereinafter, "Redetermination"), ECF No. 36; *see also Aspects Furniture International, Inc. v. United States*, 607 F. Supp. 3d 1246, Slip Op. No. 22-132 (Ct. Int'l Trade, Nov. 28, 2022) (hereinafter, "Remand Order"), ECF No. 31.[1]

In its Remand Order, the Court remanded certain parts of CBP's original determination as to evasion against AFI, as issued by Customs' Trade Remedy Law Enforcement Directorate (hereinafter, "'TRLED") on May 18, 2020, and affirmed on September 24, 2020, by its Office of Trade, Regulations &. Rulings (hereinafter, "R&R"). *See generally Notice of Final Determination as to Evasion* (Sept. 24, 2020), BCD No. 310, PD No. 419 (hereinafter, "Initial Determination"); *see also Administrative Review Determination in EAPA Case Number 7189 (Sept. 24, 2020), PD No. 429 (hereinafter, "Review Determination").*

---

[1] On March 27, 2023, CBP filed the Public Administrative Record associated with its remand proceeding in EAPA Case No. 7189. *See generally* (Remand) Public Admin R., Mar. 27, 2023, ECF No. 36-1—3. To avoid confusion, this writing will use the designation "RPD" to identify public documents generated during this remand; it will continue to use the designations "PD" and "BCD" to identify documents filed as part of the Decenter 14, 2020 Administrative Record. *See generally* Public Admin. R., Dec. 14, 2020, ECF No. 17-1—26; Confidential Admin. R., Dec. 14, 2020, ECF No. 16-1—31.

Specifically, the Court ordered CBP to: (l) clarify its determination consistent with the Court's opinion with respect to Aspects' entries made prior to the EAPA statute's entry into force; (2) reconsider its determination of evasion to include in the EAPA investigation only the merchandise within the scope of the antidumping duty order (hereinafter, "ADD") on wooden bedroom furniture (hereinafter, "WBF") from the People's Republic of China (hereinafter, "PRC" or "China"), A-570-890 (hereinafter, the "Order"); and (3) address and remedy the lack of public summaries of redacted information and to provide Aspects with an opportunity to respond to the information that should have been made available during the administrative proceeding.  Remand Order at 56-58.  Additionally, while the Court concluded that CBP's consideration of its personnel's observations during the on-site verification were not arbitrary or capricious, it noted that "Customs may decide to provide further explanation regarding the truthfulness, reasonableness, or credibility of the evidence." *Id*. at 22-23.

While Aspects agrees with CBP's findings on remand regarding items (1) and (3) identified above, it maintains and demonstrates below that CBP's findings on the remaining two (2) items are inconsistent with the Court's Remand Order and instructions therein, and continue to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(A), (B).

Specifically, CBP ignored the Court's finding that "Customs' inclusion in the EAPA investigation of merchandise determined by the [U.S. Department of] Commerce [(hereinafter, "DOC" or "Commerce")] in the [December 31, 2019 Scope Ruling on the Order (hereinafter, "]Final Scope Ruling["]] to not be covered by the Order was not in accordance with the law" and failed to follow its instruction to conduct its redetermination by only including "merchandise within the scope of the Order in the EAPA investigation."  Remand Order at 44.  Instead, CBP

continued to find that "*all* entries by Aspects subject to the EAPA investigation contained covered merchandise" and based its conclusory finding on nothing but its erroneous drawing of "adverse inferences from the facts available on the record" against AFI.

CBP further disregarded the Court's Remand Order by completely failing to even analyze, let alone demonstrate by substantial evidence, that Aspects committed "evasion," as this term is defined in the EAPA statute and its implementing regulations. *See* 19. U.S.C. § 1517(a)(5)(A). Instead, CBP based its entire finding of evasion on an impermissible application of adverse inferences.

Accordingly, for the reasons set forth below, Plaintiff respectfully submits to the Court that CBP's Redetermination should not be sustained, as CBP failed to follow the Court's Remand Order and issued a redetermination of evasion that remains "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(A), (B).

## STANDARD OF REVIEW

A remand redetermination will not be sustained if that decision fails to comply with the terms of the court's remand order. *See, e.g., Trust Chem Co. v. United States*, 819 F. Supp. 2d 1373, 1378 (Ct. Int'l Trade 2012) (citation omitted). Further, when reviewing an EAPA determination, the court "shall examine . . . whether [CBP] fully complied with all procedures under subsections (c) and (f)" and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2).

/ / /

## ARGUMENT

**A. CBP's Remand Redetermination as to Aspects' Purported Evidence Destruction Continues To Be Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, as the Agency Fails to Explain How Such Evidence Has Any Relevance or Material Impact on Its "Evasion" Determination**

While finding that CBP's reliance on the evidence destruction claim outlined in CBP's On-Site Verification Report Enforce and Protect Act (EAPA) Case 7189 (Dec. 13, 2019) (hereinafter, "Verification Report") was not arbitrary and capricious, the Court afforded CBP an opportunity to provide an analysis consistent with the Administrative Procedure Act (hereinafter, "APA") regarding the truthfulness, reasonableness, or credibility of the evidence allegedly destroyed by AFI during CBP's verification visit at which the alleged document destruction occurred (hereinafter, "Verification Visit").

In sum, CBP's main reason in support of its reliance on the evidence destruction claim is that "CBP has no reason to doubt the truthfulness and credibility of personal observation of its employees." Redetermination at 8. In this respect, CBP further "explain" that CBP's employees are subject to CBP Standards of Conduct and that any wrongdoing by CBP employees could subject such employees to disciplinary action and potential removal from employment. *Id*. CBP's explanations are general, conclusory, and not tailored to the specifics of this EAPA Investigation or its underlying facts.

As a preliminary matter, it is not Aspects' intention, for purposes of this submission, to suggest that the CBP employees fabricated the evidence destruction incident intentionally. Notwithstanding, there are several factual factors which call into question the credibility of CBP's evidence destruction claim. First, while the Verification Visit took place from April 23, 2018, through April 27, 2018, CBP did not prepare its Verification Report until December 13, 2018—that is, CBP took eight (8) months to prepare a report outlining its factual findings

"following" its Verification Visit. Further, CBP did not share its Verification Report (albeit a heavily redacted, public version copy only), and thus its evidence destruction claim, with Aspects and/or its counsel until January 22, 2020—that is, it took CBP almost two (2) years to present AFI with a serious evidence destruction claim made against it, leaving AFI incapacitated to properly rebut such claim due to EAPA time constraints (given that the window for providing factual information had closed before CBP decided to place its Verification Report on the Administrative Record).

To make CBP's decision on this aspect even more questionable, CBP's own records indicate that the Verification Report has been ready and final as of December 13, 2018, and thus could have been shared with the parties to the EAPA Investigation in a timely fashion. CBP provides no reasons whatsoever as to why it chose to essentially hide a heavily cited document, which also contains a very detrimental claim against AFI, for more than one (1) full year. Finally, these alleged incidents of evidence destruction took place at the Aspects Nantong office, where Aspects' undersigned counsel was present the entire time. Not once did any of the CBP officials who allegedly witnessed such destruction address this issue with Aspects' counsel. Not once did these CBP officials demand AFI (or its counsel) to restore the allegedly deleted files—which, thankfully, would have been a simple endeavor, thanks to the advancements of technology. In other words, CBP treated this allegedly "egregious" destruction of evidence as a non—issue during the verification visit, hid it from AFI and its counsel for almost two (2) years, at which point it gave Aspects no real chance of rebutting or explaining these alleged incidents of evidence destruction.

In its Remand Order, the Court noted that CBP's Verification Report included a description of two (2) instances of alleged document destruction Yet, in its May 18

Determination, Customs acknowledged Aspects' arguments in the Final Administrative Determination but did not address them substantively, stating only that "[e]ven without this destruction of evidence, the administrative record still contains substantial evidence of actions taken by Aspects to underpay or avoid the payment of [antidumping] duties."

In its Comments opposing CBP's March 21, 2023 Draft Redetermination (hereinafter, "Draft Redetermination"), AFI argued that the agency provided no substantive explanation as to how AFI's alleged destruction of evidence contributed to a positive finding of "evasion," as technically defined under the EAPA statute, against AFI. In that respect, we argued that CBP's claim of evidence destruction was immaterial, as it does not have the capacity to impact either the "covered merchandise" requirement or any of the other elements that comprise the concept of "evasion" in the context of an EAPA investigation.  Responding to AFI's comments to its Draft Redetermination, CBP misinterpreted AFI's argument on this issue, by conflating the concept of "materiality," as related to the relevance of evidence (here, the relevance of the records allegedly destroyed), with the second evasion prong, which requires the existence of "material false statements, acts, or omissions."  19. U.S.C. § 1517(a)(5)(A).

As the Court noted in its Remand Order, under the APA, "[a]ny oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, **immaterial**, or unduly repetitious evidence." 5 U.S.C. § 556(d).  (Emphasis added). While the APA does not define the concept of "material" evidence, in this context it is understood as meaning evidence that has "rational probative force." *Richardson v. Peralas*, 402 U.S. 389, 407.  Accordingly, AFI's argument, which is made *in the alternative*, is that even if the destruction of evidence did occur—which we maintain it did not—the type of information

claimed to having been destroyed does not have any probative force towards the concepts of "covered merchandise" or "evasion."

Specifically, under EAPA, CBP investigates and determines "whether . . . covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A). Covered merchandise means merchandise that is subject to an antidumping and/or countervailing duty order. *Id*. § 1517(a)(3). Further, EAPA defines "evasion" as:

> entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

*Id*. § 1517(a)(5)(A).

CBP's Verification Report does not clearly identify what kind or kinds of "material" records were the subject of the alleged destruction, with one (1) exception: container loading drawings/plans. However, the type of information that is typically included in container loading plans is a brief description of the items transported in the subject container, as well as the quantity, expressed usually in cartons. *See, e.g.,* Verification Report, Aspects Nantong - On Site Visit Exhibit 2_Packing List (7189) – BC, BCD 285 at 4, PD 362. Arguably because container loading plans are purely logistical documents, ancillary to the importation of goods and with no individual value to CBP operations, they are not required to be presented to Customs with the submission of the entry summary packet. *See* 19 C.F.R. § 142.3 (*not* listing container loading plans amongst the documents that must be kept and presented to CBP for review upon request). Notwithstanding, Customs is indirectly provided with the information that is typically contained in container loading plans through required entry package documentation, such as packing lists

and commercial invoices. In this context, any of the information that is generally contained in container loading plans is repetitive, because it is contained in entry-related documentations provided to CBP in the importation process.

Here, CBP received complete entry documentation from two (2) independent sources—AFI and Wuxi Yushea Furniture Co. Ltd. (hereinafter, Wuxi Yushea).[2] The fact that CBP found certain discrepancies between the two (2) versions of documents it was provided with does not amount to evasion by itself. At most, it established some inadvertent misreporting, which is not sufficient to establish "evasion" under EAPA. Notwithstanding, the entry related documentation gives CBP all the information it needs to analyze and demonstrate, by substantial evidence, which AFI entries contained "covered merchandise," and whether AFI committed "evasion," within the meaning of the EAPA statute, with respect to any of those entries. And that is precisely what the Court, through its Remand Order, instructed CBP to do—and CBP failed to comply.  Remand Order at 44.

Finally, in responding to AFI's comments to its Draft Redetermination, CBP argues that "the destruction of evidence was significant because such actions prevented CBP from fully understanding the scope of Aspects' Nantong operations and which products from which manufacturers were exported to the United States."  However, CBP was able to, and factually did verify which products came from which manufacturers through evaluating the entry-related documentation it was provided with by Aspects and Wuxi Yushea.  The issue here is not CBP's inability to verify the information placed on the EAPA record due to Aspects' alleged lack of cooperation or destruction of evidence, but rather CBP's *unwillingness* to

---

[2] In fact, during the Verification Visit, CBP also received and reviewed container loading plans, some even older than 2016 (and thus well beyond EAPA's reach).  *See* Verification Report, Aspects Nantong - On Site Visit Exhibit 2_Packing List (7189) – BC, BCD 285 at 4.

properly analyze the thousands of documents that it was actually presented with and draw reasonable, reasoned conclusions. In other words, this is not a case of lack of cooperation, but instead one of "too much" cooperation for CBP to handle, so much so that CBP chose to abuse its discretion in interpreting the Administrative Record before it, ignore it completely, and base its general, conclusory determination on incorrectly applied adverse inferences, as further demonstrated below.

      **B. CBP's Finding of Evasion Against AFI Continues To Be Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Failed to Establish, by Substantial Evidence, Which of AFI's Subject Entries, if Any, Were Covered Merchandise at the Time they Were Made, as Required Under 19 U.S.C. § 1517(c)(1)(A)**

Under EAPA, while Customs must generally base its evasion determination on substantial evidence pursuant to 19 U.S.C. § 1517(c)(1)(A), Customs may "use an inference that is adverse to the interests of" the person alleged to have engaged in evasion or "a person that is a foreign producer or exporter" of the covered merchandise when "selecting from among the facts otherwise available" if that person "failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information." 19 U.S.C. § 1517(c)(3)(A). An adverse inference "may include reliance on information derived from . . . (i) the allegation of evasion . . .; (ii) a determination by [CBP] in another investigation, proceeding, or other action regarding evasion of the unfair trade laws; or (iii) any other available information." Id. § 1517(c)(3)(C).

On remand, Customs gravely misread and misunderstood this Court's Remand Order. Specifically, in its Remand Order, the Court found that, "[b]ecause Customs included both covered and non-covered merchandise in its EAPA investigation, the Court remands this matter for further consideration by Customs with instructions to only include merchandise within the

scope of the Order in the EAPA investigation. The Court suggests that on remand Customs may choose to revisit the scope determination and consider whether to make a new scope referral to Commerce, **or reconsider** Customs' adverse inference determination; regardless which path Customs chooses on remand, it is clear to the Court that only merchandise within the scope of the Order may be included in the EAPA investigation." Remand Order at 44. (Emphasis added). Customs did not revisit the scope determination on remand. Neither did the agency "reconsider" its adverse inference determination; in fact, Customs did the exact opposite.

Merriam-Webster Dictionary defines "to reconsider" as "to consider again especially with a view to changing or reversing" or "to consider something again." Reconsider, *Merriam-Webster Dictionary,* available at https://www.merriam-webster.com/dictionary/reconsider (last visited April 24, 2023). When read in conjunction with the Court's further clarification, it is clear that the Court instructed Customs to reconsider its adverse inference determination so as to differentiate between covered and non-covered merchandise. Customs plainly ignored these instructions; at best, it fundamentally misinterpreted them.

Specifically, in its Remand Order, the Court found that CBP disregarded Commerce's scope ruling issued in response to CBP's referral in the EAPA Investigation, by including non-covered merchandise in its finding of evasion, and remanded the matter to CBP for further consideration with instructions to only include merchandise within the scope of the Order in the EAPA Investigation. CBP failed to follow the Court's instructions, as its Draft Redetermination appears to claim that all of the items imported by AFl's in the entries covered by the EAPA Investigation were "covered merchandise." Indeed, CBP's findings on this aspect rely solely on its application of adverse inferences against AFI, but such application, in the context of the "covered merchandise" analysis, is not supported by the EAPA Administrative Record and goes

well beyond the legal framework set forth in the EAPA statute and regulations governing adverse inferences.

As demonstrated in our comments in opposition to CBP's Draft Redetermination, CBP's adverse inferences analysis, as fully adopted in its Redetermination with respect to the "covered merchandise" prong, is premised on contradictory statements and actions on CBP's end. Specifically, CBP notes that, because it "could not determine whether certain wooden bedroom furniture items imported by Aspects Furniture were covered by the Order," CBP referred the matter to Commerce for a determination as to whether six specific products imported by Aspects constituted covered merchandise." CBP further goes on to explain that it "did not include in the referral several other wooden bedroom furniture products where CBP was able to determine that they were covered by the scope of the Order." There are two (2) clear conclusions that follow logically CBP's statements: (1) CBP was able to determine, without issues, which items were "covered merchandise" and which were not, and (2) for "certain" items only, because CBP was unable to decide which of them were "covered merchandise" and which were not, CBP sought Commerce's help through its scope referral. Admittedly, for all the items imported by AFI that were not included in the Commerce scope referral, CBP was able to decide, before it made the referral, which were covered merchandise and which were not; had it not, then CBP's scope referral would have included even more items. However, when presented with Commerce's detailed findings, CBP decided to change its "strategy" and treat all of AFI's imported goods as "covered merchandise," including those that were clearly (and with a binding effect) identified by Commerce as "non—covered merchandise," and therefore outside of EAPA's reach. This is the very aspect that the Court instructed CBP to revisit on remand and CBP failed to do so.

Instead, CBP resorted to an excessive and impermissible application of adverse inferences against AFI.

One of CBP's reasons in support of its excessive adverse inferences is that "in reality," "absent a cargo examination, based on the documents alone, it is impossible to determine which of Aspects' entries do not contain covered merchandise." Redetermination at 25. CBP cites no authority in support of such a peculiar contention—nor could it, since most CBP investigations, EAPA being only one of them, usually take place after the cargo is unloaded and a physical examination by CBP is no longer possible. Therefore, deciding "based on the documents alone" is precisely what Customs is supposed to do and what this Court instructed Customs to do in its Remand Order.[3]

As CBP correctly notes in its Redetermination, under 19 U.S.C. § 1517(c)(3), if CBP finds that an importer, alleger, foreign producer or exporter, or a foreign government "has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information," CBP may, in making a determination of evasion "use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination."  However, when applying this provision in this case, CBP only took the first step set out under 19 U.S.C. §1517(c)(3), which is making an inference that is adverse to AFI's interests (and even this first step was excessive).  However, CBP did not finalize its adverse inferences analysis, as it failed to follow the second step, which is "selecting from among the facts otherwise available."

---

[3] It is worth noting that the recordkeeping requirement imposed on an importer is arguably intended to ensure that CBP has access to review the appropriate entry-related documents after the cargo (and the actual goods imported therein) is no longer available for physical examination. *See* 19 C.F.R. § 163 *et al.; see also* 19 C.F.R. § 142.3.

In this respect, even assuming, once again, for the sake of the argument, that CBP was correct to conclude that AFI did not cooperate to the best of its ability, CBP still does not explain how none of the other facts otherwise available on the record could help the agency discern which of the items imported by AFI constituted "covered merchandise" and which did not. Specifically, the documentation and records provided by Wuxi Yushea in the EAPA Investigation not only help with this task, but they confirm that, at a minimum, the items that appear on both AFI's and Wuxi Yushea's records were, indeed, manufactured and exported by Wuxi Yushea and imported by Aspects.

In its Redetermination, CBP attempts to dismiss this argument by claiming that "CBP found that Wuxi Yushea's documents also contained inconsistencies regarding weights and values of merchandise." Redetermination at 26. However, CBP's citation in support of this statement point to is finding in the Verification Report pursuant to which such inconsistencies were present in AFI's, not Wuxi Yushea's documentation. Verification Report at 9. CBP further argues, without merit, that "even if CBP were to find that the documents submitted by Wuxi Yushea were reliable, to the extent the weight, value, and merchandise descriptions on Wuxi Yushea's documents contradict the information on entry summaries submitted to CBP, Aspects - nevertheless made material false statements to CBP that resulted in reduction of applicable cash deposits being paid, and thus engaged in evasion under EAPA." Once again, CBP's logic (or lack thereof) ignores the fleet that the "material false statements" represent only one of the three (3) elements required for an affirmative finding of "evasion," and jumps to the unsupported conclusion that such alleged "material false statements," alone, demonstrate that AFI's actions "resulted in reduction of applicable cash deposits being paid, and thus [AFI] engaged in evasion under EAPA."

In consideration of the above, AFI continues to maintain that it cooperated and responded to all of CBP's requests for information to the best of its ability, therefore not warranting an application of adverse inferences against it. In the alternative, even if we were to assume that AFI failed to cooperate to CBP's satisfaction, which we continue to assert it did not, CBP would be bound, by statute, to draw its inferences from the "facts otherwise available" on the EAPA record which, as demonstrated above, comprise mainly of the records CBP obtained from Wuxi Yushea, a fully cooperating party, during the EAPA Investigation.  CBP's Redetermination largely ignores these records and pretends they do not exist, making its "covered merchandise" analysis and conclusions arbitrary, capricious, and not in accordance with law.

**C. CBP's Finding of Evasion Against Aspects Continues To Be Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law, Because CBP Failed to Demonstrate, by Substantial Evidence, that Aspects Avoided Payment of "Applicable" Antidumping Cash Deposits or Other Security, as Required Under 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1 / CBP's Finding of Evasion Cannot be Sustained because CBP Continues to Misinterpret and Misapply the Plain Language of  § 1517(a)(5)(A)**

As indicated above, evasion is defined as follows under EAPA:

> entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

*Id.* § 1517(a)(5)(A).

In its Remand Order, the Court deferred its substantive analysis of Customs' evasion determination "until alter the Government provides its remand results, when there will presumably be more clarity as to what merchandise is properly included in the EAPA investigation according to the statutory requirements and in conformity with this opinion." Remand Order at 44.  The Court further clarified that it "expects that the remand results will

address the **evasion analysis** only for merchandise that is within the scope of the relevant antidumping duty order." *Id*. (Emphasis added). CBP's Redetermination is devoid of any analysis of the concept of "evasion." Instead, CBP's Redetermination illegally expands[4] its adverse inference findings, which is what it utilizes in support of its affirmative determination of evasion.

CBP's dedication to continue to ignore the fact that "evasion" is a term-of-art, and specifically defined in the EAPA statute and its implementing regulations, and comprised of specific elements, despite this Court's clear instructions to "address the evasion analysis" on remand, is the very definition of abuse of discretion. Indeed, the EAPA statute grants CBP increased discretionary powers with respect to certain aspects of an EAPA investigation. However, those discretionary powers do not mean that Customs can ignore the fact that "evasion," in the EAPA context, is not established by any kind of wrongdoing, but instead it is a very specific concept, comprised of clear, individual elements, which must be demonstrated by CBP one by one, each by substantial evidence, in order for an affirmative determination of "evasion" to be supported and survive judicial review.

In its Redetermination, as was the case with both its Initial Determination and Review Determination, CBP did not articulate a satisfactory explanation for its finding that Aspects

---

[4] In its Final Administrative Determination, CBP stated that "[e]ven without this destruction of evidence, the administrative record still contains substantial evidence of actions taken by Aspects to underpay or avoid the payment of [antidumping] duties." See Final Admin. Determination at 6, 8. Indeed, Customs' R&R asserted that this "destruction of evidence" was not needed in order to establish substantial evidence of evasion against AFI. Notwithstanding, this alleged "destruction of evidence" incident sits at the core of CBP's Redetermination and is the only "analysis" of evasion that can be discerned from CBP's Redetermination. Not only did CBP erroneously interpreted the Court's Remand Order as an invitation to add to its initial applications of adverse inferences against AFI, but CBP's entire analysis and application of the adverse inferences provision goes well beyond the statutory and regulatory construction of such provision.

avoided the payment of applicable antidumping cash deposits—in fact, CBP did not articulate *any* explanation at all on this aspect. Accordingly, since CBP ignored the Court's instruction to "address the evasion analysis only for merchandise that is within the scope of the relevant antidumping duty order," as it did not address the "evasion analysis" in any way, Aspects incorporates by reference herein its substantive arguments and claims raised in its Motion for Judgment on the Agency Record and its Reply in support of the third evasion element, as well as any other substantive aspects that were not properly addressed by CBP in its Redetermination and for which the Court deferred consideration in anticipation of CBP's Redetermination.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court reject Customs' Redetermination, on the basis that it fails to comply with the terms of the Remand Order, and it continues to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
            lmoya@rwsnyderlaw.com

Counsel for Plaintiff ASPECTS
FURNITURE INTERNATIONAL, INC.

Dated: **April 24, 2023**
        Irvine, CA