IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |  |
|---|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 20-03824 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) ) | |

DEFENDANT'S COMMENTS IN SUPPORT
OF AGENCY REMAND REDETERMINATION

<br>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

DOUGLAS G. EDELSCHICK
Of Counsel:                                            Senior Trial Counsel
                                                             Commercial Litigation Branch
TAMARI LAGVILAVA                          Civil Division
Attorney (Enforcement and Operations)   Department of Justice
Office of Chief Counsel                          P.O. Box 480
U.S. Customs and Border Protection       Ben Franklin Station
1300 Pennsylvania Avenue, N.W.           Washington, D.C. 20044
Washington, D.C.  20229                        Tel: (202) 353-9303

May 22, 2023                                          Attorneys for Defendant United States

## <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES .................................................................................................. ii

BACKGROUND ............................................................................................................... 1

I.  The EAPA Investigation ..................................................................................... 2

    A.  The Notice Of Initiation Of The Investigation .................................... 3

    B.  The Verification Process ....................................................................... 3

    C.  The Covered Merchandise Referral To Commerce ............................... 4

II.  The May 2020 Initial Determination .................................................................. 5

III.  The September 2020 Final Determination .......................................................... 6

IV.  The Court's Remand Order ................................................................................ 10

V.  The Remand Redetermination ........................................................................... 10

ARGUMENT .....................................................................................................................

I.  Standard Of Review .......................................................................................... 14

II.  The Court Should Sustain The Remand Redetermination ................................. 15

    A.  The Credibility Challenge To Customs' Document Destruction Findings Is Without Merit ....................................................................................... 16

    B.  The Remand Redetermination Only Addresses Covered Merchandise ............... 19

    C.  Aspects's Renewed Duty Evasion Arguments Are Incorrect .............................. 23

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page(s):**

*Agro Dutch Indus., Ltd. v. United States*, 508 F.3d 1024 (Fed. Cir. 2007)..................................16

*Campbell v. Merit Sys. Prot. Bd.*, 27 F.3d 1560 (Fed. Cir. 1994) .................................15

*Cleo Inc. v. United States*, 501 F.3d 1291 (Fed. Cir. 2007) ....................................14-15

*Consol. Bearings Co. v. United States*, 412 F.3d 1266 (Fed. Cir. 2005) .....................................14

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) .........................16

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) .................................14

*Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) .............................16

*Daewoo Elecs. Co., Ltd. v. United States*, 6 F.3d 1511 (Fed. Cir. 1993).....................................15

*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140 (Fed. Cir. 2013) ........................................16

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ......................14, 15

*Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375 (Fed. Cir. 2008).........................17

*Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247 (Fed. Cir. 2009) .......................14

*PAM, S.p.A. v. United States*, 582 F.3d 1336 (Fed. Cir. 2009) ....................................14

*Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021)................21

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001)...................................14

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005)..........................................14

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998)......................................14

**Statutes And Regulations:**

5 U.S.C. § 556.........................................................................................................................18

19 U.S.C. § 1517................................................................ 1, 2, 4, 5, 11, 14, 18, 21

28 U.S.C. § 2637.............................................................................................................16-17

**Administrative Determinations:**

*Wooden Bedroom Furniture from China*, 70 Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005)...1

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC.,           )<br>)<br>)<br>Plaintiff,         )<br>)<br>v.          )<br>)<br>UNITED STATES,      )<br>)<br>Defendant.      )<br>) | Court No. 20-03824 |

DEFENDANT'S COMMENTS IN SUPPORT
OF AGENCY REMAND REDETERMINATION

Pursuant to the Court's November 28, 2022 opinion and order (Remand Order), defendant, the United States, respectfully submits these comments in support of the final remand redetermination by U.S. Customs and Border Protection (Customs or CBP), and in response to the comments filed by plaintiff, Aspects Furniture International, Inc. (Aspects).  Pl. Comments in Opp'n to Agency Remand Redetermination, April 24, 2023, ECF No. 37 (Pl. Comments); CBP Final Remand Redetermination, March 27, 2023, ECF No. 36 (Remand Redetermination); Remand Order, Nov. 28, 2022, ECF No. 31.  Customs complied with the Remand Order and the Court should sustain the remand redetermination.

BACKGROUND

In January 2005, the Department of Commerce (Commerce) issued an antidumping duty order covering wooden bedroom furniture from the People's Republic of China (China). *Wooden Bedroom Furniture from China*, 70 Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005) (antidumping duty order) (the Order).  In 2016, Congress passed the Enforce and Protect Act (EAPA), codified at 19 U.S.C. § 1517, which established a formal administrative procedure for

Customs to investigate allegations of evasion of antidumping and countervailing duty orders as part of the United States' efforts to ensure a level playing field for domestic industries.  Aspects imports certain wooden bedroom furniture from China.  In 2020, Customs issued *Aspects Furniture International, Inc.*, EAPA Case No. 7189 (CBP Sept. 24, 2020) (Final Determination) (PR 12002-12),[1] a final determination by the Office of Trade, Regulations & Rulings (ORR), which affirmed an initial determination of evasion under 19 U.S.C. § 1517(c) by the Trade Remedy & Law Enforcement Directorate (TRLED), *Aspects Furniture International, Inc.*, EAPA Case No. 7189 (CBP May 18, 2020) (Initial Determination) (PR 11919-28; CR 10827-36).

I.      The EAPA Investigation

In May 2017, Customs initiated an EAPA investigation following an allegation submitted by the American Furniture Manufacturers Committee for Legal Trade (AFMC).  Final Determination 1-2; Initial Determination 1.  AFMC had alleged that Aspects was misreporting on its entries the identities of the actual producers of merchandise subject to the Order for the purpose of evading the payment of antidumping duties.  Final Determination 2; Initial Determination 1-2.  Specifically, AFMC had alleged that Aspects purchased both covered and non-covered merchandise from manufacturers subject to the China-wide rate, but on the entry documents, Aspects identified a different manufacturer with either a low or zero percent rate, to evade payment of the correct antidumping duties.  Final Determination 2.

---

[1] Citations to the public record (PR) and confidential record (CR) refer to the public (ECF No. 17) and confidential (ECF No. 16) versions of the administrative record (AR) filed in this Court.  Citations to the Remand PR refer to the remand AR (ECF No. 36-3) filed in this Court.

A.      The Notice Of Initiation Of The Investigation

In August 2017, Customs issued a notice of initiation and interim measures to all interested parties, announcing a decision to impose interim measures based upon reasonable suspicion that Aspects had entered covered merchandise into the United States through evasion. Final Determination 3; *see also* CR 3900-05 (Initiation Notice).  Prior to the receipt of AFMC's allegation, Customs already had been reviewing all of Aspects's entries for the 2016 calendar year for potential avoidance of antidumping duties.  Final Determination 3.  Under these circumstances, Customs chose to align the scope of the EAPA investigation with that of the existing review.  *Id.*

B.      The Verification Process

During the investigation, Customs issued requests for information (RFIs) to Aspects and several Chinese companies associated with Aspects's entries.  Initial Determination 3.  Customs later conducted onsite verifications of Aspects and two other companies (Wuxi Yushea and Nantong Fuhuang) that submitted RFI responses.  *Id.*; CR 10010-40 (Verification Report); *see also* CR 9427-10008 (exhibits to Verification Report).  The Customs verification team spent several days at each company and (1) interviewed company officials about their company operations and record keeping, (2) toured the facilities of each company, and (3) reviewed original records to verify the RFI responses.  CR 10012-13.  Thereafter, the Customs verification team prepared an 18-page report (not including lengthy appendices and exhibits), which detailed the "relevant facts obtained and pertinent observations."  CR 10013.

The verification report provides a detailed account of interviews and documents that showed how Aspects "co-mingled merchandise," created "multiple versions of invoices," created "descriptions of merchandise on documentation" that "often differed from those documents

- 3 -

submitted by the manufacturers," and "manipulated the per unit price" on entry documents.  CR 10013-24.  The verification report also describes two separate incidents when an Aspects employee "actively deleted and destroyed documents and correspondence related specifically to the container loading and shipment."  CR 10026-27.  During the first incident, upon questioning of an Aspects employee about container loading, and while members of the Customs verification team were standing behind him, the Aspects employee "deleted" a communication "chat record" for an employee at Wuxi Yushea.  CR 10025.  During the second incident, upon asking the same Aspects employee "to provide samples of the computer loading plans and spreadsheets," a member of the Customs verification team "saw him delete dozens of files from his computer."  CR 10026.

      C.    <u>The Covered Merchandise Referral To Commerce</u>

During the course of an EAPA investigation, when Customs is unable to determine whether the merchandise at issue is covered merchandise, Customs must refer the question to Commerce for assistance.  19 U.S.C. § 1517(b)(4)(A).  During the investigation at issue, Customs referred to Commerce the question of whether six particular products were covered by the scope of the Order, and Commerce issued a scope ruling finding that two of the six products (credenzas/dressers and console/custom dressers) were covered.  Final Determination 3-4; *see also* Initial Determination 3; CR 10653-88 (Commerce's response to covered merchandise referral and scope ruling).  In addition to the products that Commerce found to be covered merchandise, the EAPA investigation by Customs also covered other products that "were clearly within the scope of the order" and were not referred to Commerce.  Final Determination 4; *see also id.* at 8-9.

II.     The May 2020 Initial Determination

After considering submissions of written argument by interested parties, in May 2020, Customs issued an initial determination.  Initial Determination 3.  In the initial determination, Customs found "there is substantial evidence that covered merchandise entered the United States through evasion, resulting in the reduction or avoidance of applicable [antidumping duty] cash deposits or other security."  *Id.* at 4.  Customs explained that "[e]vasion is defined as 'the entry of covered merchandise into the customs territory of the United States for consumption by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security of any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.'"  Initial Determination 4 (quoting 19 U.S.C. 1517(a)(5)(A)); *see also* Final Determination 5, 7 (same).

Customs also made specific findings based on the onsite verifications of the companies that submitted RFI responses.  Initial Determination 4.  For example, Customs found that "there were shipments to [Aspects] for which the manufacturer of the merchandise could not be identified, merchandise was described inaccurately on invoices, and there were errors in the valuation of merchandise."  *Id.*  Customs elaborated that "[s]ome of these problems were associated with different consolidated shipments of commingled merchandise identified as originating from multiple manufacturers, and during the verification of [Aspects], there were multiple instances in which one employee involved with the commingling process was observed deleting and destroying information when such commingling was under discussion."  *Id.* Customs also found that it had "obtained invoices from the manufacturers that differed from the invoices [Aspects] provided to [Customs] with its entries and later, when requested to provide

supporting commercial documents," and that the verifiers observed "numerous discrepancies in weight and value between various sales and shipping documents from [Aspects], the freight forwarders, and the foreign manufacturers." *Id.*

Customs ultimately concluded that it was "unable to verify that the stated manufacturers on [Aspects's] entry documentation were in fact the manufacturers of the subject merchandise." Initial Determination 4.  The initial determination includes more than three pages of "specific details" that support the conclusions by Customs that Aspects had made errors and inaccuracies, commingled merchandise, and destroyed evidence. *Id.* at 4-8.  Customs also rejected Aspects's argument that the "misreporting" was "inadvertent," because Aspects's "changing of merchandise descriptions from products that would fall within the scope . . . to ones that would fall outside the scope . . . goes beyond inadvertent misreporting, and instead evidences evasion of the applicable order." *Id.* at 9.  Aspects subsequently requested further administrative review of the initial determination. *See* Final Determination 11.

III.   The September 2020 Final Determination

In September 2020, Customs issued a final determination after considering all of the issues "*de novo*" based on a review of the entire administrative record.  Final Determination 4, 8.  As a threshold matter, Customs considered Aspects's argument that EAPA could not apply to entries dated prior to August 22, 2016, or the effective date of the statute. *Id.* at 8.  Customs explained, however, that the vast majority of Aspects's entries that were reviewed during the onsite verification process (25 of 28) entered the United States after the effective date of EAPA.[2] *Id.*; *see also* CR 10012 (entries list in verification report).  Customs further clarified that its decision "relies only on entries made after the effective date of EAPA." *Id.*

---

[2] Customs later determined that all of the pre-EAPA entries that were the subject of the investigation were liquidated on or before August 21, 2018.  Remand Redetermination 5-6.

Next, Customs addressed Aspects's argument that "no evasion occurred."  Final Determination 8.  Customs found that "the furniture items involved in these importations are covered merchandise . . . , including, but not limited to, nightstands, dressers, armoires, and headboards."  *Id.*  Customs added that Aspects "ha[d] not disputed that the importations consist of covered merchandise" and "that the entry documents may have contained false information." *Id.*

Customs further explained that the "administrative record in this case is replete with examples of the different ways in which [Aspects] manipulated shipments of covered merchandise in ways that would affect the [antidumping] duties applied to each entry and would therefore indicate evasion," referencing the many detailed examples set forth in the initial determination and the verification report.  Final Determination 8.  Specifically, Customs found that Aspects's entry documents "did not accurately reflect what the shipments contained, who manufactured the goods, and their correct values."  *Id.*  Customs also found that "the administrative record *still* contains substantial evidence of actions taken by [Aspects] to underpay or avoid the payment of [antidumping] duties" even "without" consideration of the "destruction of evidence" by Aspects during the onsite verification process.  *Id.*

Moreover, Customs found that Aspects employees had "admitted" during the verification that they "created separate invoices and packing lists for CBP purposes," and those "did not match" the invoices provided by the Chinese manufacturers that participated in the verification. Final Determination 9.  Specifically, the phony invoices "contained misdescribed and/or additional merchandise that was not found on [the real] invoices provided by the two manufacturers for the same entry."  *Id.*  Customs explained that "[t]hese misdescriptions were done in such a way to make it seem as though covered merchandise (*i.e.*, described by [the

manufacturer] as a 'nightstand') was not covered by the [antidumping] duty order (*i.e.*, described by [Aspects] as 'end table')." *Id.* Moreover, Customs "discovered" that entry no. XXX-XXXX5073 "(dated after the effective date of EAPA) was filed as a type 01 consumption entry when the shipment contained in-scope [wooden bedroom furniture], specifically headboards" that "were misdescribed in the entry package as wall panels, which would not have been subject to [antidumping] duties." *Id.* Customs added that "photographs included with the documents provided during the investigation clearly show a headboard." *Id.*

Customs also elaborated on the "commingling" of merchandise and false descriptions of the manufacturers listed on the entry documents. Final Determination 9. Specifically, Customs found that the "manufacturers told CBP officials during the verification that containers bound for [Aspects] had arrived at their facilities partially filled with goods from other manufacturers and that this occurred on multiple occasions." *Id.* "At the same time, the verification revealed that [Aspects] would create the loading plans for the containers that arrived at both Wuxi Yushea and Nantong Fuhuang, which the manufacturers followed." *Id.* "Despite the presence of goods manufactured by different companies, [Aspects] would only declare one manufacturer, either Wuxi Yushea or Nantong Fuhuang, on the entry documents." *Id.*

Customs found still more misrepresentations by Aspects pertaining to "weights and values for the merchandise." Final Determination 9. Specifically, Customs found that "[t]he number of cartons and weight of the shipment found on the manufacturer's export form were lower than on the bill of lading provided to CBP by [Aspects]." *Id.* Because "this would affect the value of the shipment, at times, the unit prices of the merchandise were adjusted downward so that the documents provided by the manufacturer still showed the same value as those provided by [Aspects]." *Id.* Customs also found that Aspects "had, at times, additional

involvement in Wuxi Yushea's manufacture of this merchandise; however, there is no evidence that [Aspects] included any assists it provided to either manufacturer in the declared value of the merchandise as required pursuant to 19 C.F.R. § 141.86." *Id.*

Next, Customs addressed Aspects's argument that no duties were evaded.  Final Determination 10.  According to Aspects, regardless of any misstatements, (1) Wuxi Yushea was subject to a zero percent antidumping duty rate as an exporter/producer, such that none of Wuxi Yushea's merchandise was subject to duties; and (2) Nantong Fuhuang was subject to the China-wide rate of 216.01 percent, which is the highest rate possible, such that commingled merchandise from other manufacturers would not have resulted in an evasion of duties. *Id.*  In other words, Aspects argued that misstatements about the type of merchandise did not matter for entries that listed Wuxi Yushea as the manufacturer, and misstatements about the manufacturer did not matter for entries that listed Nantong Fuhuang as the manufacturer. *See id.*  Customs rejected these arguments because Aspects had made *multiple* misstatements with respect to these entries. *Id.*  Specifically, with respect to entries listing Wuxi Yushea's merchandise, Customs found that Aspects also had made misstatements about the manufacturer (the commingling issue), thus reducing the amount of antidumping duties that would have been assessed on other merchandise from other manufacturers. *Id.*  Likewise, with respect to entries listing Nantong Fuhuang as the manufacturer, Customs found that Aspects also had made misstatements about the weight, price per unit, and value declared for shipments of merchandise, thus reducing the amount of antidumping duties that are assessed on an *ad valorem* basis under the Order. *Id.*  Customs reiterated that its findings were based on entries from after EAPA's effective date. *Id.*

For these reasons, Customs concluded that Aspects had entered covered merchandise into the United States through evasion of the Order.  Final Determination 11.  This appeal followed.

IV.     The Court's Remand Order

After briefing on the merits, in November 2022, the Court sustained the final

determination in part and remanded it in part.  Rejecting several challenges by Aspects, the Court

held that (i) Customs did not abuse its discretion when it disregarded certain affidavits submitted

by Aspects, (ii) Customs did not deprive Aspects of due process by imposing interim measures,

and (iii) Customs did not unlawfully combine the EAPA investigation with a regulatory audit.

Remand Order 17-28, 45-48, 52-57.  The Court remanded the evasion determination to the extent

that it retroactively applied to pre-EAPA entries.  *Id.* at 10-17, 56.  The Court also remanded the

evasion determination insofar as it included non-covered merchandise and authorized Customs to

reconsider making an adverse inference determination.  *Id.* at 28-44.  The Court also held that

Customs failed to provide sufficient public summaries of confidential documents.  *Id.* at 49-52.

Because the Court already was ordering a remand, the Court invited Customs to provide further

explanation on remand regarding the truthfulness, reasonableness, or credibility of the evidence

regarding document destruction by Aspects.  *Id.* at 22-23.

The Court subsequently granted a motion by Aspects to vacate the portion of the Remand

Order that directed Customs to remedy the failure to provide public summaries of confidential

documents on remand.  Order, Dec. 23, 2022, ECF No. 33.  The Court also clarified that

Customs is not required to address or remedy the lack of public summaries of redacted

information on remand.  Order, Dec. 23, 2022, ECF No. 35.

V.      The Remand Redetermination

In March 2023, Customs issued the remand redetermination (1) clarifying the evasion

determination with respect to pre-EAPA entries; (2) reconsidering the evasion determination to

include only covered merchandise; and (3) providing further explanation regarding the

truthfulness, reasonableness, and credibility of evidence pertaining to document destruction by Aspects. Remand Redetermination 1-27. Specifically, Customs clarified that the evasion determination did not apply to any Aspects entries made prior to EAPA, because all 39 of those entries had been liquidated by August 21, 2018, and Aspects did not protest the final liquidation of those entries. *Id.* at 4-6. Customs further explained that the agency found the statements in the verification report regarding document destruction by Aspects to be truthful and credible, elaborating that the agency officials who witnessed document destruction by Aspects were experienced professionals and were subject to the highest standards of ethical and professional conduct when they prepared the verification report in this matter. *Id.* at 6-9.

Next, Customs clarified that it "does not purport to find evasion with respect to any entries that it finds do not contain covered merchandise." Remand Redetermination at 10-11. Nevertheless, upon reconsideration and for the first time in this EAPA proceeding, Customs determined to draw adverse inferences from the facts otherwise available on the record pursuant to 19 U.S.C. § 1517(c)(3). *Id.* at 11. Customs found that Aspects, through its satellite office in China, Aspects Nantong, failed to cooperate to the best of its ability when it "destroyed information in response to CBP inquiries relating to what merchandise was shipped, and by which manufacturer," during the on-site verification. *Id.* at 11-12. "By destroying evidence, Aspects's staff intentionally withheld information" from Customs, and as such, the agency that Aspects failed to cooperate to the best of its ability. *Id.* at 12. As a result, Customs found that it "was unable to obtain critical information regarding Aspects's imports of wooden bedroom furniture" to reconcile "inaccurate" and "inconsistent" descriptions of the merchandise, manufacturers, valuations, quantities, and weights. *Id.* at 12-17.

Customs also found that "[f]acts otherwise available on the record indicate that Aspects systematically misrepresented the descriptions of merchandise in the entry documents, such that [the agency] cannot trust the veracity of *any description* of imported merchandise, and specifically, which particular entries include covered merchandise."  Remand Redetermination 13 (emphasis supplied).  Customs found that the "misrepresentations on Aspects's entry documents" and "internal shipping and sales documents were pervasive."  *Id.* at 16.  Customs thus found that it was "unable to rely on Aspects's entry, sales, and shipping documents to determine which of Aspects's entries contained covered merchandise, and which did not."  *Id.* at 12; *accord id.* at 16.  Customs reiterated that "the true nature of the merchandise contained in the shipments cannot be determined by review of the documents submitted by Aspects and its manufacturers."  *Id.* at 16.  "In other words," while Customs agreed with "Commerce's decision as to which products are covered merchandise and which are not," Customs could not "rely on the veracity of Aspects's descriptions to have properly designated which entries contain which products."  *Id.* at 13.  Customs emphasized that its reliance upon Commerce's scope ruling as to which *specific types* of furniture were covered by the Order, was "separate and distinct" from whether, "*in reality*," Aspects entries actually contained covered merchandise or non-covered merchandise.  *Id.* at 24-25 (emphasis in original).  As Customs explained, the "record evidence does not allow CBP to discern which *entries* contain covered merchandise and which do not." *Id.* at 25 (same).

Given the intentional destruction of evidence by Aspects and the systematic and pervasive misrepresentations in Aspects documents, Customs determined to rely upon "inferences that are adverse to Aspects's interests" and "facts otherwise available on the record to find that all of Aspects's entries subject to the EAPA investigation, between August 22, 2016

and May 18, 2020, contained covered merchandise." *Id.* at 12-13, 16-17.  Accordingly, Customs continued to find that "Aspects evaded the Order by importing covered merchandise into the United States through evasion." *Id.* at 17.

Customs also addressed the comments submitted by Aspects during the remand.  Remand Redetermination 20-26.  As a threshold matter, Aspects agreed with the agency's finding that the evasion determination did not apply to any pre-EAPA entries, *id.* at 20, thus confirming that the retroactivity question was not an issue.

Customs also rejected an argument by Aspects that the destruction of evidence is "immaterial to the finding of evasion."  Remand Redetermination 20-21.  Customs explained that the "egregious" destruction of evidence "was significant because such actions prevented CBP from fully understanding the scope of Aspects's Nantong operations and which products from which manufacturers were exported to the United States." *Id.* at 21-22.  Customs found that the destruction of evidence was "significant to CBP's finding of lack of cooperation by Aspects and to the drawing of adverse inferences," and the "purpose of the adverse inference provision in EAPA is to deter exactly the type of conduct that Aspects employees engaged in during the verification." *Id.* at 22-23.  Customs also found "it is reasonable to infer that the evidence would have been material," because Aspects "felt compelled to prevent CBP from reviewing such evidence by destroying it," and "the nature of at least some of the documents that were destroyed (i.e., the container loading documents) render the documents highly relevant to the issues presented in this EAPA investigation." *Id.* at 23.  Although Aspects did provide many documents that were not destroyed, Customs reiterated its finding that these "documents were replete with false information" as outlined in the remand redetermination, the verification report, the initial determination, and the final determination. *Id.*

- 13 -

ARGUMENT

I.   Standard Of Review

In reviewing CBP's evasion determinations, this Court examines "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  19 U.S.C. § 1517(g)(2).  "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors."  *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

With respect to factual findings, "substantial evidence" is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009).  Substantial evidence may be "'less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966)); *accord Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1260-61 (Fed. Cir. 2009) (sustaining agency's decision, "[d]espite some conflicting evidence," as being "supported by substantial evidence"); *Cleo Inc. v. United States*, 501 F.3d 1291, 1298 (Fed. Cir.

- 14 -

2007) (agency's conclusion was supported by "substantial evidence," despite "mixed evidence" and a "close" case "on the facts," because "a reasonable factfinder . . . could conclude from the evidence" the same as the agency had concluded).

Substantial evidence also may include "reasonable inferences from the record." *Matsushita*, 750 F.2d at 933. The substantial evidence "test requires courts to defer as long as the record contains evidence from which one reasonably could draw [a] challenged inference – even though there is other evidence which, if believed, would permit the contrary inference." *Campbell v. Merit Sys. Prot. Bd.*, 27 F.3d 1560, 1564 (Fed. Cir. 1994) (citing *Matsushita*, 750 F.2d at 933); *accord Daewoo Elecs. Co., Ltd. v. United States*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) ("The question is whether the record adequately supports the decision of the [agency], not whether some other inference could reasonably have been drawn.").

II.   The Court Should Sustain The Remand Redetermination

The remand redetermination complied with the Court's Remand Order and also corrected and clarified several important aspects of Customs' analysis. Most significantly, for the first time, Customs drew adverse inferences against Aspects based upon facts otherwise available in accordance with the EAPA statute. As Customs found and explained in detail, Aspects intentionally destroyed evidence and provided Customs with unreliable documents during the verification process. Aspects did not even come close to cooperating to the best of its ability. Aspects's brazen conduct threatened to undermine the integrity of the verification process itself. Now, after remand, Aspects advances numerous arguments that quibble with credibility findings and overlook detailed explanations provided by Customs. As demonstrated below, the Court should sustain the remand redetermination.

A.     The Credibility Challenge To Customs' Document Destruction Findings Is Without Merit

Aspects concedes that the Court already has held that it was neither arbitrary nor capricious for Customs to consider evidence of Aspects's document destruction.  Pl. Comments 4.  At the Court's invitation, Customs provided further explanation on remand regarding the truthfulness, reasonableness, and credibility of the evidence regarding document destruction, and Aspects takes issue with it, somewhat.  On the one hand, Aspects does not "suggest that the CBP employees fabricated the evidence destruction incident," but Aspects still questions "the credibility" of the agency officials who observed it.  *Id.*

The "credibility" arguments by Aspects are waived and are specious in any event.  For example, Aspects argues that the agency's observations of document destruction lack credibility because it took 7.5 months for Customs to prepare the verification report, Customs did not share a redacted version of the report with Aspects until January 2020, and Customs did not disclose the issue of document destruction to Aspects sooner.  Pl. Comments 4-5.  Yet, despite the Court's express admonition to articulate administrative arguments clearly on remand to avoid waiver disputes in the future, Aspects did not make any of these credibility arguments in its comments before Customs on remand, and therefore it failed to exhaust them.[3]  *See* 28 U.S.C.

---

[3] Likewise, Aspects does not rely upon any of the limited exceptions to the exhaustion doctrine – for a pure question of law, futility, or no opportunity to exhaust – and those exceptions do not apply here.  *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013) (futility exception); *Agro Dutch Indus., Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007) (pure question of law exception); *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003-04 (Fed. Cir. 2003) (no opportunity to exhaust exception).  The credibility of record evidence is not a pure question of law.  Likewise, there can be no suggestion that Aspects lacked an opportunity to submit comments, or that it would have been futile for Aspects to raise its credibility arguments, given that Aspects submitted comments on the draft remand redetermination, *see* PR 11; PR 10, and Customs addressed the comments that Aspects did submit.  Remand Redetermination 20-26.  Indeed, Aspects does not argue in this Court that any of the exceptions to the exhaustion requirement apply, thus waiving any such argument.  *See Corus Staal BV v. United States*, 502 F.3d 1370, 1378 n.4 (Fed. Cir. 2007) (holding that Corus

§ 2637(d) ("In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."); *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); Remand Order 33 n.4 ("[T]he Court cautions the Parties to articulate their administrative arguments clearly in order to avoid similar disputes of waiver in the future."); Remand PR 11 (Aspects's comments on draft remand redetermination); Remand PR 10 (draft remand redetermination).

In any event, the fact that Customs officials took 7.5 months to meticulously detail their observations and findings in a lengthy report does not undermine its credibility.  CR 10010-40 (Verification Report).  To the contrary, Customs found the statements in the verification report regarding document destruction by Aspects to be truthful, reasonable, and credible, because the agency officials who personally witnessed the document destruction by Aspects were experienced professionals and were subject to the highest standards of ethical and professional conduct.  Remand Redetermination 6-9.  Furthermore, the timing of the disclosure of the redacted verification report to Aspects during the ordinary course of the investigation process has no bearing upon the credibility of the report itself.  Notably, Aspects does not (and cannot) cite to any statute or regulation that would have required Customs to prepare or disclose the verification report any sooner.  Likewise, there was no legal requirement for Customs officials announce – right on the spot – that they had caught Aspects in the act destroying evidence.  *See*

Staal waived an argument in its reply brief, that the pure question of law exception applied, by failing to raise it in the opening brief).

CR 10026-27 (Verification Report). These facts were disclosed properly in due course during the investigation.

Aspects also argues that the records it destroyed were not "material false statements, acts, or omissions" for purposes of a finding of "evasion" under 19 U.S.C. § 1517(a)(5)(A). Pl. Comments 5-7. However, Customs did not find that Aspects entered merchandise into the United States by means of *the* destroyed documents or by means of a false statement or omission *in* the destroyed documents. Rather, Customs found that Aspects entered merchandise by means of false entry documentation. Customs did not find any destruction of entry documentation. Rather, Customs found that Aspects intentionally destroyed relevant documents on two separate occasions during the onsite verification that prevented the agency from ascertaining the truth of the entry documentation, and Customs further found that the entry documentation itself was replete with false and inconsistent statements. Remand Redetermination 7-26; CR 10010-40 (Verification Report). In sum, Aspects's reliance upon the definition of "evasion" in section 1517(a)(5)(A) is misplaced because that definition does not impose any limitation on the agency's authority to draw adverse inferences against a party that fails to cooperate to the best of its ability pursuant to section 1517(c)(3).

Next, Aspects argues that the destroyed documents were "immaterial" for purposes of 5 U.S.C. § 556(d), which provides that an agency may limit the admission of hearsay evidence that is "irrelevant, immaterial, or unduly repetitious." Pl. Comments 6-7. However, Customs explained that the "egregious" destruction of evidence (to include "dozens of files") "was *significant* because such actions prevented CBP from fully understanding the scope of Aspects's Nantong operations and which products from which manufacturers were exported to the United States." Remand Redetermination 20-22 (emphasis supplied); *see also id.* at 12-13. Customs

specifically found "it is reasonable to infer that the evidence would have been *material*," because Aspects "felt compelled to prevent CBP from reviewing such evidence by destroying it," and because "the nature of at least some of the documents that were destroyed (*i.e.*, the container loading documents) render the documents *highly relevant* to the issues presented in this EAPA investigation." *Id.* at 23 (emphasis supplied). Aspects responds that the destroyed documents were immaterial because it provided many documents that were not destroyed, but Customs rejected this argument because these "documents were replete with false information" and were "unreliable." *Id.* at 13-14, 16, 23; *see also* Pl. Comments 8-9. Evidence of intentional document destruction was highly significant to Customs in drawing adverse inferences against Aspects in this investigation, and the hearsay and materiality arguments made by Aspects are without merit.

Finally, Aspects argues that "this is not a case of lack of cooperation, but instead [is] one of 'too much' cooperation for CBP to handle." Pl. Comments 9. Customs properly found otherwise based upon credible and substantial record evidence that included personal observations by experienced agency officials. Remand Redetermination 6-9.

    B.    <u>The Remand Redetermination Only Addresses Covered Merchandise</u>

Aspects argues that Customs misinterpreted the Remand Order and did not "reconsider" the adverse inference issue. Pl. Comments 10. Aspects is wrong.

The Remand Order provided:

> Because Customs included both covered and non-covered merchandise in its EAPA investigation, the Court remands this matter for further consideration by Customs with instructions to only include merchandise within the scope of the Order in the EAPA investigation. The Court suggests that on remand Customs may choose to revisit the scope determination and consider whether to make a new scope referral to Commerce, or reconsider Customs' adverse inference determination.

Remand Order 44.  As Aspects recognizes in a footnote, Customs previously had not applied adverse inferences in this EAPA investigation.  Pl. Comments 15 n.4.  As such, Customs could only "reconsider" the adverse inference issue by reconsidering whether the application of an adverse inference was warranted.  Customs did exactly that and thus complied with the Remand Order.  Remand Redetermination 10-11.  In addition, Customs complied with the Court's instruction to find evasion only with respect to the entries that contained covered merchandise.  Indeed, the remand redetermination states that the agency "does not purport to find evasion with respect to any entries that it finds do not contain covered merchandise," but "after making inferences that are adverse to Aspects's interests from the facts otherwise available on the record," the agency found "that all of Aspects's entries subject to the EAPA investigation contained covered merchandise."  Remand Redetermination 10-11.

Next, Aspects argues, as it did before Customs, that Commerce found certain *types* of its merchandise was not covered merchandise.  Pl. Comments 11.  As Customs explained in the remand redetermination, however, the agency "referred the matter to Commerce because CBP could not determine whether specific types of furniture items were covered by the" Order, which is "separate and distinct from a determination that CBP is unable to discern – *in reality* – which of Aspects's entries contain covered merchandise and which do not," and "based on the documents alone, it is impossible to determine which of Aspects's entries do not contain covered merchandise" because those documents are unreliable.  Remand Redetermination 24-25 (emphasis in original).  In other words, Customs previously looked at Aspects's list of types of merchandise it imports and found that with respect to certain types of merchandise that Customs needed clarification from Commerce as to whether such merchandise was covered.  However, that does not mean that Customs was able to determine which entries contained which

merchandise – that is a separate question.  As Customs explained on remand, "[t]he record evidence does not allow CBP to discern which entries contain covered merchandise and which do not because CBP finds that the documentary evidence provided by Aspects is incurably flawed, and drawing adverse inferences from the facts otherwise available on the record, CBP finds that all of Aspects's entries contain covered merchandise."  Remand Redetermination 24. Indeed, Commerce identified which types of items were subject to the order and which not, but Commerce did not make any findings as to which entries contained such covered merchandise. PR 387.

Aspects also takes issue with Customs' statement that the agency would have needed a cargo exam to determine which entries contained which merchandise.  Pl. Comments 15. Aspects argues that CBP should be able to decide the contents of the entries based on the documents alone.  *Id.*  Of course, CBP does not (and cannot) always conduct a cargo exam for every entry, but importers in an EAPA investigation have a burden to provide correct information to Customs.  *Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357, 1373 (Ct. Int'l Trade 2021) ("interested parties bear the burden of supplying Customs with accurate information that withstands verification" under section 1517(c)(2)).  Customs identified a myriad of deficiencies in Aspects's documents, including inconsistent descriptions of merchandise on invoices, and obfuscations of whether entries contained covered merchandise in the entries. Remand Redetermination 13, 24-25.  Yet, Aspects does not seriously grapple with the substance of Customs' detailed findings that the documents the company provided were unreliable.

Aspects argues further that Customs did not "finalize" the adverse inference analysis and failed to "select from facts otherwise available."  Pl. Comments 12-13.  Aspects disregards Customs' detailed analysis of the facts on the record from which it drew adverse inferences.

Remand Redetermination 13-17.  Specifically, Customs identified specific deficiencies in the documents, such as differing product descriptions across the documents that were provided to Customs by Aspects and the documents that were provided to Customs by manufacturers.  *Id.* at 13-14.  Customs also identified evidence of commingling at Aspects's facilities finding that officials at both "manufacturing facilities indicated that containers from Aspects sometimes arrived at their facilities already partially loaded with merchandise from other manufacturers," and that "[a]ccording to the officials' statements and records, Aspects requested that the suppliers participating in the verification com[m]ingle their merchandise with the merchandise already loaded in the containers."  *Id.* at 15.  CBP also identified differences between the weights and values reported on sales and shipping documents for the same merchandise.  *Id.*  Further, "[t]he invoices provided by Aspects to CBP in its entry packages often contain merchandise from different manufacturers on one invoice that are attributed to a single manufacturer," and "the [e]vidence obtained at verification established that the manufacturer on the entry package invoice did not necessarily produce all merchandise listed on the invoice."  *Id.* at 16.  As such, Aspects is wrong to argue that Customs did not analyze the facts otherwise available on the record when the agency drew adverse inferences and relied upon them in deciding this matter.

Aspects also argues that Customs should have found that Wuxi Yushea's documentation was reliable.  Pl. Comments 13-14.  Relying upon a logical syllogism, Aspects argues that because Customs found Aspects documents to be unreliable, and because the Aspects and Wuxi Yushea documents were inconsistent, then all of the Wuxi Yushea documents must have been reliable.  *Id.*  But, as explained in the remand redetermination, Customs identified inconsistencies between information reported by Wuxi Yushea and Aspects, and the evidence of commingled merchandise, inaccurate merchandise descriptions, and valuation errors made it impossible for

Customs to verify whether Wuxi Yushea was the manufacturer of all the merchandise that Aspects reported on its entry documentation.  Remand Redetermination 13-14.  Aspects's arguments about Wuxi Yushea fail because they require a logical leap – where one must accept as true the representations in the entry documentation that Wuxi Yushea was the manufacturer – when Customs specifically found that the entry documentation was *not* reliable.  Customs also found inconsistencies in Wuxi Yushea's documents as well.  *Id.* at 26 (citing CR 10018).

      C.      <u>Aspects's Renewed Duty Evasion Arguments Are Incorrect</u>

Now that Customs has determined to rely for the first time upon an adverse inference that all of Aspects's entries contained subject merchandise, and now that Customs has clarified that its evasion finding applies only to entries containing subject merchandise, Aspects renews its arguments from the previous round of briefing about duty evasion.  Pl. Comments 14-16.  Specifically, Aspects argues that Customs did not articulate a satisfactory explanation for its finding that Aspects avoided the payment of duties.  *Id.*  Aspects generally incorporates its previous arguments on this subject by reference.  *Id.*  Those arguments are without merit.

Aspects argued previously that the evasion finding by Customs was not supported by substantial evidence because one of its suppliers, Wuxi Yushea, had a zero percent antidumping duty rate as an exporter or producer, such that no duties were owed.  Pl. Mot. for J. upon Agency Record (Pl. Mot.) at 18-22, 30, April 13, 2021, ECF No. 20.  Customs properly rejected various iterations of this argument, twice.  Remand Redetermination 13-14, 25-26; Final Determination 10.  As Customs explained, Aspects made *multiple* misstatements with respect to these entries. *Id.*  Specifically, with respect to entries that identified Wuxi Yushea as the manufacturer of the merchandise, Customs found that Aspects had made numerous misstatements about the manufacturer on the entry documents to conceal commingled merchandise from other

- 23 -

manufacturers in the shipments, thus reducing the amount of antidumping duties that would have been assessed on other merchandise from other manufacturers.  Final Determination 10; *see also* CR 10013-19 (Verification Report detailing commingled merchandise and related misstatements in the scheme); CR 10025-27 (Verification Report detailing AFI's destruction of dozens of documents and communication records regarding container loading on two separate occasions). Aspects argues that Customs did not provide a satisfactory explanation, but Aspects did not and still does not address the comingling explanation that Customs actually did provide.  In fact, none of the briefs submitted by Aspects in this Court use any form of the word "comingle."  This silence underscores the lack of merit in Aspects's duty evasion arguments.  Aspects's argument also incorrectly assumes the accuracy of the underlying entry documentation, which, as Customs found, was "replete" with false statements.  Remand Redetermination 23; Final Determination 8; *see also* Initial Determination 4-9; CR 10010-40 (Verification Report).

Customs also explained that Aspects evaded duties because: (1) with respect to entries listing Wuxi Yushea's merchandise, Customs found that Aspects also had made misstatements about the manufacturer (the commingling issue), thus reducing the amount of antidumping duties that would have been assessed on other merchandise from other manufacturers; and (2) with respect to entries listing Nantong Fuhuang as the manufacturer, Customs found that Aspects also had made misstatements about the weight, price per unit, and value declared for shipments of merchandise, thus reducing the amount of antidumping duties that are assessed on an ad valorem basis under the Order.  Final Determination 10.  Aspects does not address, much less rebut, either of these two independent grounds for the evasion finding by Customs.

Furthermore, Customs found that, "for at least some of the entries," Aspects "controlled the export process behind the scenes" by "procuring and paying for freight forwarders."  Final

Determination 10.  The Verification Report describes in detail an interview with an employee of

Wuxi Yushea who explained that Aspects directed and performed numerous exporter activities –

including arranging for shipping, selecting the freight forwarder, and communicating with the

freight forwarder – regardless of who ultimately paid for the shipping.  CR 10024-25.  Because

substantial evidence showed that Aspects was acting as the real exporter for at least some of

entries, this is another independent reason why Customs properly rejected Aspects's argument

that Wuxi Yushea's zero percent rate applied to those entries.

CONCLUSION

For these reasons, we respectfully request that the Court sustain the final determination as

amended by the remand redetermination and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

 s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

 s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-9303

Of Counsel:

TAMARI LAGVILAVA
Attorney (Enforcement and Operations)
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, N.W.
Washington, D.C.  20229

May 22, 2023

Attorneys for Defendant United States

- 25 -

CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 7,218 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

 s/ Douglas G. Edelschick