Slip Op. 23-123

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **ASPECTS FURNITURE INTERNATIONAL, INC.,** | |
| **Plaintiff,** | **Before: Jennifer Choe-Groves, Judge** |
| **v.** | **Court No. 20-03824** |
| **UNITED STATES,** | |
| **Defendant.** | |

## <u>OPINION</u>

[Sustaining U.S. Customs and Border Protection's Final Remand Redetermination, following an evasion determination under the Enforce and Protect Act.]

Dated: August 22, 2023

<u>Robert W. Snyder</u> and <u>Laura A. Moya</u>, Law Offices of Robert W. Snyder, of Irvine, CA, for Plaintiff Aspects Furniture International, Inc.

<u>Claudia Burke</u>, Deputy Director, and <u>Douglas G. Edelschick</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>Patricia M. McCarthy</u>, Director. Of counsel on the brief was <u>Tamari Lagvilava</u>, Attorney, Office of Chief Counsel, U.S. Customs and Border Protection.

Choe-Groves, Judge: This action arises out of U.S. Customs and Border

Protection's ("Customs") final determination of evasion of the <u>Notice of Amended</u>

<u>Final Determination of Sales at Less Than Fair Value and Antidumping Duty</u>

Order: Wooden Bedroom Furniture from the People's Republic of China

("Order"), 70 Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005), by Plaintiff

Aspects Furniture International, Inc. ("Plaintiff" or "Aspects").  Customs' Final

Determination Aspects Furniture International, Inc. Enforce and Protect Act

("EAPA") Case No. 7189 (Sept. 24, 2020) ("Final Administrative Determination"

or "Final Admin. Determination"), PR 429.[1]  Before the Court is the Final Remand

Redetermination ("Remand Redetermination"), Final Remand Redetermination

EAPA Investigation No. 7189, ECF No. 36, which the Court ordered in Aspects

Furniture Int'l, Inc. v. United States ("Aspects I"), 46 CIT __, 607 F. Supp. 3d

1246 (2022).  For the following reasons, the Court sustains Customs' Remand

Redetermination.

## BACKGROUND

The Court presumes familiarity with the underlying facts and procedural

history of this case and recites the facts relevant to the Court's review of the

Remand Redetermination.  See Aspects I, 46 CIT at __, 607 F. Supp. 3d. at 1251–

53.

---

[1] Citations to the administrative record reflect the public record ("PR"),
confidential record ("CR"), and public remand record ("PRR") document numbers
filed in this case, ECF Nos. 16, 17, 36-3, 39, 40.

In <u>Aspects I</u>, the Court held in relevant part that Customs could not include

in its evasion investigation merchandise that entered prior to entry into force of the

Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517, or entries of non-covered

merchandise.  <u>Id.</u> at __, 607 F. Supp. 3d. at 1257, 1269.  The Court also held that

Customs failed to provide the parties to the investigation with required public

summaries of redacted information.  <u>Id.</u> at __, 607 F. Supp. 3d. at 1273.  The

evasion determination was remanded to Customs to address these issues.  <u>Id.</u> at __,

607 F. Supp. 3d. at 1257, 1269, 1273, 1275.  The Court suggested that Customs

might consider providing on remand a further explanation regarding the

truthfulness, reasonableness, or credibility of disputed evidence of document

destruction.  <u>Id.</u> at __, 607 F. Supp. 3d. at 1260.

Subsequent to the Court's issuance of <u>Aspects I</u>, Aspects moved to withdraw

and waive its arguments regarding the lack of public summaries and requested that

the Court partially vacate the portion of <u>Aspects I</u> regarding Customs' failure to

provide public summaries.  Pl.'s Unopposed Mot. Partially Vacate Court's Nov.

28, 2022 Remand Order, ECF No. 32.  The Court granted the motion in part to

permit Plaintiff to withdraw and waive Plaintiff's claims but denied the motion in

part with respect to Plaintiff's request to vacate portions of <u>Aspects I</u>.  Order (Dec.

23, 2022), ECF No. 33.  The Court directed that Customs was not required to

address the lack of public summaries on remand.  Order (Dec. 23, 2022), ECF No.

35.

Customs filed its <u>Remand Redetermination</u> with the Court on March 27,

2023, in which Customs clarified that its evasion determination did not apply to

entries made prior to the EAPA coming into force and expressly drew an adverse

inference that all of Aspects' entries made during the period of investigation

contained covered merchandise.  <u>Remand Redetermination</u>.  Aspects filed

Plaintiff's Comments in Opposition to Agency Final Remand Redetermination

Pursuant to Court Order.  Pl.'s Cmts. Opp'n Agency Final Remand

Redetermination Pursuant Court Order ("Pl.'s Br."), ECF No. 37.  Defendant

United States ("Defendant") filed Defendant's Comments in Support of Agency

Remand Redetermination.  Def.'s Cmts. Supp. Agency Remand Redetermination

("Def.'s Br."), ECF No. 38.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 517 of the Tariff Act of 1930,

as amended, 19 U.S.C. § 1517(g),[2] and 28 U.S.C. § 1581(c), which grant the Court

---

[2]  Congress amended 28 U.S.C. § 1581(c) to encompass EAPA cases via § 421(b)
of Title IV of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L.
No. 114-125, 130 Stat. 154, 168 (2016).  All statutory citations herein are to the
2018 edition of the United States Code and all citations to regulations are to the
2020 edition of the Code of Federal Regulations.

jurisdiction over actions contesting determinations of evasion pursuant to the

EAPA statute.  The Court reviews Customs' evasion determination for compliance

with all procedures under 19 U.S.C. §§ 1517(c) and (f) and will hold unlawful "any

determination, finding, or conclusion [that] is arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law."  19 U.S.C. § 1517(c)(1)(A),

(g)(2).  The Court reviews determinations made on remand for compliance with the

Court's remand order.  Ad Hoc Shrimp Trade Action Comm. v. United States, 38

CIT 727, 730, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir.

2015).

## DISCUSSION

### I.        Public Summaries

19 C.F.R. § 165.4 requires that confidential information placed on the

administrative record be accompanied by either a public summary of the redacted

information or an explanation of why public summarization of the information is

not possible.  19 C.F.R. § 165.4.  During the EAPA investigation, Customs failed

to place on the administrative record a public summary of redacted information in

the On-Site Verification Report ("Verification Report"), which was cited in both

the Notice of Final Determination as to Evasion ("May 18 Determination") and the

Final Administrative Determination.  See Aspects I, 46 CIT at __, 607 F. Supp. 3d

at 1271–73; see also On-Site Verification Report Enforce and Protect Act (EAPA)

Case 7189 (Dec. 13, 2019) ("Verification Report"), PR 373, CR 295; Notice of

Final Determination as to Evasion (May 18, 2020) ("May 18 Determination"), PR

419, CR 310.  The Court remanded the Final Administrative Determination to

Customs to address and remedy the lack of public summaries.  Aspects I, 46 CIT at

__, 607 F. Supp. 3d at 1273.

Following Aspects I, Customs reopened the administrative record to permit

the parties to the investigation an opportunity to submit public versions of certain

documents previously placed on the administrative record.  Customs' Letter (Dec.

7, 2022), PRR 2.  In response to Customs' letter, Aspects notified Customs that it

did not intend to submit public summaries because:

> [Aspects'] prior submissions of its public version documents were not
> the subject of the Court's Remand Order, and because such re-
> submission, as requested in [Customs'] Letter, would be futile and
> result in substantial costs for [Aspects], given the extent of the
> information requested, [Aspects'] position is that it is not required to
> comply with [Customs'] letter.

Aspects' Email (Dec. 9, 2022) at 1, PRR 3.  In response, Customs advised that it

was enforcing the requirements of 19 C.F.R. § 165.4 on remand and had identified

business confidential documents submitted by Aspects that did not comply with the

requirements of the regulation.  Customs' Email Resp. (Dec. 13, 2022), PRR 5.

Customs reiterated its request that Aspects provide public summaries of the

identified documents.  Id.

Aspects filed an unopposed motion to partially vacate the Court's remand

order requesting the Court's permission to "withdraw and waive its arguments

based on 19 C.F.R. § 165.4 and the lack of public summaries" of confidential

documents placed on the administrative record by Customs in the EAPA

investigation.  Pl.'s Unopposed Mot. Partially Vacate Court's Nov. 28, 2022

Remand Order at 1–2.  Plaintiff also requested that the Court vacate the portion of

the Aspects I opinion concluding that the failure of Customs to provide sufficient

public summaries of confidential documents was not in accordance with law and

remanding the issue to Customs for further consideration.  Id.  The Court granted

the motion in part with respect to Plaintiff's request to withdraw and waive its

claims and arguments and denied the motion in part with respect to Plaintiff's

request to vacate because Plaintiff did not demonstrate any defect with the Court's

prior findings of fact or conclusions of law.  Order (Dec. 23, 2022), ECF No. 33.

The Court directed that the Parties were not required to address the lack of public

summaries on remand because the argument was waived.  Order (Dec. 23, 2022),

ECF No. 35.

## II.        Pre-EAPA Entries

The Court held that Customs' EAPA investigation could not include

merchandise entered prior to the EAPA entering into force on August 22, 2016 and

remanded the Final Administrative Determination to Customs to clarify whether

pre-EAPA entries were subject to the evasion determination.  Aspects I, 46 CIT at

__, 607 F. Supp. 3d at 1257.  On remand, Customs determined upon review of the

administrative record "that the May 18 Determination and the [Final

Administrative Determination did] not apply to Aspects' entries made prior to

August 22, 2016."  Remand Redetermination at 4.  In a Joint Status Report of

September 16, 2021, the Parties agreed that all of Aspects' pre-EAPA entries were

liquidated on or before August 21, 2018 and prior to the issuance of the May 18

Determination and Final Administrative Determination.  Joint Status Report (Sept.

16, 2021), ECF No. 30; see also Remand Redetermination at 5.  Customs

determined that because all pre-EAPA entries reviewed during the EAPA

investigation were liquidated, the pre-EAPA entries were not subject to the evasion

determination.  Remand Redetermination at 5–6.  Neither Party contests this

determination.  Pl.' Br. at 2; Def.'s Br. at 13.  The Court concludes that the

exclusion of Aspects' entries prior to the entry into force of the EAPA statute on

August 22, 2016 is in accordance with law.

## III.        Truthfulness, Reasonableness, and Credibility of Statements

Aspects argued that statements relied upon by Customs regarding

observations of document destruction constituted inadmissible hearsay.  See Pl.'s

Mem. Supp. Mot. J. Agency R. at 13–14, ECF No. 20.  The Court held that hearsay

evidence is admissible in administrative proceedings "up to the point of

relevancy." <u>Aspects I</u>, 46 CIT at __, 607 F. Supp. 3d at 1259 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 410 (1971)). "If evidence meets this standard, it may be considered 'in light of its truthfulness, reasonableness, and credibility.'" <u>Id.</u> (quoting <u>Anderson v. United States</u>, 16 CIT 324, 327, 799 F. Supp. 1198, 1202 (1992)). No Party challenged the relevancy of the statements, but "[t]he Court observe[d] that Customs did not provide any analysis about the truthfulness, reasonableness, or credibility of the disputed evidence in weighing the accounts of the Verification Report, though Customs asserted that the evidence was not needed to establish substantial evidence of evasion." <u>Id.</u> at __, 607 F. Supp. 3d at 1260. The Court suggested that Customs might consider providing further explanation regarding the truthfulness, reasonableness, and credibility of the evidence in dispute on remand. <u>Id.</u>

On remand, Customs explained that during the verification process, Customs' employees visited the facilities of Aspects Nantong and two of Aspects' Chinese suppliers, Nantong Fuhuang Furniture Co., Ltd. ("Nantong Fuhuang") and Wuxi Yushea Furniture Co., Ltd. ("Wuxi Yushea") to verify information placed on the administrative record. <u>Remand Redetermination</u> at 6; <u>see also</u> Verification Report at 3–4. The on-site verification was conducted by Customs' employees, including individuals from the Center of Excellence and Expertise for Consumer Products and Mass Merchandising, Regulatory Audit and Agency Advisory

Services ("RAAAS"), National Threat Analysis Center, and Trade Remedy Law Enforcement Directorate.  Remand Redetermination at 7; see also Verification Report at 2.  The Verification Report was prepared by RAAAS in coordination with the other Customs offices involved in the verification.  Remand Redetermination at 7–8; see also Verification Report at 2.  Customs noted that the international trade specialist who prepared the May 18 Determination was among the verification team members who observed the alleged document destruction. Remand Redetermination at 8.

Customs also explained that Customs' employees are subject to a set of standards of conduct that require Customs employees to "demonstrate the highest standards of ethical and professional conduct to ensure efficient performance of government services."  Id.; see U.S. Customs Directive No 51735-013B (Jan. 29, 2021) ("Customs' Standards of Conduct") at 1.  Under these standards, "employees who knowingly make false, misleading, incomplete, or ambiguous statements, whether oral or written, in connection with any matter of official interest may be subject to disciplinary action."  Remand Redetermination at 8; see also Customs' Standards of Conduct § 7.4.  Customs asserted that it was "reasonable to rely on the statements and observations of its employees who are tasked with validating the information placed by interested parties on the administrative record."  Remand Redetermination at 8–9.  Customs indicated that it had no reason to doubt the

truthfulness, reasonableness, or credibility of its employees or the employees' interpretation of the evidence.  Id. at 7–8.

    In an administrative proceeding, "[a]ny oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence."  5 U.S.C. § 556(d). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Aspects argued before Customs and now argues before the Court that the evidence of document destruction was immaterial to the statutory elements of evasion and should be excluded as irrelevant.  Pl.'s Br. at 5–9; Aspects' Cmts. Draft Remand Redetermination at 3–5, PRR 11.  Aspects contends that the only type of documents identified among those allegedly destroyed were container loading plans.  Pl.'s Br. at 7.  Aspects notes that loading plans are not among the types of documents that importers are required to maintain and present to Customs upon request.  Id. (citing 19 C.F.R.§ 142.3). Aspects asserts that the information contained in the loading plans was ascertainable from other documents available to Customs.  Id. at 7–8.

    Aspects is incorrect in its assertion that the only documents that Customs' employees observed being destroyed were container loading plans.  The Verification Report also references a Customs' employee observing an Aspects

Nantong employee deleting a chat record with an employee of Wuxi Yushea after being asked to produce a sample container loading spreadsheet. Verification Report at 16. Because Customs' theory of evasion includes allegations that Wuxi Yushea commingled merchandise from multiple manufacturers while masking the actual manufacturer of the commingled goods and altering the descriptions of goods on entry documents, container loading plans and the conversations between the Aspects employee responsible for creating container loading plans and Wuxi Yushea are relevant to both the issue of whether entries contained covered goods and whether Aspects made materially false assertions in its entries. The evidence is also relevant to the question of whether Aspects cooperated in the verification process to the best of its ability. See 19 U.S.C. § 1517(c)(3)(A). The fact that this information might have been ascertained from other sources on the record does not render the destroyed documents irrelevant.

    In the Remand Redetermination, Customs explained that it "found that Aspects failed to cooperate to the best of its ability in responding to [Customs'] requests for information during the verification when Aspects' employees deleted electronic files in response to [Customs'] questions." Remand Redetermination at 21. Customs stated that:

> the destruction of evidence was significant because such actions
> prevented [Customs] from fully understanding the scope of Aspects'
> Nantong operations and which products from which manufacturers

> were exported to the United States. In addition, given that dozens of
> files were deleted, [Customs] simply does not know the contents of
> those files and what impact they would have on a determination as to
> evasion. [Customs] only observed that Aspects' employees withheld
> that evidence from [Customs].

Id. at 22. Although Aspects was not required to maintain and provide container

loading plans under 19 C.F.R.§ 142.3, the Court concludes that Customs' request

was reasonable and within its authority to collect additional information necessary

to make an evasion determination. 19 U.S.C. § 1517(c)(2). During the on-site

verification, Customs requested that an Aspects employee provide information

within Aspects' records. Because Customs observed the Aspects employee not

cooperating and instead deleting files, see Verification Report at 16–17, the Court

concludes that the evidence of document destruction was relevant to Customs'

determination of evasion and the question of whether Aspects cooperated to the

best of its ability during the verification process.

        If evidence is relevant, it must be weighed "in light of its truthfulness,

reasonableness, and credibility." Anderson, 16 CIT at 327, 799 F. Supp. at 1202.

Aspects does not argue that Customs' employees intentionally fabricated the

evidence of document destruction, but asserts that the factors call Customs' claims

into question. Pl.'s Br. at 4. Aspects contends that the evidence lacks credibility

because Customs took eight months after the on-site verification to prepare the

Verification Report. Id. at 4–5. Aspects asserts that Customs did not share the

Verification Report, including the allegations of document destruction, for more than one year after it was completed, and argues that Customs "hid" the evidence of document destruction from Aspects and its counsel for almost two years, impairing Aspects' ability to provide new factual information to rebut the allegation.  Id. at 5.  Aspects also argues that Customs did not raise the matter with its counsel during the on-site verification visit, at which time the allegedly deleted files might have been recovered.  Id.

Aspects cites no authority that would require Customs to issue the Verification Report more promptly or to extend to Aspects an opportunity to correct the alleged destructive conduct during verification.  The Court concludes that Customs' delay in providing information about the destruction was not arbitrary or capricious.  The Court observes that Customs explained on remand which employees were involved in the verification process, that the international trade specialist who observed the alleged document destruction was involved in preparing the Verification Report, and the ethical obligations imposed on the employees involved in the verification process.  Remand Redetermination at 7–8; see also Customs' Standards of Conduct.  Customs has complied with the Court's suggestion to address the truthfulness, reasonableness, and credibility of the statements considered in the evasion determination on remand.  The Court concludes, therefore, that Customs' consideration of evidence concerning the

destruction of documents during on-site verification was reasonable and in

accordance with law.

## IV.      Evasion Determination

Customs has authority under the EAPA to investigate and determine whether

covered merchandise was entered into the customs territory of the United States

through evasion.  19 U.S.C. § 1517(c)(1)(A).  "Evasion" is defined as:

> [E]ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

Id. § 1517(a)(5)(A).

In Aspects I, the Court deferred substantive consideration of Customs'

evasion determination until Customs provided clarification on remand of which

entries were included in the EAPA investigation and evasion determination.

Aspects I, 46 CIT at __, 607 F. Supp. 3d at 1269.  On remand, Customs did not

engage in an entry-by-entry analysis of specific entries and merchandise, but

incorporated by reference the May 18 Determination and Final Administrative

Determination.  Remand Redetermination at 17; see also id. at 13–17 (discussing

Aspects' alleged actions in the context of drawing an adverse inference).  Both the

May 18 Determination and Final Administrative Determination discussed the

elements of evasion based on observations during on-site verification and

examples from a review of documents from sample entries.  See May 18

Determination at 4–10; Final Admin. Determination at 8–10.  On remand, Customs

applied an adverse inference and determined that all of Aspects' entries during the

period of investigation contained subject merchandise.  Remand Redetermination

at 9–17.  Customs concluded that Aspects' actions resulted in an avoidance or

reduction of duties on all of Aspects' entries.  Id. at 17, 26–27.

Aspects objects to Customs' application of wholesale adverse inferences

against all of its entries, contending that Aspects cooperated during the

administrative investigation, and argues that sufficient facts were available on the

administrative record for Customs to determine which specific entries contained

covered merchandise.  Pl.'s Br. at 9–14.  Aspects also asserts that Customs failed

to demonstrate that Aspects avoided any applicable duties.  Id. at 14–16.

Defendant disagrees with Aspects and asserts that the adoption of an adverse

inference was consistent with the Court's remand instructions and the EAPA and

that Aspects' challenges to Customs' evasion determination are without merit.

Def.'s Br. at 19–25.

### A.    Covered Merchandise and Adverse Inference

Commerce determined that four of the six product categories included in

Customs' Scope Referral were not covered by the Order.  Final Scope Ruling at 1,

34, PR 387, CR 303; see also Scope Referral Request Mem., PR 294, CR 235.

Despite Commerce's scope ruling that only two product categories were within the

scope of the Order, Customs decided to include the non-covered merchandise in its

EAPA review because it determined that Aspects had provided unreliable product

descriptions. May 18 Determination at 8–10; Final Admin. Determination at 8–11.

This Court in Aspects I concluded that the inclusion of merchandise determined by

Commerce to be non-covered merchandise in the EAPA investigation was contrary

to law and remanded the Final Administrative Determination to Customs with

instructions to only include merchandise within the scope of the Order in the

EAPA investigation. Aspects I, 46 CIT at __, 607 F. Supp. 3d at 1267–69. On

remand, Customs explained:

> As an initial matter, [Customs] has not disregarded Commerce's
> findings in the May 18 Determination and the [Final Administrative
> Determination]. Under 19 U.S.C. § 1517(a)(3)(A), the term "evasion"
> is defined as entry of covered merchandise into the United States by
> means of material false statements. [Customs] does not purport to find
> evasion with respect to any entries that it finds do not contain covered
> merchandise. That said, [Customs] finds, after making inferences that
> are adverse to Aspects' interests from the facts otherwise available on
> the record, that all of Aspects' entries subject to the EAPA investigation
> contained covered merchandise.

Remand Redetermination at 10–11.

Under the EAPA, when the party "has failed to cooperate by not acting to

the best of the party or person's ability to comply with a request for information,"

Customs may adopt an inference that is adverse to the interests of the party in

selecting from facts otherwise available on the record.  19 U.S.C. § 1517(c)(3)(A);

19 C.F.R. § 165.6.  On remand, Customs determined that Aspects failed to

cooperate to the best of its ability with respect to Customs' request for information

during the on-site verification because on two occasions Aspects' employees were

observed deleting dozens of files in response to inquiries from Customs' verifiers

about what merchandise was shipped and by which manufacturer.  Remand

Redetermination at 11–12.  Customs reasoned that the intentional withholding of

information by Aspects prevented Customs from obtaining "critical information"

regarding Aspects' imports.  Id. at 12.  In addition, Customs noted that

discrepancies existed in many of the entry documents when compared to other

record evidence, causing Customs to determine that it was unable to identify the

manufacturer of some merchandise, merchandise descriptions on entry documents

were inaccurate, errors existed in the valuation of merchandise, and inconsistencies

existed in the reported gross weights and values between sales and shipping

documents.  Id.  Customs asserted that "[f]acts otherwise available on the record

indicate that Aspects systematically misrepresented the descriptions of

merchandise in the entry documents, such that [Customs] cannot trust the veracity

of any description of imported merchandise, and specifically, which particular

entries include covered merchandise."  Id. at 13.  Customs observed multiple

instances of reporting discrepancies that called into question the actual manufacturer of Aspects' merchandise, including misdescribed merchandise, discrepancies in gross weight and value, and the commingling of merchandise from multiple manufacturers.  Id. at 13–16; see Verification Report at 4–6 (discussing Aspects' practice of providing containers to Nantong Fuhuang and Wuxi Yushea partially loaded with merchandise produced by other manufacturers but declaring Wuxi Yushea or Nantong Fuhuang as exclusive manufacturers at entry), 6–10 (discussing examples of inconsistent documents reflecting discrepancies in quantity of cartons, gross weight, and value), 10–11 (discussing examples of misdescribed covered merchandise), 13–15 (discussing examples of altered unit prices).  Relying on these otherwise available facts, Customs observed that Aspects' misrepresentations on its submitted documents were pervasive.

Remand Redetermination at 16.  Customs argues essentially that because numerous and pervasive discrepancies existed in the entry paperwork, it was reasonable for Customs to apply an adverse inference to assume that all of the entry documents were incorrect and that all of Aspects' entries contained covered merchandise.  The Court agrees that it was reasonable and supported by substantial evidence for Customs to determine that the numerous and pervasive discrepancies in entry paperwork, in addition to the destruction of evidence during verification, justified the application of an adverse inference against Aspects.

### B.    Customs' Evasion Determination

The EAPA defines "enter" as a singular "entry, or withdrawal from

warehouse for consumption, of merchandise into the customs territory of the

United States." Id. § 1517(a)(4).  Customs is tasked with determining whether

"covered merchandise was entered into the customs territory of the United States

through evasion." Id. § 1517(c)(1).  If Customs determines that evasion has

occurred, it shall suspend the liquidation of entries of such covered merchandise,

identify and apply applicable antidumping rates, require the posting of cash

deposits and take additional enforcement measures.  Id. § 1517(d)(1).

In Aspects I, the Court deferred its substantive analysis of Customs' evasion

determination until after Customs clarified which entries were included in the

EAPA investigation.  Aspects I, 46 CIT at __, 607 F. Supp. 3d at 1269.

During verification, Customs considered 28 sample entries.  Verification

Report at 3.  The Remand Redetermination did not include an entry-by-entry

analysis, but incorporated determinations from the May 18 Determination and

Final Administrative Determination by reference.  Remand Redetermination at 17.

In the May 18 Determination and Final Determination, Customs determined that

record evidence showed that more than half of the shipments could not be verified

due to discrepancies of the manufacturers, merchandise being described

inaccurately, and errors in valuation.  See May 18 Determination; Final Admin.

Determination.  In the following discussion, the Court includes examples of many

of the entries that Customs considered.  Based upon a review of the record

evidence considered by Customs, the Court concludes that Customs supported its

evasion determination with substantial evidence.

### a.     Entry Ending in 5073

Customs reviewed documentation for the entry ending in 5073 identifying

Nantong Fuhuang as the manufacturer of the imported merchandise.  See Aspects'

Entry Package Sub. Sample 35 ("Aspects' Entry 35"), PR 56, CR 42.  Customs

noted, however, that the verification team reported that a Nantong Fuhuang

representative advised that Nantong Fuhuang was not the manufacturer of certain

items included on Aspects' entry invoice.  Verification Report at 4; see also Final

Admin. Determination at 9.  The representative explained that "Aspects shipped

[the items], produced by an unknown manufacturer, to Nantong Fuhuang and that

Aspects asked [Nantong Fuhuang] to consolidate and export those items with its

merchandise, because Aspects [did] not have an export license from the Chinese

government."  Verification Report at 4.  Despite the commingled merchandise

having been manufactured by different manufacturers, Aspects declared Nantong

Fuhuang as the sole manufacturer of the merchandise at the time of entry.  Id. at 4–

5; Aspects' Entry 35 at 1.  During the investigation, Customs compared entry

documents and photographs, and Customs observed that headboards (covered

merchandise) were misdescribed as wall panels (not covered merchandise). Final

Admin. Determination at 9; <u>see</u> Aspects' Entry 35 at 2–4, 8, 12, 15–16.

Customs reviewed three sets of documents related to the entry ending in

5073—Aspects' entry documents; the invoice, packing list, and export forms

provided by Nantong Fuhuang; and copies of entry documents included with

Aspects' Value Follow-up Submission.[3]  Verification Report at 8–9, 14; <u>see</u>

Aspects' Entry 35; Nantong Fuhuang's Request for Info. Resp. (Feb. 11, 2018) at

Att. at 19–30 ("Nantong Fuhuang's Entry 35"), PR 319; Aspects' Value Follow-up

Part 2 (May 17, 2017) at 38–46, PR 102, CR 83.  Customs observed that gross

weight and quantity values differed between export forms and bills of lading

included in the three sets of documents.  Final Admin. Determination at 9;

Verification Report at 8–9.  Specifically, Customs noted that the verification team

identified that the bill of lading provided by Aspects reflected a greater number of

cartons and greater gross weight than the export declaration form prepared by

Nantong Fuhuang.  Verification Report at 8–9.  Customs ascertained that the

discrepancy related to an item that was listed on the commercial invoice and

---

[3]  The Verification Report cites to Aspects' October 27, 2017 resubmission of the Value Follow-up data.  <u>See</u> Verification Report at 8.  The administrative record before the Court does not include the resubmission of this data but does include the May 17, 2017 submission of Aspects' Value Follow-up.  The discrepancy referenced by Customs is present in the earlier document.

packing list prepared by Aspects but was not listed on Nantong Fuhuang's invoice for payment to Aspects.  Verification Report at 8–9; <u>compare</u> Aspects' Entry 35, <u>with</u> Nantong Fuhuang's Entry 35.

Customs explained that during verification, a Nantong Fuhuang representative confirmed that "Nantong Fuhuang added lines to the invoice for the merchandise supplied by Aspects and manipulated the unit price calculated to match the total sales price of the merchandise manufactured by Nantong Fuhuang and sold to Aspects."  Verification Report at 14.  Customs noted discrepancies between the unit prices and descriptions of merchandise in the three sets of documents considered by Customs.  <u>Id.</u>; <u>compare</u> Aspects' Entry 35 at 2, <u>with</u> Nantong Fuhuang's Entry 35 at 1 <u>and</u> Aspects' Value Follow-up Part 2 at 38.

The Court concludes that Aspects entered covered merchandise in the entry ending in 5073 through material misrepresentations on entry documents that resulted in an avoidance of antidumping duties.  Customs' determination of evasion for the entry ending in 5073 was supported by substantial evidence.

### b.      Entry Ending in 1238

The entry ending in 1238 included merchandise from Nantong Fuhuang and Wuxi Yushea.  <u>See</u> Aspects' Entry Package Sub. Sample 36 ("Aspects' Entry 36"), PR 57–58, CR 43.  For the merchandise that Aspects claimed was manufactured by Nantong Fuhuang, Customs compared the entry documents provided by Aspects to

the invoice, packing list, export documents, and purchase orders provided by

Nantong Fuhuang.  Aspects' Entry 36; Nantong Fuhuang's Request for Info. Resp.

at Att. at 31–41 ("Nantong Fuhuang's Entry 36").  Customs determined that the

documents provided by Nantong Fuhuang and Aspects contained discrepancies in

weight, quantity, and value.  Final Admin. Determination at 10; Verification

Report at 9; compare Aspects' Entry 36 at 5, with Nantong Fuhuang's Entry 36 at

2 (packing lists reflecting different gross weight and quantity of cartons).  Customs

also determined that unit prices were reduced for one of the items.  Final Admin.

Determination at 10; Verification Report at 14; compare Aspects' Entry 36 at 4,

with Nantong Fuhuang's Entry 36 at 1 (invoices reflecting different unit costs for

merchandise).  Customs observed that "if the goods are undervalued and

[antidumping] duties are deposited and assessed on an ad valorem basis (as is the

case with [wooden bedroom furniture]), the full amount of [antidumping duties]

owed was not paid and evasion has occurred."  Final Admin. Determination at 10.

        For the merchandise that Aspects represented as having been manufactured

by Wuxi Yushea, Customs observed that the record included three sets of

documents that contained discrepancies—Aspects' entry documents; an invoice

and packing list provided by Wuxi Yushea in response to Customs' request for

information; and documents provided by Wuxi Yushea during verification.

Verification Report at 8; see Aspects' Entry 36; Wuxi Yushea's Request Info.

Resp. Ex. C-1–C-3 (Feb. 6, 2018) at Ex. C-3 at 61–62, PR 315, CR 247; Wuxi

Yushea's Verification Exhibits (May 11, 2018) at Ex. 4 at 1–20, PR 368–71, CR

291–94.

The Court concludes that Aspects entered covered merchandise in the entry

ending in 1238 through material misrepresentations on entry documents that

resulted in an avoidance of antidumping duties. Customs' determination of

evasion for the entry ending in 1238 was supported by substantial evidence.

### c.      Entry Ending in 8671

The entry ending in 8671 contained merchandise manufactured by Wuxi

Yushea. Aspects' Entry Package Sub. Sample 38 ("Aspects' Entry 38") (Apr. 22,

2017) at 2–10, PR 61, CR 45. Customs compared entry documents provided by

Aspects and documents provided by Wuxi Yushea. Verification Report at 10, 12;

Aspects' Entry 38; Wuxi Yushea's Verification Exhibits at Ex. 2 at 19–27 ("Wuxi

Yushea's Verification Entry 38"). Customs determined that Aspects misdescribed

merchandise on its entry documents for the entry ending 8671. Final Admin.

Determination at 9; Verification Report at 10. Merchandise described as

"headboard" and "nightstands" (covered merchandise) on invoices provided by

Wuxi Yushea were described as "wall panel," "side table," and "end table" (non-

covered merchandise) on documents provided by Aspects. Compare Aspects'

Entry 38 at 2–3, with Wuxi Yushea's Verification Entry 38 at 1–2. The Court

concludes that Aspects entered covered merchandise in the entry ending in 8671

through material misrepresentations on entry documents that resulted in an

avoidance of antidumping duties.  Customs' determination of evasion for the entry

ending in 8671 was supported by substantial evidence.

### d.    Entry Ending in 8944

The entry ending in 8944 included merchandise manufactured by Wuxi

Yushea.  Aspects' Entry Package Sub. Sample 39 ("Aspects' Entry 39") (Apr. 22,

2017) at 1, PR 62, CR 46.  Customs compared Aspects' entry documents with

documents provided by Wuxi Yushea during verification.  Verification Report at

10; Aspects' Entry 39 at 3–6; Wuxi Yushea's Verification Exhibits at Ex. 2 at 1–4

("Wuxi Yushea's Verification Entry 39").  Customs observed that items described

as 'king headboard" or "double headboard" (covered merchandise) in the Wuxi

Yushea documents were described as "wall panels" (non-covered merchandise) on

the Aspects invoice.  Verification Report at 10; compare Aspects' Entry 39 at 3–5,

with Wuxi Yushea's Verification Entry 39 at 1–4.

Customs observed other discrepancies in the documents provided by Aspects

and Wuxi Yushea, such as the quantity of cartons and gross weight reported on

invoices, packing lists, and bills of lading.  Verification Report at 9, 12, 15;

compare Aspects' Entry 39 at 3–6, with Wuxi Yushea's Verification Entry 39 at 1–

4.  Customs noted that unit prices for merchandise differed between the Aspects

and Wuxi Yushea invoices.  Verification Report at 15; <u>compare</u> Aspects' Entry 39

at 3, <u>with</u> Wuxi Yushea's Verification Entry 39 at 1.  The invoices also suggested

that unreported assists were provided by Aspects to Wuxi Yushea.  Verification

Report at 12; <u>compare</u> Aspects' Entry 39 at 3, <u>with</u> Wuxi Yushea's Verification

Entry 39 at 1 (merchandise were listed and included in the total price on Aspects'

invoice but were not included on Wuxi Yushea's invoice).

The Court concludes that Aspects entered covered merchandise in the entry

ending in 8944 through material misrepresentations on entry documents that

resulted in an avoidance of antidumping duties.  Customs' determination of

evasion for the entry ending in 8944 was supported by substantial evidence.

### e.  Entry Ending in 9253

The entry ending in 9253 contained merchandise manufactured by Wuxi

Yushea.  Aspects' Entry Package Sub. Sample 41 ("Aspects' Entry 41") (Apr. 22,

2017) at 3–6, PR 65, CR 49.  Customs reviewed entry documents provided by

Aspects and invoices, packing lists, bills of lading, and export documents provided

by Wuxi Yushea during verification.  Verification Report at 9, 10, 12; <u>see</u> Aspects'

Entry 41; Wuxi Yushea's Verification Exhibits at Ex. 3 at 1–22 ("Wuxi Yushea's

Verification Entry 41").  Customs observed differences in merchandise

descriptions between the manufacturer and importer invoices.  Verification Report

at 10.  Customs stated that merchandise described by Aspects as "end tables" and

"credenzas" (non-covered merchandise) were identified on Wuxi Yushea's documents as "nightstands," "dressers," and "armoires" (covered merchandise). Id.; compare Aspects' Entry 41 at 3–5, with Wuxi Yushea's Verification Entry 41 at 1–3.  Customs also noted that Wuxi Yushea described the merchandise as bedroom furniture (covered merchandise) on a freight company invoice and bill of lading.  Verification Report at 10; Wuxi Yushea's Verification Entry 41 at 5–7.

Customs included the entry ending in 9253 among examples of entries with discrepancies between the weights and values reported by Aspects and those reported by the manufacturer.  Verification Report at 9.  Customs observed that Aspects' packing list reflects a greater gross weight and number of cartons than the packing list provided by Wuxi Yushea.  Compare Aspects' Entry 41 at 4–5, with Wuxi Yushea's Verification Entry 41 at 2–3.  The discrepancy appears to relate to additional items included on Aspects' packing list.

The Court concludes that Aspects entered covered merchandise in the entry ending in 9253 through material misrepresentations on entry documents that resulted in an avoidance of antidumping duties.  Customs' determination of evasion for the entry ending in 9253 was supported by substantial evidence.

### f.     Entry Ending in 5559

The entry ending in 5559 contained merchandise manufactured by Wuxi Yushea and Nantong Fuhuang.  Aspects' Entry Package Sub. Sample 55

("Aspects' Entry 55") (Apr. 22, 2017) at 3, PR 80, CR 64. Customs compared

invoices provided by Aspects and Wuxi Yushea. Verification Report at 14–15;

Aspects' Entry 55 at 3; Wuxi Yushea's Request Info. Resp. Ex. C-1–C-3 at Ex. C-

3 at 106–107 ("Wuxi Yushea's Entry 55"). Customs observed that the two

invoices each reflected the same three items, but the invoice provided by Aspects

reflected lower unit prices and total value than the invoice provided by Wuxi

Yushea. Compare Aspects' Entry 55 at 3, with Wuxi Yushea's Entry 55 at 1.

The Court concludes that Aspects entered covered merchandise in the entry

ending in 5559 through material misrepresentations on entry documents that

resulted in an avoidance of antidumping duties. Customs' determination of

evasion for the entry ending in 5559 was supported by substantial evidence.

### g.      Entry Ending in 9783

The entry ending in 9783 contained merchandise manufactured by Wuxi

Yushea. See Aspects' Entry Package Sub. Sample 56 ("Aspects' Entry 56") (Apr.

22, 2017), PR 81, CR 65. Customs reviewed entry documents provided by Aspects

and documents provided by Wuxi Yushea during verification. Verification Report

at 9, 12–13; Aspects' Entry 56; Wuxi Yushea's Verification Exhibits at Ex. 3 at

55–116 ("Wuxi Yushea's Verification Entry 56"). Customs observed that the bill

of lading and packing list provided by Aspects reflected greater gross weights,

number of cartons, and total values than the export form and packing list provided

by Wuxi Yushea.  Verification Report at 9; <u>compare</u> Aspects' Entry 56 at 3–5,

<u>with</u> Wuxi Yushea's Verification Entry 56 at 22, 26–28.  Customs also observed

that merchandise descriptions and other items were changed to non-covered

merchandise on the invoice provided by Aspects in lieu of covered merchandise

included on Wuxi Yushea's invoice.  Verification Report at 11; <u>compare</u> Aspects'

Entry 56 at 2, <u>with</u> Wuxi Yushea's Verification Entry 56 at 21.  The Court

concludes that Aspects entered covered merchandise in the entry ending in 9783

through material misrepresentations on entry documents that resulted in an

avoidance of antidumping duties.  Customs' determination of evasion for the entry

ending in 9783 was supported by substantial evidence.

### h.    Entry Ending in 9546

The entry ending in 9546 contained merchandise manufactured by Wuxi

Yushea.  <u>See</u> Aspects' Entry Packets 19, 20, 31, 34, and 36 Part 1 at 2–7

("Aspects' Entry 84"), PR 110, CR 90.  In the Verification Report, Customs

observed that the administrative record included discrepancies with three sets of

documents for the entry—Aspects' entry documents, an invoice and packing list

provided by Wuxi Yushea in response to Customs' request for information, and

documents provided by Wuxi Yushea during verification.  Verification Report at 7;

<u>see also</u> Aspects' Entry 84; Wuxi Yushea's Verification Exhibits (May 11, 2018)

at Ex. 5 at 1–7 ("Wuxi Yushea's Verification Entry 84"), PR 368–71, CR 291–94;

Wuxi Yushea's Request Info. Resp. Ex. C-1–C-3 at Ex. C-3 at 158–59 ("Wuxi

Yushea's Entry 84").  In comparing the documents, Customs determined that three

additional products appeared on the invoice submitted as part of Aspects' entry

package.  Verification Report at 7; <u>compare</u> Aspects' Entry 84 at 4–5, <u>with</u> Wuxi

Yushea's Verification Entry 84 at 1–2, <u>and</u> Wuxi Yushea's Entry 84 at 1–2.

Customs also observed that purchase orders provided by Aspects reflected

different manufacturers for two of the items despite those products appearing on

the Wuxi Yushea invoice without indication of other manufacturers.  Verification

Report at 7; <u>compare</u> Aspects' Entry 84 at 4–5, <u>with</u> Wuxi Yushea's Verification

Entry 84 at 1–2, <u>and</u> Wuxi Yushea's Entry 84 at 1–2.  The description of

merchandise differed between versions of the invoices.  Verification Report at 7;

<u>compare</u> Aspects' Entry 84 at 4–5, <u>with</u> Wuxi Yushea's Verification Entry 84 at 1–

2, <u>and</u> Wuxi Yushea's Entry 84 at 1–2.  The Court concludes that Aspects entered

covered merchandise in the entry ending in 9546 through material

misrepresentations on entry documents that resulted in an avoidance of

antidumping duties.  Customs' determination of evasion for the entry ending in

9546 was supported by substantial evidence.

### i.      Entry Ending in 9793

The entry ending in 9793 contained merchandise produced by Wuxi Yushea.

<u>See</u> Aspects' Entry Packet Sub. Entry 21, 24, and 35 (June 23, 2017) at 2–7

("Aspects' Entry 86"), PR 124, CR 99.  Customs reviewed entry documents

provided by Aspects and corresponding documents provided by Wuxi Yushea.

Verification Report at 9, 13; <u>see</u> Aspects' Entry 86; Wuxi Yushea's Verification

Exhibits at Ex. 5 at 15–21 ("Wuxi Yushea's Verification Entry 86").  Customs

included the entry ending in 9793 among those entries with weight and value

discrepancies between importer and manufacturer documents.  Verification Report

at 9.  Customs compared the documents provided by Aspects and those provided

by Wuxi Yushea and determined that discrepancies showed that the gross weight

reflected on the packing list provided by Aspects did not match the gross weight on

the bill of lading provided by Wuxi Yushea.  <u>Compare</u> Aspects' Entry 86 at 4–5,

<u>with</u> Wuxi Yushea's Verification Entry 86 at 2–4.  The Court observes that the

packing lists provided by Aspects and Wuxi Yushea included several items that

were not included on accompanying invoices provided by Aspects and Wuxi

Yushea. Verification Report at 9; <u>compare</u> Aspects' Entry 86 at 3–4, <u>with</u> Wuxi

Yushea's Verification Entry 86 at 1–3.  The Court further observes that the invoice

provided by Wuxi Yushea also reflected a greater total value than the invoice

provided by Aspects.  Verification Report at 9; <u>compare</u> Aspects' Entry 86 at 3,

<u>with</u> Wuxi Yushea's Verification Entry 86 at 1.

       The Court concludes that Aspects entered covered merchandise in the entry

ending in 9793 through material misrepresentations on entry documents that

resulted in an avoidance of antidumping duties. Customs' determination of evasion for the entry ending in 9793 was supported by substantial evidence.

### j.    Entry Ending in 0346

The entry ending in 0346 contained merchandise manufactured by Wuxi Yushea. Aspects' Entry Packet Sub. Entry 21, 24, and 35 at 7–11 ("Aspects' Entry 89"). Customs reviewed entry documents provided by Aspects, an invoice and packing list provided by Wuxi Yushea in response to Customs' request for information, and documents provided by Wuxi Yushea during verification and included the entry on the list of entries that had multiple versions of invoices on the administrative record. Verification Report at 8; Aspects' Entry 89; Wuxi Yushea's Request Info. Resp. Ex. C-1–C-3 at Ex. C-3 at 195–96 ("Wuxi Yushea's Entry 89"); Wuxi Yushea's Verification Exhibits at Ex. 5 at 103–09 ("Wuxi Yushea's Verification Entry 89"). The Court observes that the record includes three versions of Wuxi Yushea's invoice for the entry ending in 0346. Aspects' Entry 89 at 3; Wuxi Yushea's Entry 89 at 1; Wuxi Yushea's Verification Entry 89 at 1. The invoice provided by Wuxi Yushea during verification reflected a greater quantity of merchandise and total value than the other invoices. Compare Wuxi Yushea's Verification Entry 89 at 1, with Aspects' Entry 89 at 3, and Wuxi Yushea's Entry 89 at 1. The Court concludes that Aspects entered covered merchandise in the entry ending in 0346 through material misrepresentations on entry documents that

resulted in an avoidance of antidumping duties.  Customs' determination of

evasion for the entry ending in 0346 was supported by substantial evidence.

### k.      Entry Ending in 2576

The entry ending in 2576 contained merchandise manufactured by Wuxi

Yushea.  Aspects' Entry Package Sub. Entry 3 and 32 (June 23, 2017) ("Aspects'

Entry 97"), PR 117, CR 103–04.  Customs included the entry ending in 2576

among the entries for which multiple versions of invoices were placed on the

administrative record.  Verification Report at 8.  Customs reviewed three sets of

documents for this entry—Aspects' entry documents, an invoice and packing list

provided by Wuxi Yushea in response to Customs' request for information, and

Wuxi Yushea's documents provided during verification.  Verification Report at 8;

see Aspects' Entry 97; Wuxi Yushea's Request Info. Resp. Ex. C-1–C-3 at Ex. C-3

at 198–200 ("Wuxi Yushea's Entry 97"); Wuxi Yushea's Verification Exhibits at

Ex. 5 at 122–33 ("Wuxi Yushea's Verification Entry 97").  The Court observes

that the invoice and packing list provided by Wuxi Yushea in response to Customs'

request for information reflected a greater quantity of merchandise but a lesser

total value than the invoices and packing lists provided by Aspects at entry or

Wuxi Yushea during verification.  Compare Wuxi Yushea's Entry 97 at 1–3, with

Aspects' Entry 97 at 4–6, and Wuxi Yushea's Verification Entry 97 at 1–3.  The

Court concludes that Aspects entered covered merchandise in the entry ending in

2576 through material misrepresentations on entry documents that resulted in an

avoidance of antidumping duties. Customs' determination of evasion for the entry

ending in 2576 was supported by substantial evidence.

### l.      Entry Ending in 1580

The entry ending in 1580 contained merchandise manufactured by Wuxi

Yushea. Aspects' Entry Packets 19, 20, 31, 34, and 36 Part 2 (Jun. 23, 2017) at 1–

7 ("Aspects' Entry 99"), PR 110–12, CR 90–91. Customs included the entry

ending in 1580 among the entries for which multiple versions of invoices were

placed on the administrative record. Verification Report at 8. Customs reviewed

three sets of documents for this entry—Aspects' entry documents, an invoice and

packing list provided by Wuxi Yushea in response to Customs' request for

information, and Wuxi Yushea's documents provided during verification.

Verification Report at 8; see Aspects' Entry 99; Wuxi Yushea's Request Info.

Resp. Ex. C-1–C-3 at Ex. C-3 at 193–95 ("Wuxi Yushea's Entry 99"); Wuxi

Yushea's Verification Exhibits at Ex. 5 at 110–21 ("Wuxi Yushea's Verification

Entry 99"). The invoice and packing list provided by Wuxi Yushea in response to

Customs' request for information reflected fewer cartons and a lower total price

than the invoices and packing lists provided by Aspects or Wuxi Yushea during

verification, but the gross weight was consistent across all of the documents.

Compare Wuxi Yushea's Entry 99, with Aspects' Entry 99 at 4–6, and Wuxi

Yushea's Verification Entry at 1–5. The Court concludes that Aspects entered

covered merchandise in the entry ending in 1580 through material

misrepresentations on entry documents that resulted in an avoidance of

antidumping duties. Customs' determination of evasion for the entry ending in

1580 was supported by substantial evidence.

### m.    Entry Ending in 4523

The entry ending in 4523 contained merchandise manufactured by Wuxi

Yushea. Aspects' Entry Packets 19, 20, 31, 34, and 36 Part 2 at 8–33 ("Aspects'

Entry 101"). Customs reviewed entry documents provided by Aspects, an invoice

and packing list provided by Wuxi Yushea in response to Customs' request for

information, and documents provided by Wuxi Yushea during verification.

Verification Report at 9–10; Aspects' Entry 101; Wuxi Yushea's Request Info.

Resp. Ex. C-1–C-3 at Ex. C-3 at 184–85 ("Wuxi Yushea's Entry 101"); Wuxi

Yushea's Verification Exhibits at Ex. 5 at 183–91 ("Wuxi Yushea's Verification

Entry 101"). Customs identified the entry ending in 4523 as having weight and

value discrepancies between Aspects' documents and the manufacturer's

documents. Verification Report at 9. The Court observes that the three packing

lists reflected different quantities of cartons and gross weights. Compare Aspects'

Entry 101 at 5, with Wuxi Yushea's Entry 101 at 2, and Wuxi Yushea's

Verification Entry 101 at 2. The three invoices reflected different quantities of

merchandise and total values and the invoice provided by Aspects included several

additional items.  Compare Aspects' Entry 101 at 4, with Wuxi Yushea's Entry

101 at 1, and Wuxi Yushea's Verification Entry 101 at 1.  The Court concludes

that Aspects entered covered merchandise in the entry ending in 4523 through

material misrepresentations on entry documents that resulted in an avoidance of

antidumping duties.  Customs' determination of evasion for the entry ending in

4523 was supported by substantial evidence.

**n.    Remaining Entries**

The entries ending in 0030, 8454, 0296, 9063, 7208, 0944, 1322, and 1355

each contained merchandise produced by Wuxi Yushea according to Aspects'

entry paperwork.  See Aspects' Entry Package Sub. Sample 64 (Apr. 22, 2017) at

23–25 ("Aspects' Entry 64"), PR 90, CR 72; Aspects' Entry Packet Sub. 22, 28,

29, and 30 Part 1 (June 23, 2017) at 5 ("Aspects' Entry 87"), PR 113, CR 92;

Aspects' Entry Package Sub. Entry 23 and 26 (June 23, 2017) at 2–12 ("Aspects'

Entry 88"), PR 125, CR 100; Aspects' Entry Package Sub. Entry 27 (June 23,

2017) ("Aspects' Entry 92"), PR 48, CR 102; Aspects' Entry Packet Sub. 22, 28,

29, and 30 Part 1 at 10–16 ("Aspects' Entry 93"); Aspects' Entry Packet Sub. 22,

28, 29, and 30 Part 2 (June 23, 2017) at 1–7 ("Aspects' Entry 94"), PR 114–16,

CR 93; Aspects' Entry Packet Sub. 22, 28, 29, and 30 Part 2 at 8–62 ("Aspects'

Entry 95"); Aspects' Entry Packets 19, 20, 31, 34, and 36 Part 1 at 13–18

("Aspects' Entry 86").  Customs identified misrepresentations for these entries as unreported assists allegedly provided by Aspects to Wuxi Yushea.  Verification Report at 13.  The Court concludes that due to the pervasive discrepancies in the entry paperwork, as well as the document destruction observed during verification, it was reasonable for Customs to determine that the remaining entries, including those ending in 0030, 8454, 0296, 9063, 7208, 0944, 1322, and 1355, contained covered merchandise that were misrepresented in order to evade paying duties. The Court sustains Customs' evasion determination with respect to these remaining entries.

**CONCLUSION**

It is clear to the Court that Customs examined the relevant record evidence and articulated a satisfactory explanation for its evasion determination.  The Court concludes that Customs was reasonable in determining that there was substantial evidence of evasion by Aspects given that covered merchandise was imported into the United States, evidence was destroyed to avoid providing information to Customs, and material misrepresentations resulted in lower duties being paid.  For the foregoing reasons, the Court sustains Customs' Remand Redetermination. Judgment will enter accordingly.


                                                        /s/ Jennifer Choe-Groves
                                                        Jennifer Choe-Groves, Judge


Dated:      August 22, 2023
                   New York, New York